IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

LAWRENCE LANDRUM,

                Petitioner,         :        Case No. 1:96-cv-641

                            :        District Judge Thomas M. Rose
   -vs-                          Chief Magistrate Judge Michael R. Merz

CARL S. ANDERSON, Warden      :

                Respondent.

---

## REPORT AND RECOMMENDATIONS

---

This capital habeas corpus case is before the Court for decision on the merits after an evidentiary hearing.

Petitioner Lawrence Landrum was convicted by a Ross County jury on February 21, 1986, of aggravated murder under Ohio Revised Code § 2903.01(B) with two specifications, § 2929.04(A)(3) and (7). Additionally, he was convicted of aggravated burglary under § 2911.11. On March 19, 1986, the jury recommended a sentence of death on the first two counts of aggravated murder. *Id.* The trial court adopted the jury's recommended sentence on April 2, 1986.

In his Petition for Writ of Habeas Corpus, Landrum pleads forty grounds for relief from the imposed death sentence. (Petition for Writ of Habeas Corpus, Doc. No. 11);(Second Amended Petition ("Amended Petition"), Doc. No. 122.) Respondent, Carl S. Anderson, warden of the

1

Mansfield Correctional Institute,[1] filed a return of writ on July 26, 1996, and amended returns on

September 9, 1999, and August 15, 2000 (Return of Writ, Doc. No. 17);(Second Return of Writ,

Doc. No. 84);(Third Return of Writ ("Amended Return of Writ"), Doc. No. 123.)  In response,

Petitioner filed a traverse on December 14, 1999, and an amended traverse on August 29, 2000.

(Traverse Brief, Doc. No. 103);(Second Supplemental Traverse ("Traverse"), Doc. No. 124.)


## State Trial Court Proceedings

The facts of the case, as found by the state courts, are as follows:

On September 19, 1985, Petitioner, Lawrence Alfred Landrum and his fourteen year old

accomplice, Grant Swackhammer,[2] broke into the residence of eighty-four year old Harold White,

Sr., for the purpose of obtaining money.  During the course of the burglary, White returned home

and caught Petitioner and Swackhammer searching through his possessions.  White questioned the

two men as to why they were in his apartment to which Petitioner responded "I'm going to get all

the money and stuff I can."  At that point White told the men to leave immediately or he would

contact the police.  Swackhammer then struck White in the head multiple times with a railroad bolt.

A struggle ensued among the three men during which White tore part of the latex glove worn by

Petitioner.  Swackhammer, acting at the instruction of Petitioner, went into the kitchen and located

---

[1] On September 13, 1999, Betty Mitchell, then warden of the Mansfield Correctional Institute, was substituted as Respondent.  Since that time, Margaret Bagley has succeeded Betty Mitchell and is the present Respondent.  Fed. R. Civ. P. 25.

[2] As a result of his involvement in this burglary and murder, the Ross County Common Pleas Court Juvenile Division adjudicated Swackhammer delinquent.  This decision was affirmed by the Court of Appeals of Ohio, Fourth Appellate District, Ross County. *In re Swackhammer* (November 26, 1986) Ross App. No. 1284, unreported.

a large kitchen knife. Taking the knife, Landrum threatened White, telling him not to move. He then searched through White's pockets to obtain his keys and wallet.

Landrum has given various versions of what happened next. At trial he testified that he then told Swackhammer to watch White while he ransacked other areas of the apartment in an effort to obtain more valuables. He returned when he heard a loud commotion and found that Swackhammer had slit White's throat. Landrum, however, told multiple witnesses that it was he, and not Swackhammer, that had actually cut White's throat. Landrum and Swackhammer obtained between $70 and $80 and approximately two hundred nerve pills, Placidyls and Librium, in the burglary.

After the murder and burglary, the two initially returned to Swackhammer's trailer home. At approximately 11:30 p.m. Landrum arrived at the home of his friend Rick Perry. Contrary to his position at trial that he was not responsible for inflicting the fatal cut, Landrum bragged to the teenagers at Perry's home that he himself had slit Mr. White's throat.[3] These statements were made throughout the evening at various locations, including the house, railroad yard, and at an apartment.

On September 20, 1985 police received an anonymous phone call advising them of a possible homicide. Based on this information police went to White's apartment where they forcibly entered and discovered the victim lying in a pool of blood. White's throat had been slit causing a wound

---

[3] It was testified at trial that Landrum had stated to several of the teenagers, including, Michael Drew, Rick Perry, Larry Perry, Cary Leasure, and Karen Hughes Brown, that he had "just done a job," and "I've got money," "I killed some old man," "I cut his throat," "slit his throat from ear to ear" and that he had to get out of town because he had "just gutted some motherfucker." "Additionally, Landrum threatened the youth by telling them not to tell anyone about the murder and if they did "he had sliced one person's throat, so he'd slice another," "If you guys go to the law, I'll cut your throat just like I did Mr. White's." At one point in time during the evening, Landrum went to Karen Hughes apartment, the apartment directly below Mr. Whites, for the purpose of sexual intercourse. He told Karen that "oh by the way there's a dead body above you," and asked her what she would do if blood started to drip through the ceiling onto her, then later asked if she would like to go upstairs to see the body. Additionally Landrum described the details of the burglary and murder including having given Swackhammer the signal to hit Mr. White over the head with a railroad bolt and then requesting that Swackhammer obtained a knife from the kitchen and that Petitioner himself had sliced White's throat.

five inches in length and completely severing the right carotid artery, windpipe, neck muscles, and veins down to the spine.[4] Additionally, it was apparent that White had suffered head trauma. Near the body, Police discovered two pieces of material determined to be from latex gloves. Police also noted that the apartment had been ransacked, doors were ajar and open, additional doors had been pried open, drawers were pulled out with their contents spilling out or having been thrown onto the floor.

Landrum was arrested for the homicide of White on September 21, 1985. Police found on his person a one-way bus ticket to Michigan which had been purchased the prior day. Additionally, it was discovered that Landrum's tennis shoes contained minute traces of human blood.

On September 23, 1985, police did a grid search of the wooded vicinity near the victim's residence. During the search they discovered a large kitchen knife and a paper bag which contained a bloody towel, washcloth, surgical gloves, rubber gloves, and the victim's wallet. The knife, towel, washcloth, and one glove all bore traces of type O human blood, the same blood type as that of the victim. Additionally, the latex pieces discovered at the crime scene matched as having once been part of the torn glove discovered in the paper bag. Landrum later admitted that he disposed of the bag in the woods near the apartment.

Landrum was indicted by the grand jury on September 27, 1986, for aggravated burglary and for aggravated murder with a two specifications; that the murder was committed for the purpose of escaping detection and that it was committed during the course of an aggravated burglary.

---

[4] As testified to at trial by the pathologist. T.p. 2/18/86 at 157-173. The pathologist opined that Mr. White died as a result of massive bleeding from this neck wound. It was also testified to that there were at least two cutting incidents involved in creating this wound and that the cut could have been made by the kitchen knife found in the woods. Additionally, the pathologist noted six distinct head wounds, one of which caused a depressed skull fracture which may have been fatal. *Id*.

At trial, it was shown that Landrum thoroughly planned the burglary in advance.  On September 17, 1985, while visiting Carolyn Brown, who lived in an apartment below White, Landrum informed her that he was in trouble, needed money, and might rob White to obtain some money.  When Brown asked what he would do if interrupted during the burglary, Landrum responded that he would kill White.  He also told her of his plan to use surgical gloves during the burglary so as to avoid leaving fingerprints at the scene.  The following day, Petitioner and Swackhammer went to White's apartment on the pretense of being interested in renting an apartment from him so that they could "case the joint."

Also, prior to the actual burglary, Swackhammer found a railroad bolt while the pair were walking.  They kept it for use as a weapon in case they were interrupted during the burglary.  Further evidence of preparation occurred when Landrum and Swackhammer went to the hospital on September 19th to visit Landrum's girlfriend, Wendy Sheets, who had just given birth to their child. While at the hospital, Landrum showed Sheets a pair of surgical gloves and told her that the gloves may make him some money.  At trial Landrum admitted to having done the essential preparations, but denied that he was the one that slit Mr. White's throat. T.p. 2/20/86 at 22-99. Additionally, he did not remember having spoken with the teenagers at Perry's, the railroad yard, or the apartment and admitting to the commission of the murder. *Id*. at 36-37.

In his defense Landrum relied on the fact that the clothes he was wearing at the time of his arrested tested negative for the presence of blood.[5]  Petitioner also relied on his severe intoxication, as it allegedly interfered with any intent.  He testified that he had consumed between twenty and

---

[5] There is conflicting testimony given at trial as to whether Landrum had changed clothes after the murder or whether these were the same clothes he was wearing at the time of the crime.

twenty-six beers from early afternoon until approximately 7:30 that evening in conjunction with having taken many pills. T.p. 2/20/86 at 24-26, 52, 70.  Witnesses from that night corroborate that Landrum appeared high on drugs and heavily intoxicated when they saw him later that evening. T.p. 2/19/86 at 69-70, 78, 84, 98, 108, 110-111.

On February 1986, the jury returned its verdict finding Petitioner guilty of all charges.  The penalty phase of the trial commenced on March 17, 1986.  After many hours of deliberation, the jury returned a sentencing recommendation of death.  The trial judge accepted the jury's recommendation of a death sentence for the murder and imposed an additional sentence of ten to twenty-five years for the aggravated burglary. (Return of Writ, Doc. No. 17, Exhibit B.)

### Post-Trial State Court Proceedings

In his direct appeal to the Ross County Court of Appeals, Landrum pled twenty-nine assignment of error as follows:

> Assignment of Error No. I
> Appellant suffered prejudice as a result of the prosecutor's misconduct during closing argument and the presentation of inflammatory evidence in the guilt-innocence phase of trial.
>
> Assignment of Error No. II
> Larry Landrum was denied a fair trial as a result of the misconduct of the prosecuting attorney during the presentation of evidence and in closing argument during the mitigation phase of trial.
> A.     The prosecuting attorney improperly commented on the opinion of the victim's family regarding whether the accused's attitude as reflected by statements allegedly made to third parties were aggravating circumstance.
> B.     The prosecuting attorney misstated the law on the mitigating factor of the offender's youth.
> C.     The prosecuting attorney improperly elicited testimony concerning non-statutory aggravating circumstances during Larry Landrum's testimony and improperly commented on

6

that testimony in closing argument.

D.    The State's closing argument in the mitigating phase of trial when viewed in combination with the State's closing argument in the guilt phase of trial was not [sic] aimed at inflaming the juror's fears and passions that a fair sentencing determination could not be had.

**Assignment of Error No. III**
The trial court erred to the prejudice of the Appellant when during the mitigation phase of trial it excluded from evidence facts and testimony relevant to the circumstances of the offense and to the issue of whether Appellant should be sentenced to death.

A.    The exclusion of testimony by Randy Coffenberger which would have demonstrated that Larry Landrum was not the principal offender in the aggravated murder violated Larry Landrum's statutory and state and federal constitutional rights.

B.    The exclusion of evidence showing that the co-defendant had a violent nature and carried a knife denied Larry Landrum his statutory and state and federal constitutional rights.

**Assignment of Error No. IV**
The trial court erred to the prejudice of Appellant by denying his repeated motions for continuance.

**Assignment of Error No. V**
The trial court erred to the prejudice of Appellant by denying Appellant's motion for appointment of an expert witness to assist on the change of venue hearing.

**Assignment of Error No. VI**
The trial court erred to the prejudice of Appellant by overruling his motion for change of venue.

**Assignment of Error No. VII**
The trial court erred by failing to grant Appellant the right to assistance of a qualified psychologist to assist him and his counsel in jury selection where members of the jury knew of Appellant by having been exposed to intense pre-trial publicity, thereby denying Appellant his rights guaranteed under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 16 of the Ohio Constitution.

**Assignment of Error No. VIII**

7

The trial court erred to the prejudice of Appellant by conducting voir dire of jurors as a group.

Assignment of Error No. IX
The trial court erred to the prejudice of Appellant by dismissing prospective juror Don Clark.

Assignment of Error No. X
The trial court erred to the prejudice of Appellant by not dismissing for cause jurors Marsha Morrison, James Bowers and Clarence Edler, for the reason that these jurors stated that they would not consider statutory mitigating factors.

Assignment of Error No. XI
The trial court erred to the prejudice of Appellant by allowing Appellant to appear before the jury in shackles.

Assignment of Error No. XII
The trial court abused its discretion and erred to the prejudice of the Defendant when it refused to grant use immunity to an already convicted co-defendant to enable him to testify on Appellant's behalf.

Assignment of Error No. XIII
The trial court erred to the prejudice of the Appellant when it ruled that Grant Swackhammer, the already convicted co-defendant of Appellant, could assert the Fifth Amendment right against self-incrimination.

Assignment of Error No. XIV
The trial court erred to the prejudice of Appellant by refusing to allow defense counsel to cross-examine witness Cary Leasure about a prior statement given to the police.

Assignment of Error No. XV
The trial court erred to the prejudice of the Appellant in admitting a highly inflammatory and gruesome photo. The probative value of the photo was far outweighed by the danger of unfair prejudice, Evid. R, 403 (A), and this denied Appellant a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

Assignment of Error No. XVI
It was prejudicial error for the trial court to allow in the mitigation

8

phase of trial the introduction of non-statutory aggravating circumstances.

Assignment of Error No. XVII
Where the defense has the burden of going forward with evidence at the mitigation phase, permitting the prosecution to argue last, violates R.C. 2929.03, 2929.04, the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and Sections 9, 10 and 16, Article I of the Ohio Constitution.

Assignment of Error No. XVIII
The trial court erred to the prejudice of the Appellant by instructing the jury and allowing the prosecutor to comment to the jury that its sentencing decision was merely a recommendation thus lessening the jury's sense of responsibility for its sentencing verdict.

Assignment of Error No. XIX
The trial court erred to the prejudice of Appellant when it refused to give his written proffered jury instructions.
A. The jury was not instructed that it had to take into consideration the appropriateness of the death penalty.
B. The jurors were not appropriately guided in how to proceed with their deliberations.
C. The jury was not properly instructed regarding the weighing of aggravating and mitigating factors.
D. The juror's [sic] were not properly instructed on the burden of proof.
E. The court should have instructed the jury that the State's burden was proof beyond all doubt.

Assignment of Error No. XX
The trial court erred to the prejudice of the Appellant when it refused to instruct the jury that each of the factors he presented in mitigation should be considered as a separate mitigating factor.

Assignment of Error No. XXI
In the present case the death sentence is excessive and disproportionate to sentences imposed in similar cases thereby resulting in cruel and unusual punishment and a denial of due process in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

Assignment of Error No. XXII

The trial court abused its discretion when it overruled Appellant's motion for a second voir dire.

Assignment of Error No. XXIII
The trial court erred in excusing for cause at the guilt phase of Appellant's trial, all prospective jurors who stated that they would be unable to vote for death at the penalty phase, in violation of Appellant's right to trial by an impartial jury drawn from a fair cross-section of the community, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

Assignment of Error No. XXIV
The trial court erred to the prejudice of the Appellant when it overruled his motion to dismiss the indictment where the indictment failed to give adequate notice of the charge.

Assignment of Error No. XXV
The trial court erred in imposing the death sentence on Appellant Richey [sic]. The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I, Ohio Constitution, establish the requirements for a valid death penalty scheme. Ohio's statutory provisions governing the imposition of the death penalty, contained in 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04 and 2929.05 do not meet the prescribed requirements and, thus, are unconstitutional, both on their face and as applied to Larry Landrum.

Assignment of Error XXVI
The trial court abused its discretion by not permitting Appellant to act as co-counsel.

Assignment of Error XXVII
The trial court erred to the prejudice of Appellant by refusing his request to instruct the jury they must find proof beyond all doubt as to guilt and aggravated murder/specifications and be convinced beyond all doubt that death should be imposed before they can recommend the death penalty.

Assignment of Error No. XXVIII
The trial court abused its discretion when it overruled Appellant's request for pre-trial disclosure of witness statements.

Assignment of Error No. XXIX

10

> The trial court erred to the prejudice of Appellant when it refused to give a jury instruction allowing adequate consideration of mercy in the mitigation state [sic] of trial and in allowing the prosecutor to argue that mercy may not be considered.

(Return of Writ, Doc. No. 17, Exhibit D.)

After reviewing the merits of Landrum's proposed assignment of errors, re-weighing the aggravating circumstances against the mitigating factors, and independently assessing the appropriateness of the penalty of death, the Court of Appeals affirmed Landrum's conviction and the sentence of death. *State v. Landrum*, 1989 Ohio App. LEXIS 143 (Court of Appeals, Fourth Appellate District, Ross County, 1989).

Petitioner then appealed to the Ohio Supreme Court raising the following propositions of law:

> Proposition of Law No. I:
> Where the prosecuting attorney comments on the (1) accused's exercise of his right to make the state prove its case against him, (2) surreptitiously engages in theatrics designed to inflame the passions and prejudices of the jurors (3) comments negatively on defense counsel's honesty and integrity (4) argues information not admitted in evidence but obtained in a side bar conference and (5) argues that a conviction is justified based on fear and passion, the accused's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution have been violated.

> Proposition of Law No II:
> Larry Landrum was denied a fair trial as a result of the misconduct of the prosecuting attorney during the presentation of evidence and in closing argument during the mitigation phase of trial.
>> A.  The prosecuting attorney improperly commented on the opinion of the victim's family regarding whether the accused's attitude as reflected by statements allegedly made to third parties were aggravating circumstances.
>> B.  The prosecuting attorney misstated the law on the mitigating factor of the offender's youth.

C. The prosecuting attorney improperly elicited testimony concerning non-statutory aggravating circumstances during Larry Landrum's testimony and improperly commented on that testimony in closing argument.

D. The state's closing argument in the mitigation phase of trial when viewed in combination with the State's closing argument in the guilt phase of trial was not [sic] aimed at inflaming the juror's fears and passions [sic] that a fair sentencing determination could not be had.

Proposition of Law No. III:
The trial court erred to the prejudice of the Appellant when during the mitigation phase of trial it excluded from evidence facts and testimony relevant to the circumstances of the offense and to the issue of whether Appellant should be sentenced to death.

A. The exclusion of testimony by Randy Coffenberger which would have demonstrated that Larry Landrum was not the principal offender in the aggravated murder violated Larry Landrum's statutory and state and federal constitutional rights.

B. The exclusion of evidence showing that the co-defendant had a violent nature and carried a knife denied Larry Landrum his statutory and state and federal constitutional rights.

Proposition of Law No. IV:
The trial court erred to the prejudice of Appellant by denying his repeated motions for a continuance of the trial and sentencing proceedings.

Proposition of Law No. V:
The trial court erred to the prejudice of Appellant by denying Appellant's motion for appointment of an expert witness to assist on the change of venue hearing.

Proposition of Law No. VI:
The trial court erred to the prejudice of Appellant by overruling his motion for change of venue.

Proposition of Law No. VII:
The trial court erred by failing to grant Appellant the right to assistance of a qualified psychologist to assist him and his counsel in

12

jury selection where members of the jury had been exposed to intense pre-trial publicity, thereby denying Appellant his rights guaranteed under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 16 of the Ohio Constitution.

Proposition of Law No. VIII:
The trial court erred to the prejudice of Appellant by requiring group voir dire.

Proposition of Law No. IX:
The trial court erred to the prejudice of Appellant by excusing for cause prospective juror Don Clark.

Proposition of Law No. X:
The trial court erred to the prejudice of Appellant by not dismissing for cause jurors Marsha Morrison, James Bowers and Clarence Edler, for the reason that these jurors stated that they would not consider statutory mitigating factors.

Proposition of Law No. XI:
The trial court erred to the prejudice of Mr. Landrum by requiring him to appear before the jury in shackles at the view of the crime scene.

Proposition of Law No. XII:
The trial court abused its discretion and erred to the prejudice of the Defendant when it refused to grant use immunity as to already convicted co-defendant to enable him to testify on Appellant's behalf.

Proposition of Law No. XIII:
The trial court erred to the prejudice of the Appellant when it ruled that Grant Swackhammer, the already convicted co-defendant of Appellant, could assert the Fifth Amendment right against self-incrimination.

Proposition of Law No. XIV:
The trial court erred to the prejudice of Appellant by refusing to allow defense counsel to cross-examine witness Cary Leasure about a prior statement given to the police.

Proposition of Law No. XV:
Admission of an inflammatory and gruesome photo of the victim during the guilt phase of Appellant Landrum's trial violated the Fifth,

13

Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

Proposition of Law No. XVI:
The trial court's allowance in the mitigation phase of trial the introduction of nonstatutory aggravating circumstances violated his Fifth, Sixth, Eighth and Fourteenth Amendment rights under the United States Constitution and Sections 9 [sic] 10 and 16, Article I of the Ohio Constitution.

Proposition of Law No. XVII:
Where the defense has the burden of going forward with evidence at the mitigation phase, permitting the prosecution to argue last, violates R.C. 2929.03, 2929.04, the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and Sections 9, 10 and 16, Article I of the Ohio Constitution.

Proposition of Law No. XVIII:
The trial court erred to the prejudice of the Appellant by instructing the jury and allowing the prosecutor to comment to the jury that its sentencing decision was merely a recommendation thus lessening the jury's sense of responsibility for its sentencing verdict.

Proposition of Law No. XIX:
The trial court erred to the prejudice of Appellant when it refused to give his written proffered jury instructions.

> A. The jury was not instructed that it had to take into consideration the appropriateness of the death penalty.
> B. The jurors were not appropriately guided in how to proceed with their deliberations.
> C. The jury was not properly instructed regarding the weighing of aggravating and mitigating factors.
> D. The juror's [sic] were not properly instructed on the burden of proof.
> E. The court should have instructed the jury that the state's burden was proof beyond all doubt.

Proposition of Law No. XX:
The trial court erred to the prejudice of the Appellant when it refused to instruct the jury that each of the factors he presented in mitigation should be considered as a separate mitigating factor.

14

Proposition of Law No. XXI:
The statutorily mandated proportionality review in Ohio is constitutionally flawed. The death sentence in this case is excessive and disproportionate.

Proposition of Law No. XXII:
The trial court abused its discretion when it overruled Appellant's motion for a second voir dire.

Proposition of Law No. XXIII:
The trial court erred in excusing for cause at the guilt phase of Appellant's trial, all prospective jurors who stated that they would be unable to vote for death at the penalty phase, in violation of Appellant's right to trial by an impartial jury drawn from a fair cross-section of the community, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution and to equal protection and to be free of cruel and unusual punishment.

Proposition of Law No. XXIV:
The trial court erred to the prejudice of the Appellant when it overruled his motion to dismiss the indictment where the indictment failed to give adequate notice of the charges.

Proposition of Law No. XXV:
The trial court erred when it sentenced Lawrence Landrum to death. The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution, establish the requirements for a valid death penalty scheme. Ohio Revised Code sections 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04 and 2929.05, Ohio's statutory provisions governing the imposition of the death penalty, do not meet the prescribed requirements, and, thus, are unconstitutional both on their face and as applied to Larry Landrum.

Proposition of Law No. XXVI:
The trial court abused its discretion by not permitting Appellant to act as co-counsel.

Proposition of Law No. XXVII:
The trial court erred to the prejudice of Appellant by refusing his request to instruct the jury they must find proof beyond all doubt as to guilt and aggravated murder/specifications and be convinced beyond all doubt that death should be imposed before they can

15

recommend the death penalty.

Proposition of Law No. XXVIII:
The trial court abused its discretion when it overruled Appellant's request for pre-trial disclosure of witness statements.

Proposition of Law No. XXIX:
The trial court erred to the prejudice of Appellant when it refused to give a jury instruction allowing adequate consideration of mercy in the mitigation stage of trial in allowing the prosecutor to argue that mercy may not be considered.

Proposition of Law No. XXX:
The court of appeals failed to accurately weigh the facts and evidence as required by R.C. 2929.05 in order to determine whether the aggravating factors outweigh the mitigating circumstances.

Proposition of Law No. XXXI:
Death sentenced appellants are entitled to the effective assistance of counsel in the appeals of right to this court.  Lawrence Landrum has been denied the effective assistance of appellate counsel by this court's denial of an extension of time adequate for preparation of his brief on the merits.

(Return of Writ, Doc. No. 17, Exhibit O.)

In his Reply Brief in the Ohio Supreme Court, Petitioner raised the following additional propositions of law:

Proposition of Law No I
Appellant suffered prejudice as a result of the prosecutor's misconduct during closing argument and the presentation of inflammatory evidence in the guilt-innocence phase.

Proposition of Law No II
Larry Landrum was denied a fair trial as a result of the misconduct of the prosecuting attorney during the presentation of evidence and in closing argument during the mitigation phase of trial.
A.    The prosecuting attorney improperly commented on the opinion of the victim's family regarding whether the accused's attitude as reflected by statements allegedly made to third parties, was an aggravating circumstance.
B.    The prosecuting attorney misstated the law on the mitigating

factor of the offender's youth [sic]

C.     The prosecuting attorney improperly elicited testimony concerning non-statutory aggravating circumstances during Larry Landrum's testimony and improperly commented on that testimony in closing argument.

D.     The State's closing argument in the mitigation phase of trial when viewed in combination with the State's closing argument in the guilt phase of trial was so aimed at inflaming the juror's [sic] fears and passions that a fair sentencing determination could not be had.

**Proposition of Law No. III**
The trial court erred to the prejudice of the Appellant when during the mitigation phase of trial it excluded from evidence facts and testimony relevant to the circumstances of the offense and to the issue of whether Appellant should be sentenced to death.

A.     The exclusion of testimony by Randy Coffenberger which would have demonstrated that Larry Landrum was not the principal offender in the aggravated murder violated Larry Landrum's statutory and state and federal constitutional rights.

B.     The exclusion of evidence showing that the co-defendant had a violent nature and carried a knife denied Larry Landrum his statutory and state and federal constitutional rights.

**Proposition of Law No. IV**
The trial court erred to the prejudice of Appellant by denying his repeated motions for continuance.

**Proposition of Law No. VI**
The trial court erred to the prejudice of Appellant by overruling his motion for change of venue.

**Proposition of Law No. X**
The trial court erred to the prejudice of Appellant by not dismissing for cause jurors Marsha Morrison, James Bowers and Clarence Edler, for the reason that these jurors stated that they would not consider statutory mitigating factors.

**Proposition of Law No. XIII**
The trial court erred to the prejudice of the Appellant when it ruled that Grant Swackhammer, the already convicted co-defendant of Appellant, could assert the Fifth Amendment right against self-incrimination.

17

Proposition of Law No. XIV
The trial court erred to the prejudice of Appellant by refusing to allowing defense counsel to cross-examine witness Cary Leasure about a prior statement given to the police.

Proposition of Law No. XV
The trial court erred to the prejudice of the Appellant in admitting a highly inflammatory and gruesome photo. The probative value of the photo was far outweighed by the danger of unfair prejudice, Evid. R. 403(A), and this denied Appellant a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

Proposition of Law No. XVI
It was prejudicial error for the trial court to allow in the mitigation phase of trial the introduction of non-statutory aggravating circumstances.

Proposition of Law No. XVIII
The trial court erred to the prejudice of the Appellant by instructing the jury and allowing the prosecutor to comment to the jury that its sentencing decision was merely a recommendation thus lessening the jury's sense of responsibility for its sentencing verdict.

Proposition of Law No. XIX
The trial court erred to the prejudice of Appellant when it refused to give his written proffered jury instructions.

Proposition of Law No. XXI
The statutory mandated proportionality review in Ohio is constitutionally flawed. The death sentence in this case is excessive and disproportionate.

Proposition of Law No. XXIX
The trial court erred to the prejudice of Appellant when it refused to give a jury instruction allowing adequate consideration of mercy in the mitigation stage of trial and in allowing the prosecutor to argue that mercy may not be considered.

(Return of Writ, Doc. No. 17, Exhibit Q.)  The Ohio Supreme Court reviewed the merits of

Landrum's propositions of law.  In addition, the court independently re-weighed the aggravating

18

circumstances against the mitigating factors presented at trial and evaluated the appropriateness and

proportionality of the death penalty.  The court found that Landrum's claims were without merit and

affirmed the decision and sentence of the court of appeals. *State v. Landrum*, 53 Ohio St. 3d 107,

559 N.E. 2d 710 (1990).

In his Motion for Rehearing in the Ohio Supreme Court, filed on August 27, 1990, Landrum

raised the following:

> I.     An appellate court cannot weigh and evaluate the credibility
> of a proffered summary of mitigating testimony which was
> erroneously excluded from the sentencing phase of a jury trial
> in order to save an otherwise invalid death sentence.
>> A.     Ohio Revised Code Section 2929.05 does not
>> permit reviewing courts to admit
>> evidence erroneously excluded by the trial
>> court and then substitute the reviewing court's
>> assessment of that evidence for that of the
>> trier of fact.
>> B.     The United States Constitution does not
>> permit appellate courts to take over the
>> jury's function when mitigating evidence was
>> erroneously excluded in a capital
>> sentencing proceeding.
>> C.     Even if an appellate court can "admit" and
>> weigh to affirm a death sentence mitigating
>> evidence which was withheld from the jury, it
>> may not treat a proffered summary of
>> testimony as if it were the actual testimony
>> and it may not use a proffered hearsay attack
>> on the proposed witness's credibility as
>> evidence.
>
> II.    Ohio Revised Code Section 2945.44 which provides the only
> means of obtaining witness immunity in Ohio denies the
> accused the right to present a defense, the right to compel
> witnesses, the right to present mitigation in capital cases, and
> the right to due process of law.

(Return of Writ, Doc. No. 17, Exhibit V.)  Landrum's Motion for Rehearing was subsequently

19

denied. (Return of Writ, Doc. No. 17, Exhibit W.)  The United States Supreme Court denied his

petition for a writ of certiorari on February 25, 1991. (Return of Writ, Doc. No. 17, Exhibit AA.)

On April 4, 1996, the case having been dormant for over five years, the state supreme court

*sua sponte* set a new execution date. (Amended Return of Writ, Doc. No. 123, Exhibit DDD) *citing*

*State v. Landrum*, 75 Ohio St. 3d 1439 (1996). On May 28, 1996, Landrum filed his petition for

Post-Conviction Relief in the Ross County Court of Common Pleas under Ohio Revised Code §

2953.21.  In this proceeding Landrum pled the following forty-five claims for relief:

> First Claim for Relief
> The convictions and sentences of Lawrence Landrum are void and/or
> voidable because Lawrence Landrum was denied the effective
> assistance of counsel during pretrial, the trial phase, and the
> sentencing phase of his trial in violation of his constitutional rights
> as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments
> to the United States Constitution and Sections 1, 2, 5, 9, 10, and 16,
> and 20, Article I, of the Ohio Constitution.
>
> Second Claim for Relief
> Lawrence Landrum's convictions and sentence are void and/or
> voidable because the trial court induced Lawrence Landrum to, in
> effect, waive presentation of mitigating evidence at the penalty phase
> of his capital trial by refusing to allow trial counsel sufficient time to
> investigate, prepare, and present mitigating evidence on behalf of
> Lawrence Landrum.  Without further mitigating evidence in the trial
> record, the reviewing courts in Lawrence Landrum's case could not
> perform the statutorily required reweighing of aggravating
> circumstances and mitigating factors in Lawrence Landrum's case.
> Further, the appellate courts could not make a meaningful
> determination as to the appropriateness of Lawrence Landrum's death
> sentence.
>
> Third Claim for Relief
> Lawrence Landrum's convictions and/or sentences are void or
> voidable because he was denied his right to the assistance of experts
> in preparing and presenting his defense as guaranteed by the Fifth,
> Sixth and Fourteenth Amendments of the United States Constitution,
> and Sections 2, 9, 10, 16, and 20, Article I; Section 39, Article II, of
> the Ohio Constitution; and R.C. § 2929.024.

Fourth Claim for Relief

Lawrence Landrum's convictions and death sentence are void and/or voidable because defense counsel did not request, nor did the trial court appoint, and [sic] independent pharmacologist and/or toxicologist or similarly qualified expert to assist counsel in both the trial and penalty phases of his trial.

Fifth Claim for Relief

Mr. Landrum's convictions and death sentences are void and/or voidable because defense counsel did not request, nor did the trial court appoint, an independent expert pathologist who could have contested prosecution witness Dr. Byron Smith's opinion as to the manner in which the decedent's death occurred as well as the autopsy findings . . . . The convictions and sentences of Lawrence Landrum are void and/or voidable because trial counsel provided ineffective assistance of counsel by failure to request the appointment of and use of an independent expert pathologist.

Sixth Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because the autopsy performed on the victim was substandard, did not constitute an adequate examination, and did not review and examine all areas needed to properly and accurately identify the cause of death.

Seventh Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because the capital sentencers did not have before them relevant mitigating evidence. Namely, since his incarceration on "Death Row" for the instant offenses, Lawrence Landrum has maintained an excellent disciplinary record. The convictions and sentences of Lawrence Landrum are also void and/or voidable because his death sentence is unreliable and inappropriate in violation of his rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 1, 2, 5, 9, 10, 16 and 20, Article I, of the Ohio Constitution.

Eighth Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because the trial court did not require the State of Ohio to state its reasons for exercising its peremptory challenges during the jury selection process. Lawrence Landrum's convictions and/or sentences are also void or voidable because the trial court and defense trial counsel failed to perfect a record to allow review of

whether the State of Ohio exercised its peremptory challenges in a discriminatory manner . . . . Trial counsel for Lawrence Landrum provided ineffective assistance, to Lawrence Landrum's prejudice, by failing to properly request and insure that an adequate record be made in this regard or to otherwise object to the above-referenced errors.

Ninth Claim for Relief

The convictions and sentences of Lawrence Landrum are void and/or voidable because the trial court changed the voir dire procedures in the course of voir dire to require group voir dire, thereby causing trial counsel to be ineffective in their voir dire on behalf of Lawrence Landrum.

Tenth Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because the trial court improperly instructed the jury that its sentencing decision was a mere recommendation thereby lessening the jury's sense of responsibility for its sentencing verdict . . . . Trial counsel for Lawrence Landrum provided ineffective assistance, to Lawrence Landrum's prejudice, by failing to properly make contemporaneous objections to all references to jury decisions regarding the death penalty as being merely a recommendation and by making misleading statements in this regard themselves.

Eleventh Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because the trial court gave improper and inaccurate instructions to the prospective jurors during voir dire . . . . Trial counsel for Lawrence Landrum provided ineffective assistance, to Lawrence Landrum's prejudice, by failing to recognize the problems with the erroneous instructions and to properly and contemporaneously object to the above-referenced erroneous instructions.

Twelfth Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because the trial court instructed the jury that it could consider "any other factors that are relevant to the issue of whether Lawrence Landrum should be sentenced to death." . . . . Trial counsel for Lawrence Landrum provided ineffective assistance, to Lawrence Landrum's prejudice, by failing to properly object to the above-referenced errors or to otherwise take the necessary steps to insure the jurors were not confused or misled.

22

Thirteenth Claim for Relief

In its penalty phase charge to the jury, the trial court used the statutory definition of "reasonable doubt" from R.C. 2901.05(D). The court charged the jury that "Reasonable Doubt is present when after you have carefully considered and compared all of the evidence, you cannot say that you are *firmly convinced of the truth of the charge*."  This instruction unconstitutionally shifted the burden of proof on the issue of punishment to Lawrence Landrum, requiring the State to prove fewer than every element needed to impose the death penalty, and prevented the jury from making its constitutionally required finding of the appropriateness of the death penalty . . . . This shift in the burden of proof, specifically prohibited in R.C. 2929.03, deprived Lawrence Landrum of due process and equal protection and other constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 1, 2, 5, 9, 10, 16 and 20, Article I, of the Ohio Constitution. . . . . Trial counsel for Lawrence Landrum provided ineffective assistance, to Lawrence Landrum's prejudice, by failing to properly and contemporaneously object to the above-referenced errors.

Fourteenth Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because the jury was instructed, both orally and in written form, that they had to return a death verdict if they found that the aggravated circumstances outweigh the mitigating factors, despite the fact that only one aggravating circumstance could properly be considered in the statutory weighing process . . . . Trial counsel for Lawrence Landrum provided ineffective assistance, to Lawrence Landrum's prejudice, by failing to properly object to the above-referenced errors.

Fifteenth Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because the verdict form and instructions provided to the jury regarding the burden of proof to apply in the aggravating circumstances vs. mitigating factors weighing process and the nature of their decision, were improper, inaccurate, misleading and confusing . . . . Trial counsel for Lawrence Landrum provided ineffective assistance, to Lawrence Landrum's prejudice, by failing to properly object to the above-referenced errors.

Sixteenth Claim for Relief

Lawrence Landrum was prejudiced by the failure to instruct as requested since it effectively limited the impact of the mitigating

evidence he presented.  The instructions also served to mislead and confuse the jurors regarding the nature of mitigation evidence and the statutory weighing process.    As such, Lawrence Landrum's convictions and/or sentences are void or voidable.  The trial court's instructions to the jury regarding mitigation and the weighing process presented violated Lawrence Landrum's rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 1, 2, 5, 9, 10, 16, and 20, Article I, of the Ohio Constitution.

Seventeenth Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because of the extensive irrelevant and inflammatory evidence admitted at the trial phase which spilled over into the sentencing hearing.  The court [sic] instructions to the jury allowed them to consider any evidence introduced during the trial phase . . . . Lawrence Landrum was thereby deprived of his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 1, 2, 5, 9, 10, 16 and 20, Article I, of the Ohio Constitution.

Eighteenth Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because the jury was instructed that they "* * * must not be influenced by any consideration of sympathy or prejudice . . . " Trial counsel for Lawrence Landrum provided ineffective assistance, to Lawrence Landrum's prejudice, by failing to properly object to the above-referenced errors.

Nineteenth Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because the trial court gave conflicting instructions to the jury regarding the effect of a decision to impose a life sentence . . . . Trial counsel for Lawrence Landrum provided ineffective assistance, to Lawrence Landrum's prejudice, by failing to properly object to the above-referenced errors.

Twentieth Claim for Relief

Lawrence Landrum's convictions and/or sentence are void or voidable due to the mandatory nature of Ohio's capital statute and because the trial court instructed the jury during the penalty phase that if they found beyond a reasonable doubt that the "aggravating circumstances outweigh the mitigating factors" then they would "have no choice but to recommend to the Court that the sentence of

death be imposed upon the defendant, Lawrence Landrum."

Twenty-First Claim for Relief
Lawrence Landrum's convictions and sentences are void and/or voidable because during voir dire, prospective jurors were repeatedly misinformed concerning life sentence options.

Twenty-Second Claim for Relief
Lawrence Landrum's convictions and/or sentences are void or voidable because the jurors were repeatedly informed that their decision to sentence Lawrence Landrum to death was only a recommendation.

Twenty-Third Claim for Relief
The jury instructions in the penalty phase of Lawrence Landrum's case were confusing, misleading and did not insure that the jurors understood what they could and could not do in making their ultimate decisions.

Twenty-Fourth Claim for Relief
Lawrence Landrum's convictions and sentences are void or voidable because of juror misconduct during deliberations.

Twenty-Fifth Claim for Relief
Lawrence Landrum's convictions and/or sentences are void or voidable because of prosecutorial misconduct in the trial phase closing argument, where the prosecutor committed acts of misconduct . . . .

Twenty-Sixth Claim for Relief
Lawrence Landrum's convictions and/or sentences are void and/or voidable because the State of Ohio violated Lawrence Landrum's right [sic] due process and the effective assistance of counsel by denying access to exculpatory information and by failing to disclose to trial counsel information material to issues involved in the trial and penalty phases of the proceedings.

Twenty-Seventh Claim for Relief
Lawrence Landrum's convictions and/or sentences are void or voidable because the State of Ohio suppressed evidence favorable to Lawrence Landrum when he made his request for disclosure pursuant to R.C. 149.43 in 1991.  The State's refusal violated Lawrence Landrum's rights pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 1, 2, 5,

9, 10, 16 and 20, Article I of the Ohio Constitution.

Twenty-Eighth Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because the trial judge refused to grant immunity to Lawrence Landrum's co-defendant, Grant Swackhammer, in order that Mr. Swackhammer could be compelled to testify at Lawrence Landrum's trial . . . . Trial counsel for Lawrence Landrum provided ineffective assistance, to Lawrence Landrum's prejudice, by failing to properly object to the above referenced errors, failing to adequately proffer and preserve the errors despite possession of sufficient knowledge and documentation to do so, failing to sufficiently question Mr. Swackhammer regarding his refusal to testify, failing to request that the State seek statutory immunity under R.C. 2945.44, failing to adequately object to the prosecution's misconduct by arbitrarily refusing to immunize Mr. Swackhammer, and by failing to make a full and complete record regarding these issues.

Twenty-Ninth Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because the finding that Lawrence Landrum was the principal offender in the murder of the victim was based on insufficient evidence.

Thirtieth Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because the death sentence imposed was inappropriate and disproportionate to both the nature of the crime of which he was convicted and to the leniency afforded his co-defendant, Grant Swackhammer.

Thirty-First Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because the jury, the trial court, and the reviewing courts have never considered the mitigating factor of extreme intoxication. During the penalty phase of Lawrence Landrum's trial, evidence was presented that on the alleged day of the murder, Lawrence Landrum was extremely intoxicated, having ingested massive amounts of drugs and alcohol.

Thirty- Second Claim for Relief

Lawrence Landrum's convictions and/or sentences are void or voidable because he is factually and actually innocent of the offense

26

of aggravated murder for which he was convicted and sentenced to death.

Thirty-Third Claim for Relief
The convictions and sentences of Lawrence Landrum are void and/or voidable because the trial court accepted the jury's recommendation of the death sentence based on an improper weighing process.

Thirty-Fourth Claim for Relief
Lawrence Landrum's convictions and/or sentences are void or voidable because of constitutional errors in the trial court's opinion . . . .The trial court also erred in its conclusions because it relied upon improper jury instructions, and the principles contained therein, in making its decision . . . . These trial court Opinion errors, in conjunction with the fact that the Court weighed more than one aggravating circumstance against the mitigating factors, examined the evidence to determine if mitigation outweighed aggravation, and believed that mitigating factors had to raise to the level of full excuses or justifications for the offense to be of any qualitative value, served to violate Lawrence Landrum's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 1, 2, 5, 9, 10, 16, and 20, Article I, of the Ohio Constitution . . . . Lawrence Landrum's convictions and/or sentences are also void or voidable because the trial court's sentencing decision, as evidenced by its opinion issued pursuant to Ohio Rev. Code Section 2929.03(F), impermissibly took into consideration nonstatutory aggravating circumstances while ignoring relevant mitigation factors and used an improper weighing formula which shifted the burden of proof to the defendant.

Thirty-Fifth Claim for Relief
The convictions and sentences of Lawrence Landrum are void and/or voidable because the Court of Appeals failed to accurately weigh the facts and evidence as required by R.C. 2929.05, in that the Court considered and gave weight to nonstatutory aggravating circumstances during their weighing process . . . . This improper weighing served only to destroy the reliability of the death sentence rendered in this case, and has resulted in the disproportionate and inappropriate death penalty of Lawrence Landrum, in violation of his constitutional rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 1, 2, 5, 9, 10, 16, and 20, Article I, of the Ohio Constitution.

Thirty-Sixth Claim for Relief

27

Every capital defendant has the right to a meaningful appellate review of his sentences and conviction, but Lawrence Landrum was denied such a review because he was represented by William Allyn on appeal while Mr. Allyn was employed as an Assistant Prosecuting Attorney for Ross County. This conflict of interest requiring the withdrawal of either William Allyn as counsel for Lawrence Landrum or of the Ross County Prosecutor's office, neither of which occurred. At the very least, Lawrence Landrum should have been informed of his conflict situation and given and [sic] opportunity to object . . . . Lawrence Landrum has been denied his rights to a meaningful appeal and his rights as guaranteed under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 1, 2, 5, 9, 10, 16, and 20, Article I, of the Ohio Constitution.

Thirty-Seventh Claim for Relief
The convictions and sentences of Lawrence Landrum are void and/or voidable because appellate counsel admittedly did not fully prepare and present necessary appellate issues for review to both the Fourth District Court of Appeals and the Supreme Court of Ohio.

Thirty-Eighth Claim for Relief
Lawrence Landrum's convictions and sentences are void and/or voidable because the trial court effectively forced Lawrence Landrum to waive presentation of mitigating evidence at the mitigation phase of his capital trial . . . . Without sufficient mitigating evidence and expert explanations concerning the mitigation evidence on the trial record the trial jury was forced to make their decision under circumstances that makes their decision inherently unreliable. Consequently, the appellate courts in Lawrence Landrum's case were prevented from performing the statutorily required reweighing of aggravating circumstances and mitigating factors in Lawrence Landrum's case. Further, the appellate courts could not make an independent determination as to the appropriateness of Lawrence Landrum's death sentence.

Thirty-Ninth Claim for Relief
Lawrence Landrum's convictions and/or sentences are void or voidable because he was tried in a forum that was unduly influenced by media coverage of his case.

Fortieth Claim for Relief
Lawrence Landrum's convictions and sentences are void and/or voidable because he was denied a fair and impartial review of his

28

death sentence. Ohio's reviewing court's [sic] have failed to fulfill their statutory duty to one meaningful review of proportionality issues in capital cases.

Forty-First Claim for Relief
Lawrence Landrum's convictions and sentences are void or voidable because he was convicted and sentenced to death pursuant to R.C. 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, and 2929.04 and his death sentence was reviewed on appeal pursuant to R.C. 2929.05, which are unconstitutional both on their face and as applied to Lawrence Landrum. Lawrence Landrum's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 1, 2, 5, 9, 10, 16 and 20, Article I, of the Ohio Constitution were violated, thereby prejudicing Lawrence Landrum.

Forty-Second Claim for Relief
The death penalty is administered and applied arbitrarily, capriciously and whimsically in the State of Ohio. Lawrence Landrum was sentenced to die and will be executed, pursuant to a pattern and practice of wholly arbitrary and capricious infliction of that penalty. The theoretical justifications for capital punishment are groundless and irrational in fact: Death is thus an excessive penalty which fails factually to serve any rational and legitimate social interests that can justify its unique harshness.

Forty-Third Claim for Relief
Lawrence Landrum's convictions and sentences are void and/or voidable because the Ohio death penalty is in violation of international laws and Article VI of the United States Constitution.

Forty-Fourth Claim for Relief
The Ohio Public Defender's Office failed to provide sufficient funding for post-conviction counsel and the necessary experts in Lawrence Landrum's case and has thus interfered with Lawrence Landrum's post conviction counsel's ability to fully investigate, prepare and present the petition.

Forty-Fifth Claim for Relief
Petitioner Lawrence Landrum's conviction and/or sentences are void or voidable because the cumulative effect of the errors and omissions presented in this petition in paragraphs one (1) through (419) four hundred nineteen deprived him of a fair trial.

29

(Second Return of Writ, Doc. No. 84, Exhibit RR.)  The Ross County Common Pleas Court found that Landrum was not entitled to relief on any of his forty-five claims for relief. (Findings of Fact and Conclusions of Law, December 30, 1997, Second Return of Writ, Doc. No. 84, Exhibit UU.)

On September 22, 1998, Landrum filed an unsuccessful Application to Reopen under Ohio App. R. 26(B), and later two unsuccessful Motions for Reconsideration.  *State v. Landrum*, Ross County Case No. 85CA1330 (April 13, 1999)(denying application for reopening) *aff'd by State v. Landrum*, 87 Ohio St. 3d 315, 720 N.E. 2d 524 (1999) (denying 26 (B) motion on timeliness grounds.) Landrum also filed an unsuccessful Memorandum Explaining Delay in Filing Application for Reopening. (Amended Return of Writ, Doc. No. 123, Exhibit DDD.)

He also appealed to the Court of Appeals from the denial of post-conviction relief. *State v. Landrum*, 1999 Ohio App. LEXIS 71 (Court of Appeals of Ohio, Fourth Appellate District, Ross County, 1999) (denying post-conviction); raising the following assignments of error:

> First Assignment of Error:
> The Trial Court erred in dismissing without a hearing the Petitioner's first cause of action, that he was denied effective assistance of counsel because of his trial counsel's failings at trial.
>
> Second Assignment of Error:
> The Trial Court erred when it overruled the second claim for relief-that the defendant's rights were violated when the Trial Court refused to allow sufficient time to prepare for trial.
>
> Third Assignment of Error:
> The Trial Court erred when it granted appellee's motion for summary judgment when there was a genuine issue as to a material fact in violation of the Fifth, Sixth, Eighth and Fourteenth amendments to the United States Constitution and Article I, Sections 2, 10 and 16 of the Ohio Constitution.

(Second Return of Writ, Doc. No. 84, Exhibit VV.)  The Court of Appeals affirmed the trial court and stated that the assignments of error as asserted by Landrum on appeal were without merit.

(Decision and Judgment Entry, Second Return of Writ, Doc. No. 84, Exhibit YY.)  On May 12,

1999, the Ohio Supreme Court declined to accept jurisdiction to review Landrum's post-conviction

appeal stating that there were no substantial constitutional questions. (Entry, Second Return of Writ,

Doc. No. 84, Exhibit BBB.)

## Proceedings in this Court

The Antiterrorism and Effective Death Penalty Act ("AEDPA" ) was signed and took effect

on April 24, 1996.  Landrum filed his Petition on June 6, 1996 (Doc. No. 11).  A hearing was held

on September 9, 1996, to determine the AEDPA's applicability in this case.  The court determined

that as Landrum's petition was submitted after the Act was signed it is subject to its provisions.

(Order, Doc. No. 38.)  This is consistent with later case law holding the AEDPA applies to all

habeas cases filed after April 24, 1996.  *Bowling v. Parker*, 344 F. 3d 487 (6th Cir. 2003); *Mason v.

Mitchell*, 320 F. 3d 604, 613 (6th Cir. 2003);*Herbert v. Billy*, 160 F. 3d 1131 (6th Cir. 1998), citing

*Lindh v. Murphy,* 521 U.S. 320, 117 S. Ct. 2059, 2068, 138 L. Ed. 2d 481 (1997) and *Harpster v.

Ohio*, 128 F. 3d 322, 326 (6th Cir. 1998).

The case was referred to the undersigned April 13, 2000 (Doc. No. 118).  Petitioner filed his

Second Amended Petition August 1, 2000 (Doc. No. 122).  On July 23, 2001, the Magistrate Judge

denied Petitioner's Motion to Expand the Record (Doc. No. 134) and granted in part and denied in

part Petitioner's Motion for Evidentiary Hearing (Doc. No. 135).  On February 5, 2002, the

Magistrate Judge granted Petitioner's Motion for Reconsideration on expansion of the record (Doc.

No. 148), published at *Landrum v. Anderson*, 185 F. Supp. 2d 868 (S.D. Ohio, 2002).  On July 16,

2002, District Judge Herman Weber transferred this case to newly-appointed District Judge Thomas

31

M. Rose (Doc. No. 155). On January 28, 2003, Judge Rose overruled Respondent's Objections to the Order granting reconsideration on expansion of the record and Petitioner's Objections to the Order Granting in Part and Denying in Part Petitioner's Motion for an Evidentiary Hearing (Doc. Nos. 161, 162). The evidentiary hearing was held beginning September 4, 2003, and the case became ripe for decision on the merits with the filing of post-hearing briefs (Doc. Nos. 195, 196, 199, 200, 202, 203).

## Generally Applicable Law

A federal habeas corpus petitioner must exhaust available state court remedies before obtaining federal consideration of his claims. 28 U.S.C. §2254(b) and (c); *Picard v. Connor*, 404 U.S. 270, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971). There is no dispute between the parties that Petitioner has exhausted his state court remedies.

Title 28 § 2254 of the United States Code, chapter 153, as amended provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim-
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e) (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue

32

> made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Any factual finding made by the state court is presumed to be correct and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). A state court's decision is contrary to Supreme Court's clearly-established precedent if (1) the state court applies a rule that contradicts the governing law as set forth by the Supreme Court case law, or (2) the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nonetheless arrives at a result different from Supreme Court precedent. *Terry Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule [from Supreme Court] but unreasonably applies it to the facts of the particular state prisoner's case," "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply[,] or [if the state court] unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407-08.

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the petitioner is "actually innocent." *Coleman v. Thompson*, 501 U.S. 722, 749, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *see also Simpson v. Jones*, 238 F. 3rd 399, 406 (6th Cir. 2000). To meet the "actual innocence" standard the petitioner must demonstrate that "it is more likely than not that no reasonable petitioner would have found petitioner guilty beyond a reasonable doubt" or "must show by clear and convincing evidence that, but for a

constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Schlup v. Delo*, 513 U.S. 298, 327 (1995)(articulating the necessary standard to prove actual innocence of the crime in which the petitioner was convicted); *Sawyer v. Whitley*, 505 U.S. 333, 336, 350 (1992)(setting forth standard for which applies the *Schlup* "actual innocence" standard to the sentencing phase of the trial).

      The standard for evaluating a procedural default defense is as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *see also Simpson v. Jones,* 238 F. 3rd 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F. 3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). *Wainright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963).

      Failure to raise a constitutional issue at all on direct appeal is subject to the cause and

prejudice standard of *Wainwright v. Sykes*, 433 U. S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).

*Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *Mapes v. Coyle*, 171 F. 3rd 408, 413 (6th Cir. 1999); *Rust v. Zent*, 17 F. 3d 155 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).  Failure to present an issue to the state supreme court on discretionary review constitutes procedural default.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).

> As is well-established (although sometimes muddled by courts), two types of procedural barriers might preclude federal review of claims in a habeas petition. The first type, procedural default, is a judicially created rule, grounded in fealty to comity values and requiring federal courts to respect state court judgments that are based on an "independent and adequate" state procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 732, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (establishing a four-part test for determining whether a procedural rule is an independent and adequate state ground). In procedural default cases, the state court or courts reject a direct or post-conviction appeal because the defendant failed to comply with some state law or rule concerning timeliness, pleading requirements, sufficient evidence, or the like.
>
> The second type of bar, exhaustion, is similarly grounded in respect for state court procedures, but it is federally mandated by AEDPA, see 28 U.S.C. § 2254(b)(1)(A), (c), and requires petitioners to give state courts a "fair opportunity" to assess petitioners' claims. O'Sullivan, 526 U.S. at 844. Often, federal courts will rule that a petitioner's claim is "defaulted" because the petitioner failed to exhaust his remedies and the time for refiling an appeal in the state court has passed. The unexhausted claim is then classified as "procedurally defaulted" and deemed forfeited absent a showing of cause and prejudice. *See In re Cook*, 215 F.3d 606, 607-08 (6th Cir. 2000). . . .
>
> But exhaustion and procedural default are distinguishable in an important sense. A defendant could fail to exhaust a claim without procedurally defaulting if he could return to the state courts to exhaust. Alternatively, as in this case, the defendant could fail to exhaust without defaulting if a clarification in procedural law

35

> indicates that he has already taken the necessary action to exhaust. That is, forfeiture by failure to exhaust entails a legal fiction, of sorts. The state court has not rejected an appeal based on a state rule violation; there is no declaration by the state court of an independent and adequate state ground to which the federal court must defer. Instead, the federal court makes a presumption that the state court would reject the appeal on independent and adequate state grounds if the petitioner tried to file it. But, by declaring the claim forfeited, the federal court saves the petitioner and the state court from respectively preparing and rejecting a futile filing. The federal court then views the claim through the lens of procedural default to determine whether there is cause and prejudice to excuse the default. In short, the crux of forfeiture by failure to exhaust is that the federal court's default decision rests upon a presumption about what the state court would do, rather than respect for what a state court actually did.

*Abdur'Rahman v. Bell (In re Abdur'Rahman)*, 392 F.3d 174, 186-187 (6th Cir., 2004).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Reynolds v. Berry*, 146 F. 3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F. 2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F. 3d 594 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not

36

complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F. 2d, at 138.

The general governing standard for effective assistance of counsel is found in *Strickland v.*

*Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

> As to the second prong, the Supreme Court held:
>
> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainright*, 477 U.S. 168, 106 S. Ct 2464, 91 L. Ed. 2d 144 (1986); *Wong v. Money,* 142 F. 3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F. 2d 1177 (6th Cir. 1987).  *See generally* Annotation, 26 ALR Fed 218.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); *Penson v. Ohio*, 488 U.S. 75, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988).  Counsel must be appointed on appeal of right for indigent criminal defendants. *Douglas v. California*, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963);  *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967);  *United States v. Cronic,* 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).  The right to counsel is limited to the first appeal as of right. *Ross v. Moffitt*, 417 U.S. 600, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974); *Lopez v. Wilson*, ___ F. 3d ___, 2005 U.S. App. LEXIS 21701 (6th Cir. Oct. 7, 2005).  The *Strickland* test applies to appellate counsel.  *Burger v. Kemp,* 483 U.S. 776, 107 S. Ct. 3114, 97 L. Ed. 2d 638 (1987).  The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52).

Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *See Smith v. Murray*, 477 U.S. 527, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F. 3d 688 (6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F. 3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179 F. 3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F. 3d 408, 427-29 (6th Cir. 1999).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F. 3d 674(6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F. 3d 155, 161-62 (6th Cir. 1994). Counsels' failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F. 3d 688 (6th Cir. 2004), *citing Greer v. Mitchell,* 264 F. 3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F. 3d 854, 880 (6th Cir. 2000)(*citing Strickland*).

In *Mapes v. Coyle*, 171 F. 3d 408 (6th Cir. 1999), the court wrote that

... the following considerations ought to be taken into account in determining whether an attorney on direct appeal performed reasonably competently.
(1) Were the omitted issues 'significant and obvious'?
(2) Was there arguably contrary authority on the omitted issues?
(3) Were the omitted issues clearly stronger than those presented?
(4) Were the omitted issues objected to at trial?
(5) Were the trial court's rulings subject to deference on appeal?
(6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

(7) What was appellate counsel's level of experience and expertise?
(8) Did the petitioner and appellate counsel meet and go over possible issues?
(10) Were the omitted issues dealt with in other assignments of error?
(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Manifestly, this list is not exhaustive, and neither must it produce a correct "score"; we offer these inquiries merely as matters to be considered.

171 F. 3d at 427-28 (6th Cir. 1999)(citations omitted).

## Analysis

### First Ground for Relief

Misconduct by the prosecuting attorney during the trial phase of Lawrence Landrum's capital case deprived Lawrence Landrum of his rights to due process, a fair trial, and freedom from cruel and unusual punishment as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In his first ground for relief, Landrum contends that misconduct by the prosecuting attorney during the guilt phase of the trial deprived him of his constitutional rights. (Amended Petition, Doc. No. 122 at 6.)  Landrum cites to multiple instances of alleged misconduct during this phase, including; an improper reference during closing argument to Landrum's plea of not guilty, engaging in improper arguments designed to appeal to the jurors' emotions; and references to defense counsel's attempts to question a witness. *Id.* at 6-8.

Petitioner has withdrawn this Ground for Relief. (Lawrence Landrum's Notice of Additional Authority "Notice of Additional Authority," Doc. No. 203 at 5.)

### Second Ground for Relief

> Misconduct by the prosecuting attorney during the sentencing phase of Lawrence Landrum's capital case deprived Lawrence Landrum of his rights to due process, a fair trial, and freedom from cruel and unusual punishment as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In his second ground for relief, Landrum argues he was denied his constitutional rights as by the prosecuting attorneys' misconduct during the sentencing phase of his trial. (Amended Petition, Doc. No. 122 at 9.)  He specifically alleges the following as misconduct: commenting during the State's cross-examination of Landrum that his alleged admission of the murder to others constituted an aggravating circumstance; introduction of victim impact statements in the form of family members' personal beliefs of Landrum's guilt; misstatement of applicable law regarding the mitigating factor of youth of the offender; and the solicitation of testimony concerning non-statutory aggravating circumstances from Landrum during cross-examination and then commenting on the testimony during closing.  He argues he sole purpose of said testimony was to elicit emotions from the jury and to inject personal feelings of counsel without consideration to actual evidence presented. *Id*. at 9-10.  Respondent counters that the decision of the Ohio Supreme Court rejecting this claim was neither contrary to nor an unreasonable application of federal law. (Amended Return of Writ, Doc. No. 123 at 49.)

In his first sub-claim, Landrum contends that the prosecutor improperly commented on invalid aggravating circumstances based on Landrum's alleged confession to the teenagers and the feelings of the victim's family. (Amended Petition, Doc. No. 122 at 9.)  This alleged confession had previously been testified to by numerous witnesses. T.p. 2/19/86 at 69-70 (testimony of Mike Robinson during which he states that Landrum told him that he had slit the victim's throat from ear to ear and that Landrum then threatened the teenagers by saying the same would happen to them if

41

they went to the police with this information); 78 (testimony of Rick Perry that Landrum had confessed to having killed Mr. White); 84 (testimony from Larry Perry that Landrum had confessed to the murder); 98 (testimony from Cary Leasure as to the confession); 108, 110-111 (testimony from Karen Hughes Brown as to the confession, Landrum asking her if she would like to see the body, and Landrum's threat to the teenagers.) Defense counsel had been given the opportunity, and in fact did, cross-examine these witnesses. Landrum was asked about the alleged confession on cross-examination and responded that he did not remembering having made it. Thus, Petitioner responded to the allegations.

Furthermore, Landrum's contention that there was prosecutorial misconduct arising from the prosecutor's statement that the victim's family believed that the alleged confession served as an aggravated circumstance is without merit.(Amended Petition, Doc. No. 122 at 9, 53.) Once the comment was made, defense counsel immediately objected based on the fact that the belief was not an aggravating factor. The Prosecutor responded, "I submit that they are and I am sure that the White family will submit that they are." T.p. 3/18/86 at 29. A bench conference was held and the prosecutor was admonished. Defense counsel did not request a curative instruction. *Id*. at 29-32. The Sixth Circuit has held that "for a curative instruction to be sufficient, it must be swift and in proportion to the potential harm" *quoting United States v. Galloway*, 316 F.3d 624, 633 (6th Cir. 2003) *citing United States v. Solivan*, 937 F.2d 1146, 1157 (6th Cir. 1991); *United States v. Bess*, 593 F.2d 749, 757 (6th Cir. 1979). Like the other cases, the trial judge here immediately expressed disapproval of the Prosecutor's comment. Furthermore, the jurors were given the standard charge that opening and closing arguments were not in evidence. *See infra* Nineteenth Ground for Relief at 115-116.

42

As for the allegation that the prosecutor gave an improper definition of the mitigation factor of "age," this is, in the first instance, a question of interpretation of state law, which absent a constitutional violation is not cognizable on federal habeas corpus. *Estelle v. McGuire*, 502 U.S. 62, 71 (1991).  The Ohio Supreme Court has held that the word age in §2929.04 (B)(3) should be given its plain meaning, "[a]bsent any indication to the contrary, the word "age" means chronological age and should be interpreted as such . . . ." *State v. Rogers*, 17 Ohio St. 3d 174, 183, 478 N.E. 2d 984 (1985) *vacated on other grounds*,474 U.S. 1002 (1985).  The state court does recognize however, that when considering "age" relative experience and maturity may be taken into account. *State v. Brewer*, 48 Ohio St. 3d 50, 57, 549 N.E. 2d 491, 498 (1990); *State v. Cooey*, 46 Ohio St. 3d 20, 544 N.E. 2d 895 (1989).  Nothing in this interpretation raises a question of federal constitutional law.

Next Landrum argues that there was prosecutorial misconduct during the penalty phase of his trial when the State commented on non-statutory aggravating circumstances during closing arguments. (Amended Petiton, Doc. No. 122 at 10, 53.)  Specifically, Landrum cites to the prosecutor's use of his testimony on cross-examination to demonstrate that the manner of the killing was a statutory aggravating circumstance. *Id*.  Landrum notes that prior calculation and design is not an aggravating circumstance when a defendant is charged as a principal. *Id*.  Under Ohio law, while it is proper for the prosecution to refer to the nature and circumstances, it is improper to characterize the evidence as non-statutory aggravating circumstances. *Combs v. Coyle*, 205 F.3d 269 (6th Cir. 2000); *Ohio v. Gumm*, 73 Ohio St. 3d 413, 653 N.E. 2d 253 (1995); *Ohio v. Davis*, 38 Ohio St. 3d 361, 528 N.E. 2d 925 (1988).

Here the cross-examination was used to establish two points; first that Landrum had planned the entire crime in advance and second, that Landrum had a cold or cruel attitude about the murder

43

of White.  During his closing argument the prosecutor urged jurors to consider these points when determining the sentence.  The prosecutor's comments during closing argument were directed toward the evidence presented.  The State was attempting to discredit the defense's argument that the murder was an accident and that Landrum was sorry for his role in the events by arguing that the murder was premeditated and that Landrum had a cold or cruel attitude about the murder.  Furthermore, the trial court gave an instruction as to what constituted aggravating circumstances.  Additionally, the jurors were given a standard instruction to disregard any statement to which there was an objection that was sustained, as well as an instruction that the opening and closing arguments were not evidence.  Therefore the decisions of the state courts rejecting this claim were neither contrary to nor an unreasonable application of clearly established federal law.  This sub-claim is without merit.  *See infra* Nineteenth Ground for Relief at 115-116.

Finally, Landrum argues cumulative error in conjunction with the above alleged acts of misconduct. (Amended Petition, Doc. 122 at 10.)  He argues that the misconduct was "all the more damaging in this instance because the State's case was not strong.  There was no physical evidence linking Landrum to the murder.  Landrum's fingerprints were not found in the apartment.  No fiber or trace evidence tied Landrum to the killing." (Amended Traverse, Doc. No. 124 at 140.)

The Court disagrees with the assertion that the case against Landrum was weak.  While there was little in the way of physical evidence, the other evidence in this case was strong.  Landrum himself admitted to his presence and participation in the burglary and that he threatened White with a knife. T.p. 2/20/86 22-99.  Additionally, multiple witnesses stated that Landrum confessed to the murder. T.p. 2/19/86 at 69-70, 78, 84, 98, 108, 110-111.  Furthermore, this Court rejects the notion that multiple non-meritorious claims can be combined into a "cumulative effect" claim.  As none

44

of the individual acts of alleged prosecutorial misconduct have risen to the level of prosecutorial

misconduct, Petitioner is not entitled to relief on this sub-claim. This ground for relief is without

merit in its entirety.

**Third Ground for Relief**

> Mr. Landrum was denied his rights to the effective assistance of
> counsel during the mitigation phase of his capital trial in violation of
> the Fifth, Sixth, Eighth and Fourteenth Amendments to the United
> States Constitution.

In his third ground for relief, Petitioner alleges that his rights to effective assistance of

counsel were denied due to counsel's actions during the mitigation phase of the trial. (Amended

Petition, Doc. No. 122 at 12); (Amended Traverse, Doc. No. 124 at 55-77.) Landrum cites

numerous instances of alleged ineffective assistance of counsel including that counsel:

A) failed to fully prepare and present Mr. Landrum's case in
mitigation

B) failed to provide important information and potential leads to
the mitigation investigators

C) failed to adequately prepare to testify those family members
and mitigation witnesses who took the stand

D) failed to conduct a thorough search and subsequent collection
of records pertaining to Mr. Landrum's education, health
status, family history and development

E) failed to present testimony of individuals familiar with, or
actual records from, Lawrence Landrum's medical treatment,
psychological treatment, institutional functioning, and
education experiences

F) failed to seek the assistance of, and present testimony of, a
psychologist or psychiatrist who could have provided
information regarding Mr. Landrum's developmental history,
mental and emotional functioning, personality
symptomatolgy, family and social dynamics, and other
important aspects of understanding Lawrence Landrum and
how he came to participate in the offenses charged

G) failed to seek the assistance of, and present the testimony of
an expert to review, analyze, and explain Mr. Landrum's use

45

and abuse of drugs and alcohol

H)     failed to adequately prepare Appellant for his penalty phase testimony and failed to adequately explain to Mr. Landrum the potential consequences of testifying under oath

I)     failed to insure that a complete psychosocial history of Mr. Landrum was prepared and presented to an expert psychologist and other necessary experts

J)     failed to conduct the requisite investigation and presentation which would have uncovered information revealing considerable and significant dates relevant to the issue of balancing the aggravating circumstance of the crime against the extensive mitigation factors

K)     failed to present expert testimony to integrate the mitigation evidence which was otherwise presented or would be had a thorough investigation been performed

L)     failed to fully develop and understand a cohesive mitigation theory for presentation to the jury

M)     failed to obtain highly relevant available psychological reports or evaluations which were available

N)     admitted to the jury in closing argument, "I don't know, I am not a psychologist, I'm just trying to piece together what you all heard."

O)     implied to the jury that they could not be fair because of their decision in the trial phase

Counsel are also alleged to have been ineffective in their failure to make proper objections to the following:

A)     the court's jury instructions that the jury verdict is only a recommendation

B)     the jury verdict forms that erroneously referred to the jury's verdict as a recommendation for both death and life verdicts

C)     Conflicting information provided to the jury that their verdict of the death penalty would be a recommendation and a life verdict would be binding, while the verdict forms made reference to a life verdict as being a recommendation only

D)     prosecutorial misconduct during closing arguments

Finally, counsel are alleged to have been ineffective in their failure to perform the following:

A)      failed to proffer sufficient information and evidence to adequately preserve the trial court's error regarding the testimony (or refusal to testify) of Lawrence Landrum's co-defendant, Grant Swackhammer

B)      failed to request the State to seek immunity for Grant Swackhammer or to fully question Mr. Swackhammer for the record regarding his refusal to testify so evidence for appellate review could be developed

C)      failed to request appropriate jury instructions as well as to object to legally and constitutionally incorrect jury instructions and comments, and to make necessary arguments, objections, and/or proffers to insure a meaningful appellate review

D)      failed to adequately proffer, for the record, sufficient details regarding the anticipated testimony of Rameal (Randy) Coffenberger and/or William Grant Swackhammer

E)      failed to make a complete record regarding the inability of counsel to provide effective assistance of counsel as a result of their failure to insure that a complete and adequate investigation of potential mitigation evidence was complete.

(Amended Petition, Doc. No. 122 at 12-15.)

Respondent contends that this claim was not raised on direct appeal and is therefore procedurally defaulted. (Amended Return of Writ, Doc. No. 123 at 52.)  The issues were raised during post-conviction relief proceedings but were denied pursuant to *Cole*, which held that "because new counsel represented appellant during his direct appeals, the doctrine of *res judicata* bars the appellant from raising any ineffective assistance of counsel claims except those that rely on evidence outside the record." *State v. Cole*, 2 Ohio St. 3d 112, 443 N.E. 2d 169 (1982); (Amended Return of Writ, Doc. No. 123 at 52); (Second Return of Writ, Doc. No. 84, Exhibit UU.) The post-conviction court considered the merits only of ineffectiveness claim based on failure to obtain adequate social and substance abuse history. (Amended Return of Writ, Doc. No. 123 at 54); (Second Return of Writ, Doc. No. 84, Exhibit UU.)  The court determined that all evidence in support of that sub-claim was cumulative.  Thus, Respondent concludes that, with the exception of

47

the sub-claim considered on the merits, this claim is procedurally defaulted (Amended Return of Writ, Doc. No. 123 at 53). Respondent further argues that the decision of the state courts on the ineffectiveness for failure to obtain adequate social and substance abuse history was neither contrary to nor an unreasonable application of federal law. *Id.*

Petitioner asserts that *res judicata* was improperly applied to this claim as his ineffective assistance of counsel claims could not have been raised without resort to evidence outside the record. (Amended Traverse, Doc. No. 124 at 49-50.) Landrum asserts that he met the state-established burden in post-conviction relief claims of ineffective assistance of counsel by submitting evidentiary documents demonstrating counsel's failure to investigate and prepare for mitigation. *State v. Jackson*, 64 Ohio St. 2d 107, 413 N.E. 2d 819 (1980). The Ohio Supreme Court has recognized evidence such as affidavits demonstrating a lack of effort to contact witnesses or the availability of additional mitigating evidence as proper evidence outside the record to sustain an ineffective assistance of counsel claim on post-conviction. *State v. Keith*, 79 Ohio St. 3d 514, 684 N.E. 2d 47 (1997).

All other portions of this claim served as an underlying claim in Petitioner's Application for Reopening and Application for Delayed Reconsideration. (Amended Return of Writ, Doc. No. 123, Exhibits CCC.) That is to say, Petitioner argued there that it was ineffective assistance of appellate counsel to fail to argue these instances of ineffective assistance of trial counsel.

If appellate counsel were found to be ineffective in failing to raise these claims, that could constitute "cause, excusing Petitioner's failure to raise them on direct appeal. Of course, a claim of ineffective assistance of appellate counsel can itself be procedurally defaulted by failing to present it properly to the state courts. *Edwards v. Carpenter,* 529 U.S. 446 (2000). Although

48

Respondent asserted that Petitioner had thus defaulted on his ineffective assistance of appellate counsel claims, and the Ohio courts agreed, this Court held to the contrary, concluding that the timeliness rule in Ohio App. R. 26(B) was not, as applied to Petitioner, an adequate and independent state ground of decision.  (Decision and Entry Granting Petitioner's Motion for Reconsideration, Doc. No. 148, published at *Landrum v. Anderson*, 185 F. Supp. 2d 868 (S.D. Ohio, 2002).)  This decision was affirmed by Judge Rose (Doc. No. 161) and is now the law of the case.  Thus this Court must decide *de novo* whether it constituted ineffective assistance of appellate counsel for the appellate attorneys to fail to raise on direct appeal the claims which formed the basis of the Ohio App. R. 26(B) Application.

To do that, some examination of the merits of Landrum's underlying ineffective assistance of trial counsel claim is necessary.  First, Petitioner must show that trial counsel's performance was deficient rendering it ineffective. *Strickland, supra*.  In evaluating whether or not the representation of counsel fell into the category of ineffectiveness it must be evaluated for "reasonableness under prevailing professional norms." *Id*.  When analyzing an ineffectiveness claim for failure to investigate, the Court must consider the claim by assessing the reasonableness of the decision and by giving heavy deference to counsel's judgment. *Id*. at 691; *but see Glenn v. Tate*, 71 F.3d 1204, 1207 (6th Cir. 1995)(holding that defense counsel has a duty to investigate and present some form of mitigation evidence at the penalty phase of the trial); *see also Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997)(articulating that the failure of trial counsel "to investigate and present any mitigating evidence during the sentencing phase so undermines the adversarial process that [defendant's] death sentence was not reliable"); *see further Skaggs v. Parker*, 235 F.3d 261, 269, 271 (6th Cir. 2000). There is a constitutional duty on the part of counsel to investigate as effective assistance requires

making professional decisions and informed legal choices, which can only be rendered only after investigation. *Strickland,* 466 U.S. at 680; *Carter v. Bell*, 218 F.3d 581, 596 (6th Cir. 2000)(Counsel must make some effort at independent investigation in order to make a reasoned, informed decision as to [the utility of mitigating factors offered by defendant]".)  Furthermore, a failure to investigate not only encumbers defense counsel's ability to make strategic decisions, but it also affects their ability to advise defendant of possible mitigation strategies and the evidence to be presented.  The investigation does not need to be exhaustive, but must be reasonably substantial in examining the facts, circumstances, pleadings and the laws involved. *Strickland*, 466 U.S. at 680.

Next, Petitioner must be able to show that he was prejudiced by the ineffectiveness of counsel. *Id.*  Prejudice results when the petitioner was deprived of a fair trial. *Id.*  To demonstrate this prejudice a petitioner must show that there is a reasonable probability that, but for the unprofessional errors, the result of the proceeding would have been different. *Id.* at 698.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  In certain circumstances, such as actual or constructive denial of assistance of counsel, prejudice is presumed, as the defendant has a Sixth Amendment right to counsel to ensure he is given the assistance necessary to rely on the outcome of the trial. *Id.* at 692; *United States v. Cronic*, 466 U.S. 648, 658 (1984); *Rickman v. Bell*, 131 F.3d 1150 (6th Cir. 1997)(inferring prejudice when there is a complete failure to investigate existing mitigating evidence as such representation is below an objective standard of reasonable representation.)

The American Bar Association has adopted Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases. (1989 and 2003).  The Supreme Court of the United States has held that these guidelines "provide the guiding rules and standards to be used in defining the

"prevailing professional norms."" *Wiggins v. Smith*, 539 U.S. 510 (2003)(reinforcing rulings in

*Glenn v. Tate*, 71 F.3d 1204, 1206-08 (6th Cir. 1995); *Austin v. Bell*, 126 F.3d 846, 847-48 (6th Cir.

1997); *Coleman v. Mitchell*, 268 F.3d 417, 449-52 (6th Cir. 2001)). Though Landrum's trial was

prior to 1989, the Sixth Circuit held in *Hamblin* that the standards of the 1989 ABA rules merely

represented:

> a codification of longstanding, common-sense principles of
> representation understood by diligent, competent counsel in death
> penalty cases. The ABA standards are not aspirational in the sense
> that they represent norms newly discovered after *Strickland*. They
> are the same type of longstanding norms referred to in *Strickland* in
> 1984 as "prevailing professional norms" as "guided" by "American
> Bar Association standards and the like."

*Hamblin v. Mitchell*, 354 F.3d 482, 486 (6th Cir. 2003). As the *Wiggins* Court specifically articulated

that it was not making "new law" regarding the "prevailing norms" on ineffective assistance of

counsel claims and that the standards have routinely been applied by the Sixth Circuit, there is no

reason why the 1989 ABA Guidelines would not apply to Landrum's claim as well. *Wiggins*, 539

U.S. 510; *Hamblin,* 354 F.3d at 486. The Guidelines provide that:

> Investigations into mitigating evidence "should comprise efforts to
> discover *all reasonably available* mitigating evidence and evidence
> to rebut any aggravating evidence that may be introduced by the
> prosecutor." ABA Guidelines for the Appointment and Performance
> of Counsel in Death Penalty Cases 11.4.1 (C), p 93 (1989) . . . .

> [T]hat among the topics counsel should consider presenting are
> medical history, educational history, employment and training
> history, *family and social history*, prior adult and juvenile
> correctional experience, and religious and cultural influences. ABA
> Guidelines for the Appointment and Performance of Counsel in
> Death Penalty Cases 11.8.6, p 133

*Wiggins*, 539 U.S. 510 (2003)(Emphasis in original).

Landrum's attorneys stated many times in requesting continuances that the mitigation

investigation was incomplete and inadequate. They argued that due to their own time constraints and prior obligations of the mitigation specialists and investigators, they did not have adequate time to investigate, collect the necessary records, data, and other information, and fully conduct interviews. (Amended Traverse, Doc. No. 124 at 59-60.) Ideally, they argue, an investigation should take at least three months so that a mitigation theory may be developed, experts may be consulted if necessary, and tests may be conducted. Landrum, however, was arrested on September 19 and the mitigation investigation did not commence until January 22, approximately six weeks before his sentencing phase.[6] (Amended Traverse, Doc. No. 124 at 59.)

As a result of the abbreviated investigation Petitioner argues that his counsel were ineffective in their failure to investigate his background, character, and development. (Amended Petition, Doc. No. 122 at 12-13); (Amended Traverse, Doc. No. 124 at 59-60.) During an evidentiary hearing before this Court on September 4, 2003, and on November 13, 2003, Landrum presented testimony from mitigation specialist Jill Miller, a clinical psychologist and addiction specialist, Dr. Robert Smith, and from Landrum's mitigation team member, Jane Core, to support this claim. T.p. 9/4/03, Doc. No. 182; T.p. 11/13/03, Doc. No. 192.

Affidavits of Landrum's family members show that some family members would have been willing to testify on Landrum's behalf had they been asked to do so. Aff. of George Synett ¶ 15, October 29, 1996; Aff. of Maxine Synett Forsythe ¶ 13, October 29, 1996; Aff. of Janice Synett ¶ 11, October 30, 1996; Aff. of. Dwayne Synett ¶ 11, October 29, 1996; Aff. of Gary Synett ¶ 10,

---

[6] Landrum asserts the following dates of events to support his ineffective assistance of counsel during mitigation claim. He was arrested on September 20. A mitigation specialist was contacted and had a consultation with defense attorneys on December 5. There was a second consultation meeting between the mitigation team and counsel on January 7. Work began on the mitigation phase and the mitigation specialist met with Landrum for the first time on January 22. The first records request was made on January 31. Interviews of potential mitigation witnesses began on February 3. Additional records requests were made on February 5 and March 5. Landrum's sentencing phase began on March 17.(Amended Traverse, Doc. No. 124 at 59.)

October 30, 1996; Aff. of Pat Synett ¶ 13, October 29, 1996; Aff. of Paulette Lightfoot ¶ 13, October

1996; Aff. of Charlene Cole ¶ 7, October 29, 1996; Aff. of Mike MacInnis ¶ 10, October 30, 1996;

Aff. of Joey Synett ¶ 12, not signed,[7] Aff. of Michelle Landrum ¶ 12, July 25, 1996; Aff. of Dorothy

Landrum ¶ 11, July 25, 1996.  Affidavits from those who did testify stated that they were not made

aware of what type of evidence may have been relevant to the mitigation portion of the trial and that

they did not feel adequately prepared to testify. Aff. of Phyllis Synett ¶ 12, October 29, 1996; Aff.

of Joan Synett MacInnis ¶ 17-18, October 29, 1996; Aff. of Lori MacInnis Wilding ¶ 12, October

29, 1996; Aff. of Dan MacInnis ¶ 8, October 29, 1996.  Finally, Landrum argues that the affidavits

show that additional mitigation testimony was available and could have been presented to give the

jury a better understanding of his development throughout his childhood and adolescent years.

(Amended Petition, Doc. No. 122 at 13-14);(Amended Traverse, Doc. No. 124 at 59-60); (Second

Return of Writ, Doc. No. 84, Exhibit SS.)  This information includes:

1.      Household in Sault Sainte Marie was chaotic. Aff. of George Synett ¶ 4, October 29, 1996; Aff. of Maxine Synett Forsythe ¶ 4, October 29, 1996; Aff. of Joan Synett MacInnis ¶ 4, October 29, 1996; Aff. of Shirley Synett Forrest ¶ 4, October 31, 1996; Aff. of Janice Synett ¶ 3, October 30, 1996; Aff. of Paulette Lightfoot ¶ 3, October 1996.

2.      Due to chaos the children in the household did not know who was in charge. Aff. of George Synett ¶ 4, October 29, 1996; Aff. of Shirley Synett Forrest ¶ 4, October 31, 1996.

3.      Landrum's maternal grandmother/maternal grandparents was/were the primary caretaker(s) as June Landrum was often working or out with friends. Aff. of Dwayne Synett ¶ 5, October 25, 1996; Aff. of George Synett ¶ 6, October 29, 1996; Aff. of

_____

[7]According to footnote number 2 in Exhibits to Respondent's Second Return of Writ, Exhibit QQ "The original signed affidavit of Joey Synett has been misplaced.  An unsigned copy of the affidavit has been included in the Supplemental Appendix to the Petition to Vacate or Set Aside Conviction and/or Sentence Pursuant to the Ohio Revised Code Section 2953.21, et seq.  Joey Synett lives in Mesa, Arizona, and is unable to be reached by telephone. Counsel is in the process of obtaining another signed affidavit from Mr. Synett by way of mail."

Maxine Synett Forsythe ¶ 6, October 29, 1996; Aff. of Joan Synett MacInnis ¶ 6, October 29, 1996; Aff. of Shirley Synett Forrest ¶ 7, October 31, 1996; Aff. of Janice Synett ¶ 4, October 30, 1996; Aff. of Paulette Lightfoot ¶ 5, October 1996; Aff. of Charlene Cole ¶ 3, October 29, 1996.

4.      The Synett family was very poor and may have had an inferiority complex because of this. Aff. of Pat Synett ¶ 5, October 29, 1996.

5.      Maternal Grandfather used to abuse alcohol every week or two. Aff. of Dwayne Synett ¶ 6, October 29, 1996; Aff. of Joan Synett MacInnis ¶ 5, October 29, 1996; Aff. of Pat Synett ¶ 9, October 29, 1996; Aff. of Paulette Lightfoot ¶ 12, October 1996.

6.      Grandfather would binge drink and would get mean when he was drunk, taking out his anger on the nearest target. Aff. of George Synett ¶ 14, October 29, 1996; Aff. of Shirley Synett Forrest ¶ 13, October 31, 1996.

7.      Many members of Landrum's family had drinking and/or drug problems. Aff. of George Synett ¶ 14, October 29, 1996; Aff. of Maxine Synett Forsythe ¶ 9, October 29, 1996; Aff. of Joan Synett MacInnis ¶ 5, October 29, 1996; Aff. of Shirley Synett Forrest ¶ 13, October 31, 1996; Aff. of Janice Synett ¶ 9, October 30, 1996; Aff. of Gary Synett ¶ 4, October 30, 1996; Aff. of Pat Synett ¶ 9, October 29, 1996; Aff. of Paulette Lightfoot ¶ 12, October 1996; Aff. of Lori MacInnis Wilding ¶ 9, October 29, 1996; Aff. of Mike MacInnis ¶ 5, October 30, 1996; Aff. of Dan MacInnis ¶ 7, October 29, 1996.

8.      There were incidents of sexual abuse within the household. Aff. of Paulette Lightfoot ¶ 8,October 1996; Aff. of Charlene Cole ¶ 5, October 29, 1996.

9.      Landrum was sexually abused by an older female cousin when he was very young. Aff. of Charlene Cole ¶ 6, October 29, 1996.

10.     The move to Ohio was extremely difficult on Landrum. Aff. of Dwayne Synett ¶ 8, October 29, 1996; Aff. of George Synett ¶ 7 ,October 29, 1996; Aff. of Maxine Synett Forsythe ¶ 7, October 29, 1996; Aff. of Shirley Synett Forrest ¶ 8, October 31, 1996; Aff. of Janice Synett ¶ 6, October 30, 1996; Aff. of Pat Synett ¶ 6-7, October 29, 1996; Aff. of June Synett Landrum ¶ 8, July 25, 1996; Aff. of Dorothy Landrum ¶ 3, July 25, 1996.

11.     Richard Landrum drank a lot. Aff. of George Synett ¶ 9, October 29, 1996.

12.     Richard Landrum had a bad temper. Aff. of George Synett ¶ 9, October 9, 1996; Aff. of Gary Synett ¶ 5, October 30, 1996; Aff. of Pat Synett ¶ 8, October 29, 1996; Aff. of Joey Synett ¶ 8 (not signed)

13.     Witnessed Richard Landrum break a chair in anger. Aff. of Phyllis Synett ¶ 5, October 29, 1996.

14.     Landrum spoke of at least one, if not multiple occasions, when Richard Landrum had hit him. Aff. of Phyllis Synett ¶ 6, October 29, 1996; Aff. of Joey Synett ¶ 9 (not signed)

15.     Landrum was greatly affected by the death of his maternal grandmother. Aff. of June Synett Landrum ¶ 9, July 25, 1996.

16.     Landrum was affected by the death of his baby brother, Peter. Aff. of June Synett Landrum ¶ 11, July 25, 1996; Aff. of Dorothy Landrum ¶ 6, July 25, 1996.

17.     Family had a history of depression. Aff. of Michelle Landrum ¶ 7, July 25, 1996.

18.     When siblings were born Landrum was "shoved to the side." Aff. of George Synett ¶ 10, October 29, 1996; Aff. of Dan MacInnis ¶ 4, October 29, 1996.

19.     Landrum thought that Richard Landrum was his father until he was told the truth at age 11. Aff. of Phyllis Synett ¶ 3, October 29, 1996; Aff. of Dorothy Landrum ¶ 5, July 25, 1996; Aff. of Shirley Synett Forrest ¶ 11, October 31, 1996.

20.     At times Landrum seemed bothered by the fact he did not know the identity of his real father. Aff. of Lori MacInnis Wilding ¶ 6, October 29, 1996; Aff. of Joey Synett ¶ 10 (not signed); Aff. of Betty Lewis Wilson ¶ 4, October 30, 1996.

21.     Knew Landrum was drinking and/or using drugs. Aff. of Dwayne Synett ¶ 10, October 29, 1996; Aff. of Phyllis Synett ¶ 8, October 29, 1996; Aff. of Maxine Synett Forsythe ¶ 11, October 29, 1996; Aff. of Joan Synett MacInnis ¶ 12, October 29, 1996; Aff. of Shirley Synett Forrest ¶ 14, October 31, 1996; Aff. of Janice Synett ¶ 8, October 30, 1996; Aff. of Gary Synett ¶ 8, October 30, 1996; Aff. of Pat Synett ¶ 11, October 29, 1996; Aff. of Paulette Lightfoot ¶ 11, October 1996; Aff. of Lori MacInnis Wilding ¶ 4, October 29, 1996; Aff. of Mike MacInnis ¶ 6, October 30, 1996; Aff. of Dan MacInnis ¶ 6, October 29, 1996; Aff. of Betty Lewis Wilson ¶ 6, October 30, 1996; Aff. of June Synett Landrum ¶ 15, July 25, 1996.

22.     Drugs and alcohol changed Landrum's personality. Aff. of Dwayne Synett ¶ 9, October 29, 1996; Aff. of Phyllis Synett ¶ 8, October 29, 1996; Aff. of Paulette Lightfoot ¶ 11, October 1996; Aff. of Lori MacInnis Wilding ¶ 5, October 29, 1996.

23.     Landrum would get mellow when he drank. Aff. of Mike MacInnis ¶ 2, October 30, 1996.

24.     Landrum was a nice person when he was not using drugs or alcohol. Aff. of Lori

MacInnis Wilding ¶ 10, October 29, 1996.

25. Landrum would often black out after consuming a large amount of alcohol. Aff. of Mike MacInnis ¶ 3, October 30, 1996.

26. Thought Landrum was very immature for his age. Aff. of George Synett ¶ 13, October 29, 1996; Aff. of Phyllis Synett ¶ 10, October 29, 1996; Aff. of Maxine Synett Forsythe ¶ 12, October 29, 1996; Aff. of Joan Synett MacInnis ¶ 14, October 29, 1996; Aff. of Gary Synett ¶ 7, October 30, 1996; Aff. of Pat Synett ¶ 12, October 29, 1996; Aff. of Lori MacInnis Wilding ¶ 3, 7, October 29, 1996; Aff. of Mike MacInnis ¶ 7, October 30, 1996; Aff. of Dan MacInnis ¶ 5, October 29, 1996; Aff. of Betty Lewis Wilson ¶ 8, October 30, 1996.

27. Never saw Landrum lose his temper. Aff. of Joan Synett MacInnis ¶ 11, October 29, 1996.

28. Landrum had a non-violent nature. Aff. of Phyllis Synett ¶ 11, October 29, 1996; Aff. of Maxine Synett Foresythe ¶ 10, October 29, 1996; Aff. of Shirley Synett Forrest ¶ 12, October 31, 1996; Aff. of Mike MacInnis ¶ 4, October 30, 1996; Aff. of Betty Lewis Wilson ¶ 7, October 30, 1996; Aff. of Michelle Landrum ¶ 8, July 25, 1996.

29. When visiting Landrum after his arrest he was extremely upset, sweating, shaking, and almost in hysteria. Aff. of Michelle Landrum ¶ 9, July 25, 1996.

30. Was not contacted by defense counsel or mitigation experts and would have been willing to testify on Landrum's behalf had they been asked to do so. Aff. of George Synett ¶ 15, October 29, 1996; Aff. of Maxine Synett Forsythe ¶ 13, October 29, 1996; Aff. of Janice Synett ¶ 11, October 30, 1996; Aff. of. Dwayne Synett ¶ 11, October 29, 1996; Aff. of Gary Synett ¶ 10, October 30, 1996; Aff. of Pat Synett ¶ 13, October 29, 1996; Aff. of Paulette Lightfoot ¶ 13, October 1996; Aff. of Charlene Cole ¶ 7, October 29, 1996; Aff. of Mike MacInnis ¶ 10, October 30, 1996; Aff. of Joey Synett ¶ 12 (not signed); Aff. of Michelle Landrum ¶ 12, July 25, 1996; Aff. of Dorothy Landrum ¶ 11, July 25, 1996.

31. Interviewed by the mitigation specialist one-on-one for approximately an hour but was not asked to testify during the mitigation phase of trial. Aff. of Shirley Synett Forrest ¶ 16, October 31, 1996.

32. Attorneys and mitigation specialists did not spend much time helping witnesses prepare mitigation testimony, seemed rushed. Aff. of Phyllis Synett ¶ 12, October 29, 1996; Aff. of Joan Synett MacInnis ¶ 17-18, October 29, 1996; Aff. of Lori MacInnis Wilding ¶ 12, October 29, 1996; Aff. of Dan MacInnis ¶ 8, October 29, 1996.

33.     Was not interviewed one-on-one regarding Landrum's background but rather in a group setting. Aff. of Joan Synett MacInnis ¶ 18, October 29, 1996; Aff. of Lori MacInnis Wilding ¶ 11-12, October 29, 1996.

34.     Was not interviewed at all prior to testifying, but rather was addressed in a group prior to testifying.  Did not feel adequately prepared. Aff. of Dan MacInnis ¶ 8 October 29, 1996.

After a thorough review of the mitigation phase transcript, this Court concludes that information regarding the following aspects of Landrum's life was presented in witness testimony: Landrum did not know his real father; the home in Sault Sainte Marie was chaotic; the move from Sault Sainte Marie, Michigan to Chillicothe, Ohio was very hard on Landrum; Landrum's stepfather had a temper and was often unpredictable in when he would punish the children; the death of his younger brother was hard on the Petitioner; once his siblings were born, they got more attention than Landrum did; Landrum got in trouble with the law when he was a teenager and would occasionally run away from home; he was hospitalized for a drug overdose; the family sought family counseling but felt that they never got a handle of Landrum's behavior when he was using drugs and/or alcohol; the family felt that the court system and youth homes failed to provide an adequate remedy for Landrum's behavior; Landrum went into the Navy hoping to "straighten up" and get away from his "bad" friends; he had a drinking problem after he was discharged from the Navy; his relationship with Betty fell apart because of his drinking problem; that approximately two weeks before the murder Landrum was using drugs and said that he wanted to get help for his problems; that Landrum has a non-violent personality; and that there are noticable differences in his personality when he is sober and when he is using drugs and/or alcohol.

This Court finds that the majority of the mitigating evidence presented in affidavits in support of the Petition for Post-Conviction Relief was in fact presented in this stage of trial.  While

57

perhaps the information was not presented in the most thorough manner possible, it seems clear that as far as the above pieces of mitigation evidence are concerned, that counsel did in fact investigate and present adequate mitigation evidence. T.p. 3/17/86 at 32 (did not know real father); 33, 59-60, 91, 108-111, 146 (life in Michigan); 34, 60 (move to Ohio); 61-62, 74-75, 148, 148, 164-165 (abusive/ fearful relationship with step-father); 42 (deaths); 75-76, 149 (siblings); 36-38, 52-54, 70, 104 (trouble with law/running away); 39, 44, 63-64 (drug overdose); 40-41, 52-53, 64-66, 71 (failure of juvenile system); 46, 54-55, 78 (Navy); 39, 41, 48, 67, 115, 120-121, 158-159, 162-163, 165-166, 169-173 (knowledge of drinking and drugs/took drugs on day of murder); 44-46, 160, 170, 173-174 (change in his appearance/personality as a result of drinking and drugs); 50, 58, 68, 77, 93, 116-117, 149-150, 163, 165-166 (non-violent nature); T.p. 3/18/86 at 8-9 (relationship with step-father); 5-8 (knowledge of drinking and drugs); 6-7, 9 (change in his appearance/personality as a result of drinking and drugs); 9 (non-violent nature).

Landrum argues that counsel should have provided information of his family's history of alcohol and drug abuse and depression. While this Court recognizes that it is an area which is important and the ABA recommends investigating, this information could have been provided by Petitioner or family members during the mitigation investigation. *Babit v. Calderon*, 151 F.3d 1170 (9th Cir. 1998)(holding that counsel was not ineffective in their failure to discover a long family history of mental illness as counsel had interviewed multiple family members that knew of such information but did not disclose it.)

Similarly, Petitioner argues that counsel were ineffective in their failure to discover and present evidence that Petitioner may have been sexually abused on a couple of occasions by an older cousin. Again, this information could have been presented by Petitioner during investigation. *See*

T.p. 11/13/03, Doc. No. 192 at 29-31, 41-43.  Further, no report raised the possibility of sexual abuse to put counsel on notice that they should investigate the possibility. Jane Core, mitigation specialist on this case did not recall any red flags that had been raised which made her want to question the possibility of sexual abuse. T.p. 11/13/03 at 43.  Therefore, counsel cannot be found ineffective for their failure to uncover the possible abuse.

Next Landrum argues that counsel were ineffective in their failure to obtain various records, or contact individuals familiar with the records pertaining to his education, health, mental status, family history, and development. (Amended Petition, Doc. No. 122 at 13.)  Document requests were made by the mitigation specialist on behalf of counsel on January 31, February 5 and March 5. (Amended Traverse, Doc. No. 124 at 59.)  Specifically the records from Fairfield School for Boys and jail records were mentioned in the evidentiary hearing as documents that were not obtained. T.p. 9/4/03 at 44-45; (Amended Traverse, Doc. No. 124 at 62.)  It is argued that these records could have been offered to show that Landrum would function well in a confined prison setting. T.p. 9/4/03 at 44-45; (Amended Traverse, Doc. No. 124 at 62.)  Additionally it is mentioned that teachers or "others" could have been interviewed. T.p. 9/4/03 at 48; (Amended Traverse, Doc. No. 124 at 62-63. Landrum fails to demonstrate prejudice as he does not argue what information would have been revealed by these people or documents.  Any attempt he makes to show what could have been offered has been cumulative to testimony that was brought up at mitigation.  Evidence of what was collected, people who were contacted, and the nature of the mitigation presented demonstrate counsel's performance did not fall below an objective standard of reasonableness.  This portion of the claim is without merit.

The portion arguing ineffectiveness of trial counsel in their failure to obtain an expert is fully

discussed by this court in the thirtieth ground for relief. *See infra* Thirtieth Ground for Relief at 125-128.  This sub-claim is without merit.

Next, Landrum argues counsel's failure to adequately prepare him for his penalty phase testimony and failure to adequately explain the potential consequences of testifying under oath. (Amended Petition, Doc. No. 122 at 13.)  Regardless of the validity of this claim pertaining to counsel, this Court notes that Petitioner was in fact made aware of his rights, at a minimum by the trial judge:

> Before we do proceed with the jury, Mr. Landrum, this Court wishes to advise you and you need not make a response nor make a decision at this time, I merely wish to advise you that during this portion of the trial, you have the right to make a statement to the jury as to matters which are relevant or material to matters in mitigation of this offense.  You may make this statement under oath and if you do make a statement under oath, you are subject to being cross examined by the Prosecuting Attorney or you may make that statement to the jury not under oath in which event the Prosecuting Attorney is precluded or does not have the right to cross examine you.  I would advise counsel, however, that in such latter event pursuant to this Court's understanding there may be comment on that factor during closing arguments pursuant to *State of Ohio v. Jenkins*.

T.p. 3/17/86 at 12-13.  Thus, this Court is unpersuaded that Petitioner was prejudiced.  This portion of the claim is without merit.

Landrum argues that his counsel was ineffective in closing when he stated, "I don't know, I'm not a psychologist, I'm just trying to piece together what you all heard" and implied that they could not be fair because of their decision in the guilt phase. (Amended Petition, Doc. No. 122 at 14.)  This claim is without merit.  The trial court specifically instructed the jurors that closing arguments were not evidence. T.p. 2/21/86 at 5.  Futhermore, Landrum fails to demonstrate, given the instruction, his case was prejudiced as a result of the comments.

Next, Landrum asserts that trial counsel were ineffective in their failure to object to the trial

court's use of the word "recommend" in giving jury instructions.  Landrum asserts that this

improperly diminished the jury's sense of responsibility in sentencing and suggested the existence

of additional evidentiary procedures and safeguards in the form of an automatic review. (Amended

Petition, Doc. No. 122 at 14.)  This led the jurors to believe that their sentence would not be binding

on the court and created an increased risk that the jury would return a verdict of death. *Id.*  In giving

instructions during the mitigation phase, the trial judge told the jurors that:

> Now the procedure which you must follow in arriving at your verdict
> in the Sentencing Phase of the trial is set forth in Section 2929.03 of
> the revised Code of the State of Ohio.  A summary digest of Section
> 2929.03 of the Revised Code, provides that you, the trial jury, must
> consider all of the relevant evidence raised at trial - - the testimony,
> the other evidence, the testimony of the defendant, Lawrence
> Landrum and the Arguments of Counsel and you must determine
> whether the aggravating circumstances which Lawrence Landrum,
> was found guilty of committing, are sufficient to outweigh the
> mitigating factors present in this case.  If all twelve (12) members of
> the jury find by proof beyond a reasonable doubt, that the aggravating
> circumstances, which Lawrence Landrum, was found guilty of
> committing, outweigh the mitigating factors, then you must return
> such finding to the Court.  I instruct you as a matter of law that if you
> make such finding, then you have no choice and must recommend to
> the Court that the sentence of death be imposed upon the defendant,
> Lawrence Landrum.
>
> Now ladies and gentlemen, a jury recommendation to the Court that
> the death penalty be imposed, is just that - - a recommendation and
> is not binding upon this Court.  The final decision as to whether the
> death penalty shall be imposed upon the defendant, rests upon this
> Court.  In the final analysis, after following the procedures and
> applying the criteria set forth in the Statute, I, the Judge in this case,
> will make the decision as to whether the defendant, Lawrence
> Landrum, will be sentenced to death or to life imprisonment.  On the
> other hand, if after considering all of the relevant evidence raised at
> trial, the testimony, the other evidence, the statement of Lawrence
> Landrum and the Arguments of Counsel, you find that the State of
> Ohio failed to prove that the aggravating circumstances which the

> defendant, Lawrence Landrum, was found guilty of committing, outweigh the mitigating factors, then you will return your verdict reflecting your decision. In this event, you will then proceed to determine which of two possible life imprisonment sentences to recommend to the Court and your recommendation to the Court shall be one of the following in that event: One (1) - - that Lawrence Landrum be sentenced to life imprisonment with parole eligibility after twenty (20) full years of imprisonment or two (2) - - that Lawrence Landrum be sentenced to life imprisonment with parole eligibility after thirty full years of imprisonment. The particular recommendation which you make is binding upon the Court and I, the Judge, must impose the specific life sentence which you have recommended. I will now read to you the verdict forms . . . .

T.p. 3/18/86 at 89-90. The determinative question is whether the instruction which the jury heard as to the effect of their verdict deprived Petitioner of a jury which understood its responsibility in the process. In *Caldwell v. Mississippi*, the prosecutor in closing told the jury their verdict was automatically reviewable by the Mississippi Supreme Court. 472 U.S. 320 (1985). While that statement was accurate, a majority of the United States Supreme Court held that it was misleading to the jury, encouraging them to believe that the "responsibility for determining the appropriateness of the defendant's death sentence rests elsewhere," to wit, with the appeals court. It held that this argument was biased against the defendant because it would lessen the jury's sense of its "awesome responsibility." The Court emphasized the structural limitations on the appellate process and the fact that under Mississippi law there was a presumption of correctness in the jury's verdict.

Under Ohio law, the weighing of aggravating factors and mitigating circumstances is to be done by the trial judge, the appeals court, and the Supreme Court "independent" of one another, that is, without giving weight to the decision made by the other deciders. Moreover, the trial judge faces none of the appellate structural limitations in reaching his or her decision that are faced by the appeals court — he or she has heard the same live witnesses, rather than reading them from a

transcript.  Thus the use of the word "recommendation" in this case accurately described what the jury does under Ohio law and did not encourage them to delegate their responsibility to the appellate courts.  Indeed, appellate review was not mentioned, but rather the trial judge's independent weighing.

While the Supreme Court has emphasized how important it is that the jury understand its responsibility, it has not held that the responsibility cannot be shared with the trial judge as is done under the Ohio system.

This claim is without merit as the language used by the trial judge did not come within *Caldwell*, in that it did not encourage jurors to defer to the appellate process and it accurately described their role in Ohio's sentencing scheme.  An instruction to the jury that its verdict is a recommendation for the death sentence is not erroneous under Ohio law, nor is it unconstitutional. *Buell v. Mitchell*, 274 F. 3rd 337 (6th Cir. 2001)*; Byrd v. Collins*, 209 F. 3d 486 (6th Cir. 2000). *Accord*, *Mapes v. Coyle,* 171 F. 3d 408, 414-15 (6th Cir. 1999); *Scott v. Mitchell*, 209 F. 3d 854 (6th Cir. 2000).  To establish a violation of *Caldwell v. Mississippi*, 472 U.S. 320 (1985), "a defendant must necessarily show that the remarks to the jury improperly described the role assigned to the jury by local law." *Romano v. Oklahoma*, 512 U.S. 1, 9 (1994). Thus the jurors were fully aware of their responsibility to decide if death was an appropriate punishment in this particular case.  There was no ineffectiveness on the part of trial counsel for failure to object.

Next Petitioner argues that counsel were ineffective in their failure to object to the verdict form as it referred to multiple aggravating circumstances when in fact the counts were merged into a single circumstance. (Amended Petition, Doc. No. 122 at 18.)  While counsel preserved many of their objections to the jury verdict forms, this particular objection was not raised. T.p. 3/18/86 at 82-

3.  Furthermore, during the oral jury charge the judge stated that the counts were to be merged:

> Now what are the Aggravating Circumstances?  In this case, there were two Aggravating Circumstances, previously set out in the Specification contained in your guilty verdict form, as to the First Count in the Indictment and they were as follows: (1) The commission of the offense of Aggravated Murder for the purpose of escaping detention, apprehension, trial or punishment for another crime committed by him- - that is Aggravated Burglary and (2) that the defendant as a principle offender committed the offense of Aggravated Murder of Harold White, Senior, while the defendant was committing or attempting to commit Aggravated Burglary.  Now you have found the defendant guilty beyond a reasonable doubt of each of these Aggravating Circumstances however, for the purpose of these Sentencing Proceedings, I hereby instruct you as a matter of law, to consider these two Aggravating Circumstances as merged into one indivisible course of conduct.  In effect then, I instruct you that you are to consider these Aggravating Circumstances as one.

T.p. 3/18/86 at 86-87.  The jury was aware of the proper standard to be used in the weighing process.  Therefore, the erroneous verdict form instructions did not, by itself, so infect the entire trial so that the resulting conviction violated Petitioner's due process rights. *Cupp v. Naughten*, 414 U.S. 141, 146 (1973); *Bonnell v. Mitchell*, 301 F. Supp. 2d 698 (N. D. Ohio 2004), *Madrigal v. Bagley*, 276 F. Supp. 2d 744 (N. D. Ohio 2003).  This portion of the claim is without merit and therefore it was not ineffective assistance of appellate counsel to fail to raise it on direct appeal.

   In the next portion of his claim, Landrum argues that the jury instructions conflicted with the verdict forms which created confusion for the jurors. (Amended Petition, Doc. No. 122 at 14.)  He argues that in the court's oral charge jurors were told that their finding of a sentence of death or one of the various life sentence options would be a recommendation to the court, but that the court must consider the life sentence recommendation as binding while it must review the recommendation for a death sentence.  The verdict forms, however, made reference to a life verdict as being a recommendation only.

"To warrant federal habeas corpus relief based on instructions that were allegedly erroneous under state law, petitioner must demonstrate that the error violated a federal constitutional right." *Cupp*, 414 U.S. at 146.  Thus, the issue is not whether the verdict form instruction was undesirable or erroneous under Ohio law, but rather whether the verdict form instruction, so infected the entire trial that the resulting conviction violated due process." *Id*.

The verdict forms as given to the juror, respectively state;

> We, the Jury in this case, being duly impaneled and sworn, do find beyond a reasonable doubt that the Aggravating circumstances which the defendant, Lawrence Landrum, was found guilty of committing are sufficient to outweigh the Mitigating Factors present in this case.

> We, the Jury recommend that the Sentence of Death be imposed on the defendant, Lawrence Landrum.

and

> We, the Jury in this case, being duly impaneled and sworn, do find that the Aggravating Circumstances which the defendant, Lawrence Landrum, was found guilty of committing are not sufficient to outweigh the Mitigating Factors present in this case.

> We, the Jury recommend that the defendant, Lawrence Landrum, be sentenced to Life Imprisonment with parole eligibility after serving (*) _____ full years of imprisonment."

(Supplementation of the Record by Stipulation, Doc. No. 33.)  Despite the wording of the written verdict form the court's oral instruction on this matter was clear and concise.

> If all twelve (12) members of the jury find by proof beyond a reasonably doubt, that the aggravating circumstances, which Lawrence Landrum, was found guilty of committing, outweigh the mitigating factors, then you must return such finding to the Court.  I instruct you as a matter of law that if you make such finding, then you have no choice and must recommend to the Court that the sentence of death be imposed upon the defendant, Lawrence Landrum.  Now ladies and gentlemen, a jury recommendation to the

65

Court that the death penalty be imposed, is just that–a recommendation and is not binding upon this Court. The final decision as to whether the death penalty shall be imposed upon the defendant , rests upon this Court. In the final analysis, after following the procedures and applying the criteria set forth in the Statute, I, the Judge in this case, will make the decision as to whether the defendant, Lawrence Landrum, will be sentenced to death or to life imprisonment. On the other hand, if after considering all of the relevant evidence raised at trial, the testimony, the other evidence, the statement of Lawrence Landrum and the Arguments of Counsel, you find that the State of Ohio failed to prove that the aggravating circumstances which the defendant, Lawrence Landrum, was found guilty of committing, outweigh the mitigating factors, then you will return your verdict reflecting your decision. In this event, you will then proceed to determine which of two possible life imprisonment sentences to recommend to the Court and your recommendation to the Court shall be one of the following in that event: One (1)–that Lawrence Landrum be sentenced to life imprisonment with parole eligibility after twenty (20) full years of imprisonment or two (2) –that Lawrence Landrum be sentenced to life imprisonment with parole eligibility after thirty full years of imprisonment. The particular recommendation which you make is binding upon the Court and I, the Judge, must impose the specific life sentence which you have recommended.

T.p. 3/18/86 at 89-90. As the court was clear in its oral charge, the verdict form instruction was not so undesirable or erroneous as to infect the entire trial and deny Landrum his due process rights. Defense counsel cannot be held ineffective in their failure to object to the verdict form.

Next Landrum argues that his counsel were ineffective in their failure to proffer testimony from Grant Swackhammer and Rameal Coffenberger.[8] (Amended Petition, Doc. No. 122 at 15.) These claims are discussed fully in the fifth and sixth grounds for relief. *See infra* Fifth Ground for Relief at 80-86; *see infra* Sixth Ground for Relief at 86-88. This Court must also note that trial counsel did in fact proffer testimony from Coffenberger at this stage of trial and that Petitioner's assertion is erroneous. *See* T.p. 3/19/86 at 128-9.

---

[8] Also referred to as Randy Coffenberger in various places throughout the record.

66

Landrum also asserts that counsel were ineffective in their failure to ask that the State grant immunity to Swackhammer. Again, this claim is fully discussed in the Sixth Ground for Relief. *See infra* Sixth Ground for Relief at 86-88. As stated in that claim, Landrum cannot meet the prejudice prong as it is not clear that Swackhammer's testimony would have been beneficial to Landrum's defense. *Id.*

**Fourth Ground for Relief**

> Mr. Landrum was denied his rights to the effective assistance of counsel during voir dire and the trial [sic] determination phase of his capital trial in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In his fourth ground for relief, Landrum argues that he was denied his right to effective assistance of counsel during the voir dire and guilt determination portions of his trial. (Amended Petition, Doc. No. 122 at 17); (Amended Traverse, Doc. No. 124 at 27-37.) Respondent counters that no portion of this claim was raised on direct appeal, and therefore the claim is procedurally defaulted in its entirety. The claim was presented during post-conviction relief proceedings where it was held to be barred by *res judicata*. (Amended Return of Writ, Doc. No. 123 at 56.) Alternatively, even if the claim is not defaulted, Respondent argues that Landrum has failed to make a showing of prejudice. *Id.*

Landrum raised the instant claim as one underlying his ineffective assistance of appellate counsel claim in his Application for Reopening and Application for Delayed Reconsideration, which was disposed of by the Ross County Court of Appeals on procedural grounds. (Amended Return of Writ, Doc. No. 123, Exhibits CCC.) Because this Court is free to determine the merits of the ineffective assistance of appellate counsel claim, some examination of the merits of Landrum's underlying claim is therefore necessary to determine whether his appellate counsel were ineffective

67

for not having raised the claim on direct appeal. *See infra* Fortieth Ground for Relief..

In order to make a showing of ineffectiveness, "[f]irst, the Defendant must show that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the Defendant by the Sixth Amendment. Second, the Defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 680 (1984).  Prejudice results when the petitioner was deprived of a fair trial. *Id*.  To demonstrate this prejudice a petitioner must show that there is a reasonable probability, a probability sufficient to undermine confidence in the outcome, that, but for the unprofessional errors, the result of the proceeding would have been different. *Id*. at 698.

Landrum argues that his counsel were ineffective in their failure to interview potential witnesses provided by the State in discovery. (Amended Petition, Doc. No. 122 at 17); (Amended Traverse, Doc. No. 124 at 29-30.)  Petitioner makes mention of thirty-four potential witnesses for the State of Ohio which were identified during pre-trial discovery. (Amended Traverse, Doc. No. 124 at 29.)  He states that seventeen of the witnesses were employed by either law enforcement agencies or the hospitals that treated the victims[sic] and that a reasonable investigation should have been conducted involving these witnesses, at the very minimum at least conducting interviews of the witnesses who saw Mr. Landrum just prior or subsequent to the homicide and those who allegedly heard his confession. *Id*.  Landrum fails to articulate what information he hoped to gain from each witness.  Therefore, with regards to this portion of the witnesses, Landrum does not even try to demonstrate how he was prejudiced as a result of his counsel's failure to interview potential witnesses.

Landrum does, however, identify and provide the Court with information he hoped to gain from the following witnesses:

1.  Fabian Lee:  would have testified that Grant Swackhammer told him that he was willing to do anything necessary to obtain money from Mr. White
2.  Michael Robinson:  would have verified Fabian Lee's conversation with Swackhammer
3.  Sheila Buckner:  Swackhammer was carrying plastic gloves with him, telling people that they were for robbing Mr. White, and laughing about it
4.  Connie Rinehart:  Swackhammer was out of control on the night of the homicide, including exposing himself
5.  Lonnie Hughes:  Swackhammer's girlfriend.  He confessed his involvement in the homicide to her.
6.  Karen Hughes:  Landrum had several bottles of pills and he just ate the pills as if they were candy
7.  Teresa Kenneda:  When Larry confessed to the murder he was really messed up
8.  Larry Perry:  Larry Landrum was high on September 19
9.  Richard Perry:  Petitioner was high on the day of the murders
10.  John Woolen:  Petitioner was high and had a big bottle of pills
11.  Wanda Sheets:  Petitioner had a long term drug problem, he would be intoxicated for lengthy periods of time and suffered from black outs
12.  Cary Leasure:  Petitioner was so messed up that he could not stand up
13.  Randy Coffenberger:  Petitioner was out of it on the evening of September 19, he was just hanging in there . . . . he was slurring his speech, staggering, and his eyes were bloodshot

(Amended Traverse, Doc. No. 124 at 30-31.)  Even if counsel were ineffective in failing to interview these witnesses, Landrum cannot meet the second prong of *Strickland*; he cannot shows that there was a reasonable probability that, absent counsel's errors, the jury would have had a reasonable doubt regarding guilt.

Testimony was given that Grant Swackhammer was in fact involved in the homicide.  It is undisputed that he was with Landrum on the night of the murder, that he too had consumed alcohol and drugs, and that he also had a pair of gloves for use in the burglary.  The information that Petitioner is stating Fabian Lee, Mike Robinson, Sheila Buckner, Connie Rinehart, and Lonnie

Hughs would purportedly have offered was merely cumulative to the evidence already before the jury that Swackhammer played a role in the events of that evening.  It does not go to the extent of that role.

Furthermore, testimony was given to the jury during the guilt phase of trial concerning Landrum's use of drugs and alcohol both before and after the murder.  Wendy Sheets described her impression of Landrum's condition when he visited her in the hospital on the afternoon of the 19th as "[h]e appeared to be high or drunk or on something–he was pretty messed up." T.p. 2/20/86 at 15-16.  She came to this conclusion from "just the way he acted.  You could always tell when Larry was messed up . . . . like he didn't know where he was at more or less." *Id*.

Numerous witnesses testified as to Landrum's condition that night after the murder when he arrived at the home of Rick Perry, including Larry Perry, Michael Drew, Cary Leasure, Karen Brown Hughs, Fabian Lee, and Mike Robinson.  Larry Perry described Landrum's condition as being high and "messed up and drugged . . . . he looked pretty bad.  He looked messed up bad." T.p. 2/19/86 at 86-87; *see also* T.p. 2/20/86 at 10 (testimony of Fabian Lee that "Uh–he was uh–what you call high . . . . by drugs or something."); *see further* T.p. 2/19/86 at 111, 114 (testimony of Karen Brown Hughes that "[h]e was–he was pretty high when he was saying it [that he had killed Mr. White] and he was laughing and stuff, so no one really took him serious cause he was–the way he was saying it, he was kind of joking around.  So no one took him serious . . . . [h]e–he was messed up a little bit . . . . he was on some placidyls . . . . I don't know.  He was pretty well wasted, I guess.")  Cary Leasure further testified that "[h]e [Landrum] looked like his eyes was great big and red and bloodshot.  Looked like he was high or something . . . . he was just laying there on the couch . . . . I said [to the police] that he looked like he was real messed up." T.p. 2/19/86 at 101-102; *see also* T.p. 2/20/86 at 12 (testimony by Mike Robinson that "he was messed up pretty bad . . . . looked

70

like he had been drinking and smoking too . . . . cause his eyes were bloodshot and his eyes were glassy.")  Michael Drew testified that he was unaware of whether or not Landrum was high when arrived at the Perry home, he did however witness Landrum take drugs, ingesting between two to three pills at a time at six or seven different occasions throughout that night. T.p. 2/19/86 at 73.

Landrum himself testified and informed the jury that he had in fact consumed a large quantity of drugs and alcohol on the 19th. T.p. 2/20/86 at 24-26, 52, 70.  He attested to having taken four to five Ativans and consuming approximately six to eight beers before 3pm, prior to visiting Wendy and the baby in the hospital.  He admitted that at that time he was high and "wasted" and scared to hold the baby as a result of his intoxication.  After the hospital visit, Landrum and Swackhammer went to Carolyn Brown's apartment during which time Landrum consumed between 14-18 additional beers and Ativan.  After the murder Landrum began ingesting the pills that were stolen in the burglary, Placidils and Librium.  Landrum stated that he was "pretty wasted" when he first arrived at the Perry home as the Placidils had begun to take effect, and while he does remember being there, he does not remember talking to people and only has a vague memory of leaving the house to go to the railroad yard.  Landrum continued taking additional pills up until the point of his arrest.

The Court concludes that counsel were not ineffective for failure to investigate and/or present specific testimony from witnesses concerning Landrum's condition on the night of the murder.  Any of the above omitted testimony would have been merely cumulative to information already before the jurors.  This portion of the claim is without merit.

Next, Landrum argues that his trial counsel were ineffective in that they:

> 1)      failed to perfect a record to allow review of whether the State of Ohio exercised its peremptory challenges in a discriminatory manner;

2)      failed to seek admission of testimony of Randy Coffenberger and William Swackhammer;

3)      failed to object to the numerous instances of prosecutorial misconduct during closing arguments; and

4)      failed to make a complete record regarding the inability of counsel to provide effective assistance of counsel as a result of their failure to insure that a complete and adequate investigation of potential mitigating evidence was complete due to the trial court's refusal to grant necessary continuances.

5)      failed to object to erroneous jury instructions

6)      failed to object to the verdict form which permitted the jury to weigh both aggravating circumstances against the mitigating evidence when the death penalty specifications were merged as a matter of law.

7)      failed to request the assistance of necessary experts.

8)      gave improper and inaccurate statements to prospective jurors regarding the meaning of a life sentence.

(Amended Petition, Doc. No. 122 at 18); (Amended Traverse, Doc. No. 124 at 33-37, 97.)

In the first sub-claim, Landrum argues ineffectiveness in defense counsels' failure to perfect the record in regards to the State's use of its peremptory challenges. (Amended Petition, Doc. No. 122 at 18.)  Petitioner has not advanced any grounds as to why he would have wanted the information preserved for appellate review.  Without such showing this Court cannot conclude that counsel acted unreasonably or that Landrum was prejudiced as a result of their inaction.  This sub-claim is without merit.

In the next portion of his claim Landrum argues that counsel were ineffective in their failure to seek admission of the testimony of Randy Coffenberger and William Swackhammer. (Amended Petition, Doc. No. 122 at 18); (Amended Traverse, Doc. No. 124 at 33-34.)

In the portion pertaining to Coffenberger's testimony Petitioner is arguing that the witness should have been permitted to testify that Swackhammer had admitted to him that he was the one who actually killed Mr. White.  Counsel did in fact proffer the below testimony **during the**

72

**mitigation phase** of the trial.

> Okay, I had a conversation on[sic] Randy Coffenberger on February the 7th at 11:55 a.m.  He had contacted me about a week prior to that and told me that he had something that I probably should know concerning Larry's case.  He said that he hasn't told anybody, hadn't talked to anybody about it and that he felt it was time for me to know that he had some information that could potentially help Larry and I asked him what it was and he said he chose not to talk to me unless his attorney was present.  On February 7th I arrived at the jail with Dan Silcott and he told me this is what happened.  He said that he was coming back from the Dairy Queen on East Main Street on Friday, Feb - -on Friday, September the 20th, sometime between three and three-thirty p.m. [sic]  As he was walking towards the East Main overpass he saw Grant Swackhammer, a juvenile who was convicted in Juvenile Court.  He had a conversation with Grant.  I think Randy asked Grant if he had seen Larry and Grant said he hadn't seen him and then they started talking about things and then Grant told Randy what had happened.  Grant told Randy that he and Larry entered White's apartment initially in the kitchen.  Grant was in the bedroom ransacking the apartment.  That an old man came in and asked Larry what he was doing and more or less Larry had a small conversation with the old man where the old man said he'd let him go if he'd just get the hell out of the apartment. Grant said that he snuck up behind Mr. White hit him over the head several times.  That the old man fell onto Larry.  Larry caught him, put a choke hold on him and put him down on the ground and told Grant to watch him.  Larry then went into the other part of the apartment, into the bedroom area.  Grant said that he was watching him and that the old man kept moving around and kept making noises and then Grant had decided to go to the kitchen and got a knife and that he cut his throat . . . .And that Grant had cut Mr. White's throat while Larry was still in the bedroom . . . .Well, it's hearsay, I think it would be much more objectionable in the guilt phase since the one case only dealt with mitigation phase.  So that is in essence the - - he told me it happened in a conversation that he had with Grant Swackhammer.

T.p. 3/19/86 at 128-9; (Amended Traverse, Doc. No. 124 at 33-34.)

In analyzing the Fifth Ground for Relief *infra*, this Report quotes the analysis of the Ohio Supreme Court finding the exclusion of this testimony during the mitigation phase to have been constitutional error.  That analysis was correct and this Court adopts it.  The Ohio Supreme Court

73

further found that the omission did not affect the result when they reweighed the merged aggravating circumstance against the mitigating factors.  Applying harmless error analysis, this Court reaches the same conclusion.

However, there is a significant difference between excluding the evidence before the jury has reached a conclusion of guilt beyond a reasonable doubt.  Trial counsel had in Coffenberger's testimony an admission of principal offender status by a an admitted co-perpetrator which admission, if believed by the jury, would have prevented imposition of a death sentence.

Trial counsel offered no strategic reason for not offering Coffenberger's testimony and none can be postulated by this Court.  Instead, their stated reason was their belief the testimony was excludeable hearsay.  That analysis was deficient performance on their part, given the law cited by the Ohio Supreme Court in finding exclusion was error.  It is of course uncertain whether the jury would have believed Coffenberger; his testimony was certainly impeachable on the bases suggested by the Ohio Supreme Court.  When the habeas court is in grave doubt whether a trial error of federal constitutional law had a substantial and injurious effect or influence in determining the verdict, the error is not harmless and the writ must be granted.  *O'Neal v. McAninch*, 513 U.S. 432 (1995).

Of course this sub-claim of ineffective assistance of trial counsel could have been raised on direct appeal and was not.  It is therefore barred by procedural default unless there is excusing cause and prejudice.  But it is also unclear why, in light of the readily available law cited by the Ohio Supreme Court, appellate counsel would not have raised this claim on direct appeal.  Of course, appellate counsel are not obliged to raise every possible argument, but in this one they had an argument that almost won as to mitigation and is, in this Court's judgment, considerably stronger in the guilt phase because Coffenberger's testimony could have been relied on to create reasonable doubt rather than being the basis for a residual doubt argument in mitigation.

74

The Court concludes it was ineffective assistance of trial counsel to fail to attempt to present Coffenberger's testimony in the guilt phase. Petitioner's failure to present that claim on direct appeal is excused by the ineffective assistance he received from his appellate counsel who did not present this claim.

As far as the portion concerning the testimony of Grant Swackhammer, this Court has found with respect to Petitioner's Sixth Ground for Relief that the State did call Swackhammer to testify and that he invoked his Fifth Amendment Privilege. T.p. 2/19/86 at 115-121; *see infra* Sixth Ground for Relief. The Court has further found that there was no error in the trial court's decision to uphold Swackhammer's right not to testify. Finally, Landrum has failed to meet the prejudice prong as he does not attempt to show how the potential testimony that would have been given by Swackhammer would have been beneficial to his defense. *Id.* Swackhammer's previous statement which was given to police actually implicated Landrum as the killer rather than absolved him of involvement.[9] (Second Return of Writ, Doc. No. 84, Exhibit OO at Bates 000343-000359.) Because he cannot meet the prejudice prong of *Strickland*, counsel cannot be held to have been ineffective. This portion of the claim is without merit.

Next, Petitioner argues that his trial counsel were ineffective in the guilt phase of his trial for their failure to object to "numerous instances of prosecutorial misconduct." (Amended Traverse, Doc. No. 124 at 34-35.) The Petitioner has dropped his free standing prosecutorial misconduct

---

[9] Swackhammer told the Chilicothe Police that Larry "took him [Mr. White] to the floor and cut him and cut his throat and I passed out" and "I only seen him make the first cut and then I passed out . . . . I seen Larry grab the old man and he grabbed the knife and he took the old man by the collar or [inaudible] cut across like a saw would and then after I seen the blood I just, I passed out and I never looked again I just passed out." (Second Return of Writ, Doc. No. 84, Exhibit OO at Bates 000350, 000352.) Furthermore, Swackhammer answered affirmatively to the Officer's repetition of how Grant hit Mr. White on the head with the bolt and how Larry then knocked the victim to the floor, got on his chest, choked him, and then used a knife in a saw-like manner to slit Mr. White's throat. *Id.* at Bates 000357.

claim, and fails to identify in this particular ground for relief which instances of "prosecutorial misconduct" his lawyers should have objected to. Ordinarily the Court will not search the record for support of the ground, but in an abundance of caution, the Court will assume that Landrum is alleging ineffective assistance of counsel for failure to object to the prosecutorial misconduct as alleged in the now withdrawn first ground for relief. *See supra* First Ground for Relief at 42.

Landrum argues that his counsel were ineffective in their failure to object to prosecutorial misconduct during closing arguments. (Amended Petition, Doc. No. 122 at 6-8, 18); (Amended Traverse, Doc. No. 124 at 34-35.) Specifically, Landrum cites the following examples of misconduct:

> Ladies and Gentlemen. Well, apparently the issues have been narrowed in this case. When we started this case back in September that guy said he didn't do nothin'[sic]. He came into this Court and said, 'I'm not guilty of Aggravated Burglary. I'm not guilty of Aggravated Murder.' For the first time yesterday, he's changed his story and apparently now, he and his attorneys honestly are telling you, well, I'm guilty of some things. They're telling you I'm guilty of Aggravated Burglary even though I denied it when I talked to Groves, even though I denied it when I came in and was called upon to enter a plea. Now, I'm going to tell the truth. I did the Aggravated Burglary. Go ahead and find me guilty of it.

T.p. 2/21/86 at 40.

> I think I startled some of you earlier this case, and if I did, I apologize for it, you remember I picked this knife up and walked over and gave it to the defendant. I did that on purpose and I watched your reaction and I want you to think now about what your reaction was when you saw that defendant on the stand with that knife. Were you concerned? Were you startled? Did it shock you? Were you worried? Did you think you might be in danger or not? Sometimes our bodies tell us things before our minds do and if you had any of those feelings when Larry was setting [sic] on that stand with that's--with that weapon, I submit to you it was something inside of you telling you that he knows how to use it and he's willing to use it. If you had that feeling at all, I ask you to reflect back on what you felt when you saw him setting [sic] there with that weapon.

T.p. 2/21/86 at 49-50.

> Now, you'll recall Mr. Phillips when he asked Carey Leasure to describe the defendant's condition. He was trying to get him to say well, he couldn't stand up. Couldn't walk.

T.p. 2/21/86 at 51.

While this Court agrees that the comments were not proper, Landrum has not shown prejudice and the trial court instructed the jurors that closing arguments were not evidence.

> Now I would instruct you, Ladies and Gentlemen, that the argument that you are about to hear from the attorneys, from both sides of this case, those arguments are not evidence and they are not to be considered as evidence by you when you deliberate this case in the jury room. The arguments are designed to assist you and to help you in your deliberations.

T.p. 2/21/86 at 5.

This Court finds that the decision of the state court was not contrary to federal law. Therefore, because there was no prosecutorial misconduct amounting to prejudice of constitutional dimensions, defense counsel cannot be held ineffective in their failure to object. This portion of the claim is without merit.

Petitioner's next argument, ineffectiveness for failure to make a complete record of counsel's inability to prepare for mitigation based on the court's refusal to grant a continuance is without merit. (Amended Traverse, Doc. No. 124 at 20-26.) Despite their dissatisfaction with the additional amount of time granted, defense counsel were not ineffective in failing to request on record additional time so that an adequate mitigation investigation could be performed. Counsel made numerous arguments on record for a continuance based on this very reason. (Amended Petition, Doc. No. 122 at 27); *see also* T.p. 1/16/86 at 5-18; T.p. 1/29/86 at 7-12; T.p. 2/6/86 at 31-32; T.p. 2/10/86 at 117; T.p. 2/27/86 at 8-11.

Landrum argues that his counsel were ineffective in their failure to object to erroneous jury instructions. (Amended Petition, Doc. No. 122 at 18); (Amended Traverse, Doc. No. 124 at 34-35.) Petitioner fails to articulate, however, in what way he feels the instructions were erroneous and should have prompted an objection by his counsel. For the sake of analysis, this Court will assume that the jury instructions of which Petitioner complains are argued in the now withdrawn Eighteenth Ground for Relief. (Amended Petition, Doc. No. 122 at 51-52); *see infra* Eighteenth Ground for Relief at 114. The definition of reasonable doubt as given is as follows:

> Reasonable doubt is present when, after you have carefully considered and compared all the evidence, you cannot say you are firmly convinced of the truth of the charge. Reasonable doubt is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs.

T.p. 2/21/86 at 56.

Landrum takes exception to the words "firmly convinced" and "willing to act" in the definition of reasonable doubt and argues that, because of the use of these phrases, the definition does not reflect the appropriate standard of proof beyond a reasonable doubt but rather reduces the burden to that of the clear and convincing standard. (Amended Petition, Doc. No. 122 at 51.) The Sixth Circuit has previously upheld the constitutionality of this instruction as embodied in Ohio Revised Code § 2901.05. *Thomas v. Arn*, 704 F.2d 865, 867-69 (6th Cir. 1983); *see also Taylor v. Mitchell*, 296 F. Supp. 2d 784 (N.D. Ohio 2003). The court ruled that due process was not offended as the instruction does not mislead the jury into finding an absence of reasonable doubt, where reasonable doubt does in fact exist. *Thomas*, 704 F.2d at 868; *Holland v. United States*, 348 U.S. 121, 140 (1954). Because this portion of the sub-claim does not state a constitutional violation,

78

counsel cannot be found ineffective in their failure to object.

Landrum also contends that counsel were ineffective because they failed to object to the improper verdict form. The merits of this sub-claim were discussed in the previous ground for relief and was found to be without merit. *See supra* Third Ground for Relief at 63-64.

Next Petitioner argues his counsel's ineffectiveness for their failure to obtain necessary experts. (Amended Petition, Doc. No. 122 at 18); (Amended Traverse, Doc. No. 124 at 97-110.) One of the experts Landrum argues was necessary to his defense was an independent pathologist. This assertion does not meet the *Strickland* standards. Even if counsel erred in failing to obtain a pathologist, Landrum cannot establish prejudice as the cause of death was not a main issue at trial. Rather trial counsel's strategy focused on *who* caused the death rather than *what* caused the death. Additionally, counsel did touch on this matter in the cross-examination of pathologist Dr. Byron Smith to which he responded:

> There was one - - one of the six blows uh - - was more significant than the other five. One of the blows resulted in a - - what we call a depressed skull fracture. In this particular case, it was a relatively unusual displaced fracture - - - a small table of bone was displaced inward from one of the right forehead regions. This piece of bone was approximately an inch wide and approx - - or I'm sorry, a quarter of an inch wide and approximately an inch long. This indi - - so the patient obviously had a skull fracture as a result of one injury. The particular bone fragment had extended approximately a quarter of an inch in to the cranial cavity - - had not however, penetrated the linings - - the interior linings of the scalp and there was no evidence of internal bleeding or damage to the brain at the time of autopsy. This particular type of injury was obviously a significant injury, however, in my opinion, the likelihood that this particular injury would cause death in an individual such as Mr. White, would be unlikely to have been a fatal injury - - possible but unlikely. Injuries of this type have been known to cause death occasionally but much more severe injuries often do not result in death. . . . I'm taking that [the victim's age] into consideration. Obvious [sic] the better health you are [sic] the more trauma you can tolerate.

79

T.p. 2/18/86 at 171-172.

Despite asking about the wounds on cross-examination, defense counsel choose to focus on whether Landrum was the principal offender. Landrum argues that a pathologist would have been necessary to this extent to discuss blood splatter and whether or not the person responsible for slitting Mr. White's throat would have had blood on their clothing. (Amended Traverse, Doc. No. 124 at 33.) Dr. Smith was questioned by defense counsel on this issue as well. T.p. 2/18/86 at 169-170. The pathologist responded that blood under pressure would have come out of the body in a pulsated fashion as a result of the severed artery. *Id*. He additionally stated that the amount of blood that may have spurted would have been dependent on whether or not there was anything stopping the blood flow, including the positioning of the victim's neck which may or may not have caused the tissues of the neck to entrap the blood. *Id*. This determination would not have been made as a result of an autopsy, but rather would have had to be made by looking at the amount and location of blood at the crime scene. *Id*. This information was before the jury in the form of Dr. Smith's testimony as well as through their own observations made during their visit to the crime scene. Additionally, counsel put forth testimony from other witnesses as to whether or not they saw blood on Petitioner on the night of the murder.[10] Finally, defense counsel presented evidence from a

---

[10] There was additional testimony as to the clothing. Detective Richard Groves testified that he was unable to determine what clothing Landrum was wearing on the night of the murder, or to locate any additional clothing that he may have been wearing at the time. T.p. 2/20/86 at 5-8. Michael Drew testified that Landrum was wearing different clothing when he arrived at the Perry home and then changed into new clothes. T.p. 2/19/86 at 75. Rick Perry testified that he thinks that Landrum had been wearing blue jeans when he arrived at their home but that he was wearing black shorts at the time of his arrest. T.p. 2/19/86 at 80-81. Larry Perry testified that Landrum had been wearing shorts, a sports shirt and tennis shoes and does not remember Landrum wearing blue jeans at all that night. *Id*. at 87. Fabian Lee and Wendy Sheets testified that Landrum had been wearing dark colored shorts when he had been at the hospital earlier that day. T.p. 2/20/86 at 9-11, 16-17. Lee remembered the shirt that Landrum was wearing as being a white cutoff shirt with dark sleeves and he could not identify the shirt that was entered into evidence. *Id*. at 9-10. Likewise Sheets recalled the shirt as having been a white jersey shirt with black sleeves that were cut off and she did not recognize the shirt that had been entered into evidence. *Id*. at 16-17. Mike Robinson testified that Landrum had been wearing dark colored shorts. *Id*. at 12.

80

criminalist at the Ohio Bureau of Criminal Identification and Investigation that Landrum's clothes

tested negative for the presence of blood, with the exception of his shoe which contained such a

trace amount that it was not possible to test for type. T.p. 2/19/86 at 21-27.  Thus, this Court holds

that counsel were not ineffective in their failure to obtain an independent pathologist.

Finally, Landrum argues that his counsel were ineffective in their improper and inaccurate

statements to potential jurors regarding the meaning of a life sentence. (Amended Petition, Doc. No.

122 at 18.)  He fails to offer any citations to support this sub-claim in either his Amended Petition

or his Amended Traverse.  Because of his failure to articulate the nature of this claim, prejudice

cannot be shown.  This sub-claim is without merit.

**Fifth Ground for Relief**

> The exclusion, during the sentencing phase of Lawrence Landrum's
> capital trial, of testimony and evidence relevant to the circumstances
> of the offense and to the issue of whether Lawrence Landrum should
> be sentenced to death violated Lawrence Landrum's rights to a fair
> trial, due process, a reliable sentencing determination, and freedom
> from cruel and unusual punishment as guaranteed by the Fifth, Eighth
> and Fourteenth Amendments to the United States Constitution.

In his fifth ground for relief, Landrum argues that the exclusion of testimony and evidence

relevant to the offense violated his constitutional rights and deprived him of a reliable sentencing

determination. (Amended Petition, Doc. No. 122 at 19.)  Respondent argues that the state court

disposition of this claim was not contrary to nor an unreasonable application of Supreme Court law.

(Amended Return of Writ, Doc. No. 123 at 60.)  Respondent asserts that this sort of residual doubt

testimony is not necessarily relevant mitigation evidence resulting in a constitutional violation. *Id*.

It is further asserted that any error was harmless and that the Ohio appellate courts considered the

statement in their independent re-weighing. *Id*.  Because the affirmative defense of procedural

default was not invoked, this Court turns to the merits of the claim.

Landrum's first sub-claim is that counsel were improperly precluded from presenting testimony of Randy Coffenberger, who would have testified that Landrum's co-defendant, Grant Swackhammer, had told Coffenberger on September 20, 1986, that he was the one who had actually slit White's throat while Landrum was in another room:

> Grant told Randy that he and Larry entered White's apartment initially in the kitchen.  Grant was in the bedroom ransacking the apartment.  That an old man came in and asked Larry what he was doing and more or less Larry had a small conversation with the old man where the old man said he'd let him go if he'd just get the hell out of the apartment. Grant said that he snuck up behind Mr. White hit him over the head several times.  That the old man fell onto Larry. Larry caught him, put a choke hold on him and put him down on the ground and told Grant to watch him.  Larry then went into the other part of the apartment, into the bedroom area.  Grant said that he was watching him and that the old man kept moving around and kept making noises and then Grant had decided to go to the kitchen and got a knife and that he cut his throat . . . . And that Grant had cut Mr. White's throat while Larry was still in the bedroom.

T.p. 2/19/86 at 128-9; (Amended Petition, Doc. No. 122 at 19); (Amended Traverse, Doc. No. 124 at 14-16.)  Landrum argues that the trial court's ruling was erroneous as Coffenberger's testimony was relevant, material, and met the requirements for admissibility. (Amended Petition, Doc. No. 122 at 19.)  He supports this contention with the Ohio Supreme Court's decision which found the exclusion to be in error. *Id.*; *State v. Landrum*, 53 Ohio St. 3d 107, 113-115, 126-127, 559 N.E. 2d 710, 719-721, 730-731 (1990).

> According to counsel at trial, a juvenile court adjudged Grant a delinquent for his role in the White burglary and murder.  We agree that the trial judge should have admitted Coffenberger's testimony.
>
> In this case, Coffenberger's testimony met several requirements for admissibility.  Grant earlier refused to testify as a state witness based on his own privilege against self-incrimination.  Thus, the declarant was unavailable as a witness.  Grant's statement also qualifies as a

declaration against penal interest by admitting his own guilt as a principal to murder. Admissibility hinges on this further requirement. "* * * A statement tending to expose the declarant to criminal liability * * * is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Evid. R. 804(B)(3). Based on that requirement, the trial judge excluded the statement.

Landrum argues that his own testimony that he had not cut White's throat, together with the lack of blood found on his clothing, constitutes sufficient corroborating circumstances. The state disputes this and argues that Grant told the police that Landrum cut White's throat.

The state also argues that Coffenberger's lack of credibility as a potential witness supports the trial court's decision excluding Coffenberger's testimony. The state proffered evidence that Coffenberger had five felony convictions and told the police he had not seen Grant after the murder.

The determination of whether corroborating circumstances are sufficient to admit statements against penal interest, as a hearsay exception, generally rests within the discretion of the trial court. *United States v. Guillette* (C.A.2, 1976), 547 F.2d 743, 754; *United States v. MacDonald* (C.A.4, 1982), 688 F.2d 224, 233 (proponent of a statement against interest faces a "formidable burden"). " * * * [T]he inference of trustworthiness from the proffered 'corroborating circumstances' must be strong, not merely allowable. * * * *United States v. Salvador* (C.A.2, 1987), 820 F.2d 558, 561. This is not an "insignificant hurdle." *United States v. Barrett* (C.A.1, 1976), 539 F.2d 244, 253; *State v. Saunders* (1984), 23 Ohio App.3d 69, 23 OBR 132, 491 N.E.2d 313; Annotation, Admissibility, as Against Interest, in Criminal Case of Declaration of Commission of Criminal Act (1979), 92 A.L.R.3d 1164.

However, in *Chambers v. Mississippi* (1973), 410 U.S. 284, the Supreme Court reversed a murder conviction because the court excluded out-of-court admissions from another, admitting the murder of which the accused was convicted. The *Chambers* court relied upon several factors supporting the reliability of the statements: (a) the statements were made spontaneously shortly after the murder to a close acquaintance; (b) other evidence corroborated the statements; (c) the statements were "in a very real sense self-incriminatory and unquestionably against interest * * *"; and (d) the declarant was available for cross-examination. *Id*. at 300-301.

In *Green v. Georgia* (1979), 442 U.S. 95, the Supreme Court, on due process grounds, reversed a death sentence because the trial court excluded an accomplice's confession that he rather than the defendant had pulled the trigger. *Green* cited *Chambers*, affirming that "'the hearsay rule may not be applied mechanistically to defeat the ends of justice.'" *Green*, *supra*, at 97.

In this case, three of the four *Chambers* criteria were satisfied. Grant allegedly made his statement, spontaneously, the day after the murder. He had no motive to lie then. His statement was unquestionably against his penal interest. Corroboration existed in Landrum's sworn testimony and the lack of any blood on Landrum's clothing. However, Grant, the declarant, was not available for cross-examination.

The credibility of Coffenberger as a witness does not affect the statement's admissibility. Evid. R. 804(B)(3) refers to "the trustworthiness of the statement," not the witness. As the fact finder, the jury was responsible for assessing Coffenberger's credibility as a witness. As in *Chambers*, the fact that the declarant had made conflicting statements does not preclude admissibility. As in *Green v. Georgia*, technical rules of hearsay cannot defeat fundamental due process rights.

We also conclude that the trial judge erred for other reasons. In *State v. Williams* (1986), 23 Ohio St.3d 16, 23 OBR 13, 490 N.E.2d 906, we faced complaints about hearsay statements being admitted in death penalty sentencing proceedings. In response, we recognized that the Rules of Evidence do not strictly apply to sentencing proceedings. *See* Evid. R. 101 C)(3); *State v. Williams*, *supra*, at 23, 23 OBR at 19, 490 N.E.2d at 913. R.C. 2929.04 (C) mandates: "The defendant shall be given great latitude in the presentation of evidence of * * * [mitigating factors]." Simply because Grant made conflicting statements did not warrant the trial court's rejection of the statement. *See Chambers v. Mississippi*, *supra*.

We have considered Coffenberger's proffered testimony in our independent assessment and weighing of evidence mandated by R.C. 2929.05(A). *See Clemons v. Mississippi* (1990), 494 U.S. 738, 108 L. Ed. 2d 725, 110 S.Ct. 1441; *State v. Lott* (1990), 51 Ohio St.3d 160, 170, 555 N.E.2d 293, 304. In view of that reweighing, we find it unnecessary to analyze this error in terms of its possible effect on the jury. *See* Part XVI of this opinion.

Landrum also urges that the trial court improperly excluded evidence

that Grant routinely carried a knife and had a violent nature. However, the fact that Grant regularly carried a knife was before the jury. As to Grant's allegedly violent character, *see* Evid. R. 404(A). Landrum made no proffer and preserved no error. Evid. R. 103(A)(2); *State v. Gilmore* (1986), 28 Ohio St.3d 190, 28 OBR 278, 503 N.E.2d 147, syllabus.

53 Ohio St.3d 107, 114-15, 559 N.E. 2d 710, 720-721 (1990).

The United States Supreme Court has said that the Constitution does not prohibit re-weighing as a cure for weighing errors. *Clemons v. Mississippi*, 494 U.S. 738 (1990); *see also Cooey v. Coyle*, 289 F.3d 882 (6th Cir. 2002).

In order to conduct the reweighing, the Ohio Supreme Court treated Coffenberger's testimony as if it had been admitted into evidence:

> A key issue remaining is the degree of Landrum's participation if he were not the principal offender. *R.C. 2929.04(B)(6)*. We have considered the defense proffer of Coffenberger's testimony as if it were in evidence in sentencing. (See discussion, Part II, **[***58]** *supra*.) According to the proffer, on September 20, "Grant said that he was watching him [White] and that the old man kept moving around and kept making noises and then Grant had decided to go to the kitchen and got a knife and that he cut his throat."

> Though it was considered, we view Coffenberger's proffered testimony as of no value. Grant's oral statement conflicts with Landrum's own trial testimony where Landrum admitted wrestling with White and threatening him with the knife; it also conflicts with Landrum's admission to five juveniles the night of the murder that Landrum personally cut White's throat. Coffenberger's credibility is impeached by documents proffered by the state, according to which he had five prior felony convictions, and had denied to the police, in detail, ever seeing Landrum or Grant after the murder. Since we find that Landrum was a principal offender in the murder, the potential mitigation factor in R.C. 2929.04(B)(6) is not present.

*State v. Landrum*, 53 Ohio St. 3d 107,125; 559 N.E.2d 710 (1990).

In the Magistrate Judge's opinion, this error by the trial court should more properly be analyzed under the harmless error doctrine than the reweighing doctrine. At the time the evidence

would have been admitted if the trial court had not erred, the jury had already found beyond a reasonable doubt that Petitioner was the principal offender.  To have permitted them to consider Coffenberger's testimony in mitigation would have been to have invited them to reconsider that finding, perhaps on some theory of residual doubt.  While the jury should have been permitted to consider the evidence, failure to admit it was harmless error for the reasons the Ohio Supreme Court gave in its reweighing analysis: Coffenberger's testimony, assuming he would have said on the stand what he told Petitioner's counsel, was inconsistent with his own prior statements to the police, and impeachable based on his own five prior felony convictions; it also presented a statement by Swackhammer which was inconsistent with Landrum's own trial testimony.

Constitutional error in a habeas case is not required to be harmless beyond a reasonable doubt.  Rather, error is harmless if the habeas court is satisfied it did not have a substantial and injurious effect or influence in determining the verdict. *Brecht v. Abrahamson*, 507 U.S. 619 (1993), adopting standard from *Kotteakos v. United States*, 328 U.S. 750 (1946).  This standard calls for reversal when the habeas court lacks a "fair assurance" that the outcome of a trial was not affected by evidentiary error. *Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004).

Applying harmless error analysis to the result reached by the Ohio Supreme Court (rather than the reweighing method used to reach that result), the Magistrate Judge is persuaded that the failure to admit Swackhammer's statement by way of Coffenberger's testimony at the mitigation phase did not have a substantial and injurious effect in determining the verdict at that stage of the case.

Next, Landrum asserts that the trial court erred when it excluded evidence that Grant Swackhammer had a violent nature and that he was known to carry a knife. (Amended Petition, Doc. No. 122 at 20); (Amended Traverse, Doc. No. 124 at 17-18.)  Evidence tends to show that Petitioner

was more gentle in nature than Swackhammer and that the accused's degree of participation was less than that of a principal offender.  Petitioner relies on *Green v. Georgia, supra,* to support his claim. This case however, is not analogous to the current situation.  In *Green v. Georgia* counsel for appellant attempted to introduce evidence that the separately charged co-defendant had admitted his involvement to a third party. 442 U.S. 95 (1979).  While this case supports Petitioner's claim that testimony by Coffenberger concerning alleged comments made to him by Swackhammer were improperly held to be inadmissible, the case does little to support Petitioner's claim that counsel should have been permitted to question witnesses as to Swackhammer's character and the fact that he carried a knife with him at all times.

Regardless, defense counsel did in fact question a witness as to Swackhammer's reputation for carrying a knife.  Furthermore, counsel was able to discern from the witness what type of knife, a lock blade knife, Swackhammer was known to have carried. T.p. 3/17/86 at 161.  The State did not object to this line of questioning until defense counsel asked for more specific information concerning that type of knife. *Id*.  The court sustained the objection based on relevancy. *Id*.  As such, counsel was permitted to get into evidence the fact that Swackhammer carried a knife. This portion of the claim is without merit.

**Sixth Ground for Relief**

> Lawrence Landrum was denied his rights to compulsory process, a fair trial, and due process, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, when the trial court refused to grant immunity to Grant Swackhammer, Lawrence Landrum's co-defendant who had already been convicted, and by allowing Grant Swackhammer to avoid testifying by invoking the Fifth Amendment privilege against self-incrimination.

In his sixth ground for relief, Landrum asserts that he was denied his constitutional rights by the refusal of the trial court to grant immunity to co-defendant Grant Swackhammer and allowing him to invoke the Fifth Amendment privilege against self-incrimination to avoid testifying. (Amended Petition, Doc. No. 122 at 21); (Amended Traverse, Doc. No. 124 at 2-8.)  Respondent contends that this claim is without merit. (Amended Return of Writ, Doc. No. 123 at 62.)  Because procedural default is not asserted, this Court may address the claim on the merits.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. §2254(a); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983).  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62 (1991).

The Ohio Supreme Court's resolution of the claim was based on an interpretation of state case law holding that the power to grant immunity is regulated by Ohio Revised Code § 2945.44 which plainly states that immunity must be given by the prosecutor and cannot be granted by a court. *State v. Landrum*, 53 Ohio St. 3d 107, 559 N.E. 2d 710 (1990).  This analysis and determination is a question of state law and is not reviewable in federal court.

In addition, Landrum's claim is without merit.  To grant immunity under Ohio Revised Code § 2945.44 the witness must first refuse to answer on the basis of privilege against self-incrimination.  The prosecuting attorney then makes a written request to order the witness to answer.  Finally, the court informs the witness he will receive transactional immunity. *State v. Outcalt*, 1 Ohio St. 3d 147, 438 N.E. 2d 443 (1982); *State v. Thompson*, 62 Ohio Misc. 2d 555, 607 N.E. 2d 118 (1992).  In an analogous case of two indicted co-defendants tried separately, the Ohio courts held that "[u]pon

88

consideration of all the above authority . . . . Shepard's right to assert the privilege against self-incrimination as to any matters touching upon the transaction as to which he has been tried and convicted would not end at least until resolution of his appeals as of right." *Thompson*, 62 Ohio Misc. 2d 555; *see also United States v. Duchi*, 944 F.2d 391 (8th Cir. 1991).

Landrum and Swackhammer were indicted for the same murder but tried separately. Swackhammer, a juvenile, was found delinquent by the Ross County Common Pleas Court Juvenile Division. During Landrum's trial, Swackhammer was called as a witness for the prosecution. He invoked his Fifth Amendment right against self-incrimination in response to questions from both the prosecution and defense as his own case was currently on appeal in the Fourth Appellate District in Ross County. Without inquiring into the basis or reasonableness of the assertion, the court permitted the testimony to be terminated. (Amended Petition, Doc. No. 122 at 21.) Landrum argues that this was improper and that in some situations it is required that a witness' self-incrimination privilege give way to a criminal defendant's due process rights. *Id*.

Landrum did not request that the prosecutor grant statutory immunity under R.C. 2945.44 nor does he allege prosecutorial misconduct for their failure to grant immunity. Furthermore, Landrum fails to establish that Swackhammer's testimony would have been favorable to his defense. Whatever Coffenberger might have testified about Swackhammer's statements to him, there is no firm basis for believing he would have accepted responsibility as the principal offender under oath. Thus, this claim is without merit.

**Seventh Ground for Relief**

> The trial court's refusal to allow defense counsel to cross-examine witness Cary Leasure about a prior statement given to the police violated Lawrence Landrum's Sixth, Eighth and Fourteenth Amendment rights to a fair trial, due process and confrontation.

In his seventh ground for relief, Landrum asserts constitutional violations arising out of the trial court's refusal to allow defense counsel an opportunity to cross-examine Cary Leasure about a prior consistent statement. (Amended Petition, Doc. No. 122 at 23); (Amended Traverse, Doc. No. 124 at 9-14.)  Respondent argues that this was not a violation of the Confrontation Clause, but rather this was invited error by defense counsel. (Amended Return of Writ, Doc. No. 123 at 65.)  Defense counsel conceded to the court that there were no major inconsistencies between the prior statements and the testimony given or sought to be given. *Id*.  Respondent alleges that this concession and invited error prohibits Petitioner from now raising the claim. *Id*.  Furthermore, Respondent argues that this is a question of state evidentiary law and is not cognizable on habeas review. *Id*. at 66.  In the alternative, it is argued that Landrum has failed to make a showing of prejudice and that the decision of the state courts was not clearly contrary to established federal law, nor an unreasonable application of such law. *Id*. at 65-66.

The statement at issue concerns Leasure's comment to police that on the night of the murder that Lawrence Landrum was "so messed up" that he could not stand. (Amended Petition, Doc. No. 122 at 23.)  During trial Leasure was called as a witness for the State.  Leasure testified as to the state of Landrum's intoxication, but neglected to state that he was incapable of standing on his own. On cross-examination, defense counsel attempted to get Leasure to repeat the statement he had previously told police. T.p. 2/19/86 at 101-105.  The prosecution objected and the court sustained the objection. *Id*.  Landrum argues that because the prior consistent statement was not admitted, a material fact was omitted from testimony.  For this reason Landrum asserts that the statement given to police was actually inconsistent with the testimony offered by Leasure in court and defense counsel should have been permitted to inquire into the matter for purposes of impeachment.

Furthermore, he insists that he was prejudiced as a result of the trial court's decision because the statement was relevant to: 1)Petitioner's ability to form the requisite intent to commit aggravated homicide; 2)Petitioner's state of mind when he made an incriminating statement to Leasure; and 3)for purposes of mitigation due to defense counsel's strategy of presenting evidence on drug and alcohol intoxication and abuse. *Id.* at 24.

The court of appeals noted that there were no inconsistencies in the statements and that Landrum had admitted as such at trial.  The Ohio Supreme Court affirmed, stating on direct appeal that:

> In his fourteenth proposition of law, Landrum complains about the trial judge's refusal to permit him to use a prior statement by a witness during cross-examination.  Under Crim. R. 16 (B)(1)(g), defense counsel could not use that statement during cross-examination unless there were inconsistencies. *See State v. O'Hara* (1980), 1 Ohio App.3d 50, 51-52, 1 OBR 20, 22, 439 N.E.2d 431, 433.  At trial, counsel conceded there were no "major inconsistencies" in the prior statement.  Thus there was no error.

53 Ohio St. 3d 107, 121, 559 N.E. 2d 710, 726 (1990).

The Confrontation Clause of the Sixth Amendment gives the accused the "right to be confronted with the witnesses against him."  This includes the right to cross-examination. *Mattox v. United States*, 156 U.S. 237, 242-243 (1895); *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). "The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion.  To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Delaware v. Fensterer*, 474 U.S. 15 (1985).  This Court concludes that the state court's decision on this matter

was neither unreasonable nor contrary to clearly established law and this claim is without merit.

**Eighth Ground for Relief**

> The death sentence imposed in Mr. Landrum's case was not based upon evidence sufficient to establish that Mr. Landrum was the principle offender and that Mr. Landrum had the requisite intent to kill the victim in the present case. Mr. Landrum's conviction and death sentence are in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution because he is actually and factually innocent of the crime with which he was charged.

In his eighth ground for relief, Petitioner argues that his conviction and death sentence are improper as they were not based on evidence sufficient to establish that he acted as the principal offender or that he had the requisite intent to kill Mr. White. (Amended Petition, Doc. No. 122 at 25-26); (Amended Traverse, Doc. No. 124 at 111-115.) He further states that he is both factually and actually innocent of this crime. *Id.*

Respondent argues that this claim was not previously raised on direct appeal. (Amended Return of Writ, Doc. No. 123 at 67.) The claim was raised during post-conviction relief and was held to be barred by *res judicata* and therefore is now procedurally defaulted. (Second Return of Writ, Doc. No. 84, Exhibit UU.) Alternatively, Respondent argues that this claim is without merit.

In determining whether or not the claim has been procedurally defaulted, the Court must apply the four-part test prescribed by *Maupin*. The first prong articulates that the petitioner must have violated an applicable state procedural rule in order to be procedural defaulted. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Here there was an applicable procedural state rule in place which would have required Landrum to plead his claim in direct appeal if it was demonstrable from the record on appeal. The second prong of the test states that, "the procedural violation provides an "adequate and independent state ground" for denying the petitioner's federal constitutional claim."

*Id*. *Res judicata* has been held to be an adequate and independent state ground upon which the state court can rely to bar consideration of ineffective assistance of counsel claims in federal habeas proceedings. *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir. 2001). Next, it must be shown that the state court actually enforced the procedural sanction, in that the highest state court to rule on the claim explicitly and ambiguously relied upon the violation as the reason for barring the claim. *Id.*

If the three preceding prongs of the *Maupin* test are satisfied, then the Court must find that the claim is procedurally defaulted unless the petitioner can satisfy the fourth prong of the test. The petitioner may excuse the procedural default on the claim if "cause and prejudice" can be shown or if such default would result in a fundamental miscarriage of justice. *Id*; *see Coleman v. Thompson*, 501 U.S. at 750; *see further Harris v. Reed*, 489 U.S. 255, 260-62 (1989); *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

Landrum must advance a "cause" for his failure to raise this ground on direct appeal. The cause standard may be fulfilled if some factor external to the defense hindered counsel's efforts to comply with the state procedural rule. *See Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992) *citing Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Reed v. Ross*, 468 U.S. at 16 (finding cause when there is a showing that the factual or legal basis for the claim was not reasonably available to counsel); *see further Brown v. Allen*, 344 U.S. 443, 486 (1953)(holding that cause is demonstrated when there is "some interference by officials.")

Landrum raised the instant claim as one underlying his ineffective assistance of appellate counsel claim in his Application for Reopening and Application for Delayed Reconsideration. (Amended Return of Writ, Doc. No. 123, Exhibits CCC.) Because the Court is able to reach the merits of the ineffective assistance of appellate counsel claim, some examination of the merits of Landrum's underlying claim is therefore necessary to determine whether his appellate counsel were

ineffective for not having raised the claim on direct appeal.

The standard for review of sufficiency of the evidence in federal habeas cases is, whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  A claim of insufficiency of the evidence presents a mixed question of law and fact, and the function of this Court is to determine whether the state court's application of the *Jackson* standard was reasonable. *Matthews v. Abramajtys*, 92 F. Supp. 2d 615, 632 (E.D. Mich. 2000).

During trial, testimony, including testimony from Petitioner himself, was presented that he had planned and prepared for the burglary of the victim's home. T.p. 2/19/86 at 35 (Testimony of Wendy Sheets that Petitioner had rubber gloves at the hospital and hoped to use them to "make some money"); 40-41 (Caroline Brown was aware of Landrum's plan to burglarize the home of her landlord, and in the event White came home during the burglary that Landrum would possibly kill him.  Petitioner also mentioned using rubber gloves during the crime); 50 ( Fabian Lee saw the rubber gloves); 2/20/86 at 22-23 (Landrum's testimony as to his conversation with Caroline Brown in which he discussed his plan to burglarize White's home and would possibly have to knock White unconscious if he were to interrupt); 28-31 (waited for White to leave his residence); 47 (admits to burglary); 61-62 (prior to the burglary went to White's apartment under the pretext of renting a place from him, for the purpose of "casing" the apartment); 67-70 (picked up a bolt to be used as a weapon during the burglary).  Landrum admitted that he considered what might happen if he were interrupted during the burglary. T.p.2/20/86 at 75-76.

Furthermore, there is extensive testimony that Landrum admitted that he in fact was the one that had killed Mr. White. T.p. 2/19/86 at 69-70 (testimony of Mike Robinson during which he states

that Landrum told him that he had slit the victim's throat from ear to ear and that Landrum then

threatened the teenagers by saying the same would happen to them if they went to the police with

this information); 78 (testimony of Rick Perry that Landrum had confessed to having killed Mr.

White); 84 (testimony from Larry Perry that Landrum had confessed to the murder); 98 (testimony

from Cary Leasure as to the confession); 108, 110-111 (testimony from Karen Hughes Brown as to

the confession, Landrum asking her if she would like to see the body, and Landrum's threat to the

teenagers.)

Based on the evidence presented, and viewed in a light most favorable to the prosecution

pursuant to *Jackson v. Virginia*, 443 U.S. 307. 324 (1979), a reasonable jury could easily have found

Landrum to be the principal offender beyond a reasonable doubt. This claim is without merit and

appellate counsel were not ineffective in their failure to raise this claim on direct appeal.

**Ninth Ground for Relief**

> Lawrence Landrum was denied his rights to a fair trial and sentencing
> determination, due process, equal protection, effective assistance of
> counsel, and freedom from cruel and unusual punishment, as
> guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments
> to the United States Constitution, as a result of the trial court's denial
> of defense counsel's repeated request for a continuance of the trial so
> the defense could complete its trial investigations and prepare its trial
> phase and sentencing phase defenses.

In his ninth ground for relief, Landrum argues that his rights were violated by the trial court's

refusal to grant defense counsel's repeated requests for a continuance so that the defense could

complete their investigation and properly prepare for both guilt and sentencing phases of the trial.

(Amended Petition, Doc. No. 122 at 27); (Amended Traverse, Doc. No. 124 at 20-26.) Respondent

asserts that the decision of the Ohio Supreme Court on this claim was neither contrary to nor an

unreasonable application of established federal law as determined by the United States Supreme

95

Court, and as such, this claim lacks merit. (Amended Return of Writ, Doc. No. 123 at 71.) Because the issue of procedural default was not raised, this Court may address the merits of the claim.

Motions for a continuance are within the sound discretion of the trial judge and will only form a basis of a meritorious claim in a petition for a writ of habeas corpus when there is an abuse of discretion so arbitrary and fundamentally unfair that it violates due process. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964); *Hicks v. Wainwright*, 633 F.2d 1146, 1148 (5th Cir. 1981)**.** The determination as to whether a continuance is appropriate in a particular case is dependent on the facts and circumstances of that case. *Ungar,* 376 U.S. at 589; *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). Factors to be taken into consideration by the trial judge include: the length of the delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; the availability of other competent counsel; the complexity of the case; and whether denying the continuance will lead to identifiable prejudice. *United States v.Burton*, 584 F.2d 485,490-91 (U.S. App. D.C. 1978); *Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir. 1982); *Gandy v. Alabama*, 569 F.2d 1318, 1324 (5th Cir. 1978); *Giacalone v. Lucas*, 445 F.2d 1238, 1240 (6th Cir. 1971); *United States v.Ramey*, 559 F. Supp. 60, 62 (E.D. Tenn. 1981).

Landrum's position is that prior to and during trial, his counsel made numerous requests for a continuance to allow for additional time to investigate and prepare his case. (Amended Petition, Doc. No. 122 at 27); *see also* T.p. 1/16/86 at 5-18; T.p. 1/29/86 at 7-12; T.p. 2/6/86 at 31-32; T.p. 2/10/86 at 117; T.p. 2/27/86 at 8-11. Counsels' basis for this need was due to the fact that the mitigation specialists were working on other cases and unavailable to start Landrum's mitigation investigation until January 22, 1986. (Amended Petition, Doc. No. 122 at 27-28.) Petitioner notes that the trial judge only granted one additional week between the guilt phase and penalty phase for

counsel's preparation. *Id*.  Defense counsel argued that the availability of the mitigation specialists was out of their control and that the failure to grant a sufficient continuance to accommodate the investigation would deny Landrum his rights to a fair trial and presentation of evidence. *Id*.

The original trial date in this case was set for December 16, 1985, but at defense counsels' request, was postponed until February 10, 1986.  In denying another continuance request, the court reasoned:

> And you did assure me, when I continued this case for you once before that the case would be ready to try and you would be ready to-to present the case on February 10th and I- if you were sole counsel on this case, I could see perhaps it would be a problem but this court has appointed two competent, able, experiences trial counsel and it seems to me that the both of you working together would be able to complete your trial preparation and be prepared to go to trial on the scheduled date.  And for that reason, I'm going to overrule the motion . . . .

T.p. 1/16/86 at 15.  Approximately two weeks later counsel made another request arguing that the mitigation specialists were involved on other cases and got a late start on Landrum's case. "It just takes a long time to prepare a social history that is necessary for in [sic] mitigation and we are asking the Court again to consider continuing this case so that Mr. Landrum will have full and adequate opportunity to present the mitigation." T.p. 1/29/86 at 10.  On February 27, 1986, another request was made by defense counsel.  The court decided that despite its frustration, due to the nature and severity of the case, a one week continuance would be granted between the guilt and penalty phase. T.p. 2/27/86 at 10-11.

While there is no absolute rule regarding the minimum amount of time necessary to prepare for an adequate mitigation phase, once the court has considered the case specific facts and circumstances it must then "look for a showing from the defendant of prejudice, i.e., a showing that the continuance would have made relevant witnesses available, or would have added something to

97

the defense." *United States v. Faulkner*, 538 F.2d 724, 729-30 (6th Cir. 1976); *United States v. Moore*, 419 F.2d 810 (6th Cir 1969).

Landrum fails to establish that he was prejudiced as a result of the court's failure to grant another continuance. Counsel presented extensive mitigation evidence. While not every potential witness that could have been interviewed and presented was contacted, counsel did offer a view of Petitioner's personal history. Furthermore, the affidavits from family and friends presented by Landrum in support of his ineffective assistance of counsel in the mitigation phase claim are essentially cumulative the information that was in fact presented during mitigation. *See supra* Third Ground for Relief. Any additional information, or more probing information into what was presented, was not enough to outweigh the aggravating circumstances. Landrum fails to demonstrate that if his counsel had more time to prepare for mitigation the outcome would likely have been different. The Petitioner was not denied his rights when the trial court denied additional continuances to prepare for mitigation. The decision of the state courts on this claim was not contrary to nor an unreasonable application of clearly established federal law.

**Tenth Ground For Relief**

> The trial court erred by giving prospective jurors improper and inaccurate instructions and by failing to correct the inaccurate instructions given by the prosecutor and defense attorney during voir dire in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In his tenth ground for relief Landrum asserts that the trial court erred by giving prospective jurors improper and inaccurate instructions and by failing to correct the inaccurate instructions given by the prosecutor and the defense attorney during voir dire. (Amended Petition, Doc. No. 122 at 29.)

This Ground for Relief has been withdrawn. (Notice of Additional Authority, Doc. No. 203

at 8.)

## Eleventh Ground for Relief

> The verdict forms which were provided to the jury improperly permitted and required the jury to weigh the aggravating circumstances against the mitigating factors despite the fact that the specifications were merged as a matter of law.  This improper verdict form was inaccurate, misleading and confusing in violation of Petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In his eleventh ground for relief, Petitioner argues that the verdict forms which were provided to the jury improperly permitted and required the jury to weigh the aggravating circumstances against the mitigating factors despite the fact that the specifications were merged as a matter of law. (Amended Petition, Doc. No. 122 at 31.)

This Ground for Relief has been withdrawn. (Notice of Additional Authority, Doc. No. 203 at 8.)

## Twelfth Ground for Relief

> The failure of the trial court to properly instruct the jury during the sentencing phase of Mr. Landrum's trial deprived him of his constitutional rights to a fair trial, due process, and freedom from cruel and unusual punishment as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

In his twelfth ground for relief, Landrum argues constitutional violations arising out of the trial court's failure to properly instruct the jury during the sentencing phase of his trial. (Amended Petition, Doc. No. 122 at 33.)  Respondent asserts that decision of the Ohio Supreme Court was not contrary to nor an unreasonable application of clearly established federal law as determined by the

United States Supreme Court. (Amended Return of Writ, Doc. No. 123 at 79.)  As procedural default is not asserted for any portion of this claim, this Court may now turn to the merits.

Portions of this claim pertaining to the appropriateness of the death penalty, a "mandatory" death sentence when the aggravating circumstances outweigh mitigating factors, the jury's failure to consider mercy, and the definition of the term "outweigh" have all been withdrawn. (Notice of Additional Authority, Doc. No. 203 at 9.)

Petitioner argues that the trial court erred in its failure to properly guide jurors in their deliberation by not informing them of the procedure to follow in the event an agreement could not be reached. (Amended Petition, Doc. No. 122 at 34.)  He attempts to strengthen this sub-claim by further arguing that the "jurors in this case were clearly not in agreement on sentencing for a considerable time . . . . they deliberated until nearly 11:30 at night and continued into the second day." *Id.*  Landrum asserts that because of the length of the deliberation during the sentencing phase, the court should have informed the jurors that if they could not agree on a sentence then they should move on to consider one of the two possible life sentences. *Id.*

A state trial court is not under a constitutional duty to give this proposed instruction as it has no bearing on the role of the jury in the sentencing process.  Rather this instruction addresses what should occur when the jury cannot fulfill its role due to a breakdown in deliberations caused by a deadlock or a failure to produce an unanimous sentence recommendation. *Jones v. United States*, 527 U.S. 373 (1999).  At no point has the Supreme Court instructed that under the Eighth Amendment the jury must be informed of the consequences of a deadlock. *Id.*  To the contrary, the Court's interest in the jury system lies in the ability to "secure unanimity by a comparison of views, and by arguments among the jurors themselves." *Id. quoting Allen v. United States*, 164 U.S. 492, 501 (1896); *see also Coe v. Bell*, 161 F.3d 320, 339-340 (6th Cir. 1998)(rejecting the argument that

100

an instruction as to the jury's inability to agree is constitutionally required.)  Charging a jury with such information prior to their sentencing deliberation may undermine the government's interest in having "the jury express the conscience of the community on the ultimate question of life or death." *Jones*, 527 U.S. 373 *quoting Lowenfield v. Phelps*, 484 U.S. 231, 238 (1988).  The Supreme Court declined to exercise its supervisory powers and require that an instruction be given in the *Jones* decision. 527 U.S. 373 *citing Shannon v. United States*, 512 U.S. 573, 587 (1994).

The failure of the trial court to give the jury instructions on deadlock prior to their sentencing deliberation did not violate constitutional rights.  Furthermore, at no time during deliberations did the jurors indicate to the court that they were in a deadlock and unsure of how to proceed.  This sub-claim is without merit.

Landrum next argues that the trial court's instruction on the quality and quantity of the evidence deprived him of an appropriate weighing of the mitigating factors. (Amended Petition, Doc. No. 122 at 35.)  During mitigation Landrum presented evidence which included: his non-violent behavior; childhood problems including smothering parental love; inconsistent disciplinary guidelines within the family; abrupt changes in his childhood environment; his experience and failure to benefit from the juvenile justice system; adult problems including lack of success in the military and his drug and alcohol dependence; repentance and remorse; close family relationships; ability to adapt to prison life and; his ability to contribute to society.  The court instructed that both quality and quantity were to be considered.  Landrum argues that the instruction as given by the court prejudiced him as it deprived him the opportunity to show why he should not be given a death sentence by turning the lifetime of experiences, problems, and personal history as listed above into a single mitigating factor. *Id*. at 36.  The trial court charged the jury as follows:

It is the quality of the evidence that must be given primary

101

> consideration by you.  The quality of the evidence may or may not be commensurate with the quantity of the evidence, that is, the number of witnesses presented in this case, as an example.  It is not only the quantity of the aggravating circumstances versus the quantity of the mitigating factors, which is to be the basis of you decision.  The quality or importance of the mitigating factors and the aggravating circumstances must also be considered.

T.p. 3/18/86 at 87-88.  The Court finds that the instruction as a whole permitted the jury to weigh both the *quantity* and the *quality* of mitigation evidence.  Furthermore, the Constitution "does not require the States to adopt specific standards for instructing juries on mitigating circumstances." *Buchanan v. Angelone*, 522 U.S. 269 (1998).  Rather a state may structure the jury's consideration of mitigation as long as it does not preclude the jury from being able to give effect to mitigating evidence. *Id.* citing *Johnson v. Texas*, 509 U.S. 350, 362 (1993); *Penry v. Lynaugh*, 492 U.S. 302, 326 (1989); *Franklin v. Lynaugh*, 487 U.S. 164, 181 (1988).  Therefore, there is no constitutional right to a particular standard for weighing and the trial court was free to instruct the jury that they were to consider both the quantity and quality of evidence in their balancing process during sentencing deliberations.

Landrum takes exception to the trial court's instruction that the jurors may consider any other factors that are relevant to the issue of sentencing. (Amended Petition, Doc. No. 122 at 36.) Petitioner argues that this instruction was improper as it permitted for the consideration of non-statutory aggravating factors rather than the consideration of any other factors that are relevant to the imposition of a life sentence.  This proposition has been rejected in *Bonnell v. Mitchell*, 301 F. Supp. 2d 698 (2004).  Based on similar analysis, the proposition is rejected in this case as well.  The trial judge clearly outlined for the jury in its instructions what they may consider as aggravating circumstances and what may be considered as mitigating:

Now what are the Aggravating Circumstances?  In this case, there were two Aggravating Circumstances, previously set out in the Specification contained in your guilty verdict form, as to the First Count in the Indictment and they were as follows: (1) The commission of the offense of Aggravated Murder for the purpose of escaping detention, apprehension, trial or punishment for another crime committed by him - - that is Aggravated Burglary and (2) that the defendant as a principle offender committed the offense of Aggravated Murder of Harold White, Senior, while the defendant was committing or attempting to commit Aggravated Burglary.  Now you have found the defendant guilty beyond a reasonable doubt of each of these Aggravating Circumstances, however, for the purpose of these Sentencing Proceedings, I hereby instruct you as a matter of law, to consider these two Aggravating Circumstances as merged into one indivisible course of conduct.  In effect then, I instruct that you are to consider these Aggravating Circumstances as one.

Now Mitigating Factors, are factors that while they do not justify or excuse the crime, nevertheless, in fairness and mercy, may be considered by you as extenuating or reducing the degree of the defendant's blame or punishment.  These mitigating factors include but are not limited to the nature and circumstances of the offense - - the history, character and background of the offender and any or all of the following factors - - pardon me - - number one (1) - - the youth of the defendant, Lawrence Landrum.  Number two (2) - - the defendant's lack of a significant history of prior criminal convictions and delinquency adjudications - - three (3) - - if Lawrence Landrum was a participant in the offense but not the principal offender - - the degree of his participation in the offense and the degree of his participation in the acts that led to the death of Harold White and four (4) - - any other factors that are relevant to the issue of whether Lawrence Landrum should be sentenced to death.

T.p. 3/18/86 at 86-87.  Only the section of the instructions that dealt specifically with the mitigating factors contained a catch all provision for "any other factors that are relevant to the issue of whether Lawrence Landrum should be sentenced to death."  In addition, the judge made a specific and clear statement about the merger of the existing two statutory aggravators into one aggravator for the purpose of sentencing.  Therefore, Petitioner's sub-claim fails as it must logically be presumed that jurors, having been charged with the above instructions, applied the "catch-all" provision only to

103

the mitigating factors portion and not to the aggravating circumstances.

Additionally, Petitioner argues that the trial court denied his request that the jury instructions contain a list of mitigating factors for their consideration.  The judge's definition of mitigating factors to the jury contained a "catch-all" phrase.  This factor was open-ended and the issues to be considered were left to the individual juror's discretion.  Thus, the instruction does not limit what the jurors may consider as a mitigating factor, but rather expands the circumstances, factors, or elements which the jurors may give consideration which excuses or lessens the defendant's culpability in the crime.  Furthermore, such "catch-all" phrase has been held to be constitutional. *Boyde v. California*, 494 U.S. 370 (1990).  This sub-claim is without merit.

The twelfth ground for relief is without merit in its entirety.


**Thirteenth Ground for Relief**

> The trial court failed to instruct the jury on each of the eleven mitigating factors presented by Mr. Landrum in violation of Petitioner Landrum's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In his thirteenth ground for relief, Landrum argues that the trial court erred when it failed to instruct the jury on each of the eleven mitigating factors presented by defense. (Amended Petition, Doc. No. 122 at 37.)

This Ground for Relief has been withdrawn. (Notice of Additional Authority, Doc. No. 203 at 9.)


**Fourteenth Ground for Relief**

> The repeated instructions of the court and the numerous comments by

104

> the prosecutor that the jury's sentencing decision was merely a recommendation served to diminish the jury's sense of responsibility for its sentencing decision, in violation of Lawrence Landrum's rights to a fair trial, due process and freedom from cruel and unusual punishment under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

In his fourteenth ground for relief, Landrum argues that the repeated instructions of the court and the numerous comments by the prosecutor that the jury's sentencing decision was merely a recommendation served to diminish the jury's sense of responsibility for its sentencing decision. (Amended Petition, Doc. No. 122 at 40.)

This Ground for Relief has been withdrawn. (Notice of Additional Authority, Doc. No. 203 at 10.)

## Fifteenth Ground for Relief

> The trial court committed numerous constitutional errors in reaching a sentencing determination in Mr. Landrum's case as evidenced by the trial court opinion.  Therefore, Petitioner's death sentence is in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In his fifteenth ground for relief, Petitioner argues that the trial court committed numerous constitutional errors in reaching a sentencing determination as evidenced by the trial court opinion. (Amended Petition, Doc. No. 122 at 44.)  Respondent states in opposition that this claim was not raised in the original habeas petition. (Amended Return of Writ, Doc. No. 123 at 86.)  It is further contended that this claim was raised for the first time during post-conviction relief proceedings and was held by the trial court to have been barred by *res judicata* as the claim was based entirely on the record. *Id*.;(Second Return of Writ, Doc. No. 84, Exhibit UU.)  Furthermore, Respondent argues a further layer of procedural default in that the claim was not raised on the appeal from the trial court's decision on post-conviction relief. (Amended Return of Writ, Doc. No. 123 at 86.)  Alternatively,

Respondent argues that any error in the trial court's sentencing decision would have been cured by appellate re-weighing in both court of appeals and supreme court. *Id*.

Again Landrum raised the instant claim as one underlying his ineffective assistance of appellate counsel claim in his Application for Reopening and Application for Delayed Reconsideration. (Amended Return of Writ, Doc. No. 123, Exhibits CCC.)  Some examination of the merits of Landrum's underlying claim is therefore necessary to determine whether his appellate counsel were ineffective for not having raised the claim on direct appeal which might provide cause excusing earlier procedural default.

In his first portion of this claim, Landrum contends that the trial court ignored relevant mitigating factors including; Petitioner's age, residual doubt, and drug and alcohol abuse. (Amended Petition, Doc. No. 122 at 45-46); (Amended Traverse, Doc. No. 124 at 119-121.)  Additionally Landrum argues that the court failed to consider all individual mitigating factors on their own accord but rather grouped them into one general category of character and background. (Amended Petition, Doc. No. 122 at 46.)  Finally, in this sub-claim Landrum argues that the court failed to state in its opinion its finding of why the aggravating circumstances outweighed the mitigating factors. *Id*. at 44.

This Court disagrees.  The sentencing decision details which mitigating factors were considered and how much weight was afforded the factor by the court. (Return of Writ, Doc. No. 17, Exhibit B.)  For the purpose of this sub-claim as well as for the ease of discussion of the remaining sub-claims, the relevant portion of the sentencing opinion is reproduced below:

> Based upon the relevant evidence raised at trial, the testimony, other evidence, the statement and testimony of the defendant, Lawrence Alfred Landrum, and the arguments of respective counsel, this Court finds that the following concepts were presented to the Court and jury and considered as being in the nature of mitigating factors:

106

(1)    the childhood and adult background, history, and character of the defendant, Lawrence Landrum

(2)    the youth of the offender at the time of the offense, that is, his 23 years of age;

(3)    the lack of significant history of prior criminal convictions and delinquency adjudications involving Lawrence Landrum;

(4)    the proposition that although the defendant, Lawrence Landrum, was a participant in the offense involved, but was not the principal offender and the degree of his participation in the offense and the degree of his participation in the acts that led to the death of the victim;

(5)    any other factors which the jury or Court may find to exist from the evidence in mitigation of the sentence of death.

Although considered to be factors which fall within this last category of mitigation circumstances, the defendant and defense counsel nevertheless urge the jury and the Court to consider as separate factors in mitigation the following circumstances;

(1)    "Youthfulness of Larry Landrum."

(2)    "A lack of substantial history of prior juvenile adjudications and criminal adjudications."

(3)    "His degree of participation in the offense."

(4)    "His grade zone, his history, his background."

(5)    "Lack of history of violent behavior."

(6)    "Excessively showered with love. A person that was brought up thinking that he could do no wrong."

(7)    "His environment was totally, abruptly changed when he came back to Chillicothe at age of five years old."

(8)    "Inconsistent discipline at home."

(9)    "Ineffectiveness of Juvenile Court."

(10)    "Ineffectiveness of the Naval System."

(11)    "Problems with Drugs and Alcohol."

(12)    "His remorse, sorriness, repentance, concern for what he's put everyone through."

(13)    "Love of his family for Larry."

(14)    "Adaptability to prison life."

(15)    "His ability to contribute to society."

As previously noted, the provisions of Section 2929.03(F) require this Court to state in a separate opinion the Court's specific findings as to the existence of the aggravating circumstances which the defendant is found guilty of committing beyond a reasonable doubt

107

and the existence of mitigating factors present in the case.

Based upon all relevant evidence presented at trial, the testimony, other evidence, the testimony of the defendant, Lawrence Alfred Landrum, and the arguments of counsel, this Court finds that the following . . . .

\* \* \*

By motion of the defendant, this Court merged the two aggravating specifications into one and so instructed the jury that they were to consider the specifications as one and as involving one indivisible course of conduct by the defendant.  The findings by this Court in this opinion are made and presented herein consistent with that charge to the jury requiring the merger of the two aggravating specifications.

\* \* \*

The issue then presented to this Court pursuant to Section 2929.03(F), Revised Code of Ohio, are as follows:  Did the State of Ohio prove beyond a reasonable doubt that the aggravating circumstance which the defendant, Lawrence Alfred Landrum, was found guilty of committing is sufficient to outweigh the factors in mitigation of imposition of the sentence of death.

This Court first considered and evaluated the age of the defendant which this Court determines to be a mitigating factor.  It is true that the defendant was 23 years of age when this crime was committed and that, relatively speaking, this is or can be considered to be a youthful age.  Nevertheless there is nothing to suggest that the age of the defendant had anything whatsoever to do with his ability or inability to determine right and wrong or to adjust and co-exist in the society in which he chose to live.  It is clear that the hand of a youthful offender can be as deadly as an older individual and the youthful age of the defendant cannot be considered qualitatively as outweighing the aggravating circumstance in this case.

The defendant has further asserted his innocence in this crime and has attempted to place the blame for the commission of this murder on his accomplice and partner in crime, Grant Swackhammer.  Yet it is clear in this case that the defendant was the one who planned this crime, the one who arranged to "case" the White home, the one who acquired the surgical gloves, the one who was responsible for selecting the White home as the target of the burglary and the one

108

who confessed that he would kill Mr. White should he discover the burglary prior to the murder and the one who confessed the [sic] murder after it occurred to five people, most of whom were very close friends with the defendant.

This Court has very carefully tested and considered the credibility and relevancy of the testimony of the defendant as well as the testimony of those to whom the defendant has confessed his crime and finds that the defendant's plea of innocence of this murder cannot withstand such close scrutiny.  It is the conclusion of this Court that the plea of innocence asserted by the defendant involving his participation in this offense cannot and does not outweigh the aggravating circumstance and specification established by the State.

The defendant has further offered as a mitigating factor or circumstance in this case his lack of a significant history of prior criminal convictions and delinquency adjudications.

It is clear that the minor altercations which the defendant has had with his parents and the Ross County Juvenile Court system are insignificant and of a very minor nature.  It is apparent that the defendant began to experience some difficulty in coping upon his transfer from his parochial school to the public schools and that on at least two occasions he committed theft offenses and suffered the consequences of being caught thereafter.  It is also apparent that the defendant became less interested in school and again suffered the consequences of juvenile proceedings because of his behavior.  This Court determines that these in fact are insignificant especially in evaluating the entire and overall criminal record and background of the defendant.  The defendant has never been convicted of a felony and according to his own admission has only been convicted of a misdemeanor involving bad checks since he attained the age of majority.

Although such minor or insignificant record of defendant is certainly a mitigating factor, this Court finds that it does not outweigh or overbalance the aggravating circumstance in this case.

The defense has offered a substantial amount of information, testimony, and evidence regarding the defendant's history, his character, and his background.  The defense has shown that the defendant has no history of violent behavior, that he was born in the state of Michigan to a large family, that for the first five years of his life he lived in an extremely large household with his grandparents, aunts, uncles, and cousins and that his family life was very stable and

loving.

The defendant has shown that at the age of five years his mother married and moved to Chillicothe, Ohio, and eventually a brother and sister were born and were reared in the same household.  The defendant has shown that he may have experienced some difficulty with this abrupt change in his life style and according to him, his discipline at home became somewhat inconsistent which he feels caused his subsequent appearances before the Ross County Juvenile Court System.

The defendant further asserted that the juvenile court system was not sufficiently harsh or firm and that this ineffectiveness of the court system and his parents led to his subsequent behavioral problems with drinking and alcohol.  The defendant further established that he served a brief tour of duty with the United States Navy and again asserts that the naval discipline system was ineffective and in some way contributed to his problems.  The defendant has further shown that his family life consisted of a very stable and loving family, the members of whom expressed during his youth and adolescence a love and concern for him.  The defendant has asserted what this Court considers to be mitigating factors concerning his background history and character 15 separate and identifiable matters.  Although separately identifiable, it is clear that these 15 mitigating factors as set forth by defense counsel in its closing argument are all matters which are part of or concern the defendant's character and background, but which do not outweigh the mitigating [sic] circumstance which the defendant was found guilty of committing.

In addition to those which have been discussed above, the defendant has attempted to show that his use of alcohol and drugs is a mitigating factor and one which outweighs the aggravating circumstances in this case.  This Court specifically finds that the defendant's voluntary use of drugs and alcohol cannot be a factor which begins to outweigh the specification involved in this cause.  While it may be true that the defendant had consumed alcohol and taken drugs prior to this offense, it is clear that the defendant was totally aware of what he was doing, while he was doing it, and what he intended to accomplish.  Self-reliance upon drugs or alcohol in this case can in no way justify the conduct of the defendant or excuse the defendant from the consequences of his actions.  For these reasons it is the opinion of this Court that these circumstances involving the defendant's use of alcohol and drugs do not outweigh the aggravating specifications in this case.

110

The defendant has further asserted his repentance and remorsefulness for taking the life of Mr. White and has pledged himself to his responsibility to contribute to society and perhaps aid other youthful offenders in an effort to dissuade them from pursuing a criminal life. While this is highly commendable and clearly illustrates some degree of adult responsibility on the defendant's part, these factors cannot be weighed more heavily in this case than the other factors in mitigation espoused by the defense and for that reason, do not outweigh the aggravating circumstances and specification involved.

At the time of this murder, the defendant was a 23 year old high school graduate who had been trained in the martial arts, who had fathered two children, who had come from a stable family background, and who at the time of this offense was planning another aggravated burglary with Rameal Coffenberger, realizing that someone might get killed.  It is clear in this case that this aggravated burglary was formulated with careful planning and prior design and with the intention of the defendant to kill Mr. White should he discover him during the burglary.  Even though the defendant chose to consume alcohol and drugs, there is nothing whatsoever in this case to establish that the defendant did not appreciate the criminal nature of his conduct or that he did not have a very grave concern and awareness for the outcome of his actions, or that he was not in complete control of his mental and physical faculties.

Although this Court finds that the defense has offered mitigation factors and circumstances on behalf of the defendant, it is the duty and obligation of this Court to weigh not only the quantity of such circumstances against the aggravating specification herein, but to evaluated those factors qualitatively.  This Court is not unmindful that the death sentence must not be capriciously or arbitrarily imposed and that the awesome responsibility of this trial court is to carefully evaluate and weigh the mitigating circumstances against the aggravating specification without bias, sympathy, or prejudice and according to the principles of law heretofore enumerated by this Court.

Therefore, upon full consideration of all relevant evidence raised at the trial, the testimony, other evidence, the testimony of the defendant, and the arguments of counsel, this Court is compelled to conclude that the mitigating circumstances offered by the defendant in this case do not outweigh the aggravating specification.  Based thereon this Court specifically finds by proof beyond a reasonable doubt that the aggravating circumstances which the defendant, Lawrence Alfred Landrum, was found guilty of committing did

> outweigh the mitigating factors in this case beyond a reasonable doubt. For these reasons then, this Court is compelled to impose the sentence of death upon the defendant, Lawrence Alfred Landrum.

(Return of Writ, Doc. No. 17, Exhibit B.) The trial court did not ignore any relevant mitigation evidence presented by defense. To the contrary, the court thoroughly reviewed and articulated on multiple occasions in its opinion the multitude of mitigating factors and in turn considered each. Furthermore, the judge clearly articulated what degree of weight was given to each factor and how that decision was reached. This sub-claim is without merit.

Next, Landrum argues that the trial court erred because it shifted the burden of proof in mitigation in that the defendant had the burden of proving that the mitigating factors outweighed the aggravating circumstances. (Amended Petition, Doc. No. 122 at 45); (Amended Traverse, Doc. No. 124 at 116-117.) He supports this argument by stating that before a criminal defendant is sentenced to death, the State must establish that the aggravating circumstances outweigh the mitigating factors by proof beyond a reasonable doubt, therefore, it is the State, not the defendant that must carry the burden during mitigation. (Amended Traverse, Doc. No. 124 at 117.) He states that the burden and standard were improperly applied during his sentencing phase as he had the burden of showing that the mitigating factors outweighed the aggravating circumstances on which he was found guilty in the guilt phase of trial. *Id*.

The Court notes that while the Ohio statutes clearly place the burden on the State to prove that the aggravating circumstances outweigh mitigating factors by proof beyond a reasonable doubt before a death sentence can be imposed, evidence proving the existence of any mitigating factors is on the defendant. Ohio Rev. Code § 2929.03(D)(1). A requirement that the defendant do so by a preponderance of the evidence does not offend the federal constitution. *See Walton v. Arizona*, 497 U.S. 639, 649-51 (1990) *overruled in part* by *Ring v. Arizona*, 536 U.S. 584 (2002).

Next, Landrum asserts that the court relied on improper jury instructions. (Amended Petition, Doc. No. 122 at 45); (Amended Traverse, Doc. No. 124 at 121.)  This Court has found no error based on Petitioner's failure to articulate how the jury instructions were erroneous.  Assuming this is again in reference to the withdrawn Eighteenth Ground for Relief, the Court conducted an analysis as a portion of the Fourth Ground for Relief and found that the instructions were not erroneous. *See supra* Fourth Ground for Relief at 66-80; *see infra* Eighteenth Ground for Relief at 114.  This sub-claim is without merit.

Landrum further asserts that the trial court erred in its consideration of nonstatutory aggravating circumstances. (Amended Petition, Doc. No. 122 at 45); (Amended Traverse, Doc. No. 124 at 118-119.)  Based on the record, this Court finds no reason to believe that the state courts used any aggravator other than the merged aggravating specifications in their weighing process.  This sub-claim is without merit.

Finally, Landrum asserts that the trial court "weighed more than one aggravating circumstances [sic] against the mitigating factors." (Amended Petition, Doc. No. 122 at 46.)  Again, this sub-claim is asserted without a reasonable basis. *See supra* Third Ground for Relief.  The trial court articulated in its sentencing opinion that the aggravating specifications of which the jury had found Landrum guilty of committing had been merged into one indivisible circumstance for weighing purposes in the sentencing phase.  The opinion made numerous references to "aggravating circumstance" and "specification" in the singular form and only a couple references in plural.  Due to the court's pointed sentence communicating the merger of the two specifications this Court can only assume that the references to circumstance**s** and specification**s** were made inadvertently and Petitioner fails to offer evidence to the contrary.  Furthermore, any error was corrected during the independent re-weighing process in the court of appeals and state supreme court. *Clemons v.*

113

*Mississippi*, 494 U.S. 738 (1990).  Petitioner fails to show he was prejudiced as a result of the above

allegations.  This claim is without merit in its entirety and appellate counsel cannot be held to have

been ineffective for failing to raise this claim on direct appeal.

**Sixteenth Ground for Relief**

> Ohio appellate courts committed numerous constitutional errors in
> reviewing aggravated murder conviction and death sentence in Mr.
> Landrum's case as evidenced by the court's opinions.  Therefore, Mr.
> Landrum's death sentence is in violation of the Fifth, Sixth, Eighth
> and Fourteenth Amendments to the United States Constitution.

In his sixteenth ground for relief, Landrum asserts that his death sentence is unconstitutional

because the Ohio appellate courts committed numerous constitutional errors in reviewing his

aggravated murder conviction and death sentence as evidenced by the courts' opinions. (Amended

Petition, Doc. No. 122 at 48.)  Respondent contends that this claim was not raised in the original

habeas petition, nor does it appear to have been raised at all during the appeals process and therefore

is procedurally defaulted. (Amended Return of Writ, Doc. No. 123 at 87.)  The claim was raised

however in post-conviction relief where it was held to have been non-cognizable and barred by *res

judicata*. (Second Return of Writ, Doc. No. 84, Exhibit UU.)  Additionally, Respondent argues that

to the extent Landrum's claim challenges the Ohio Supreme Court's decision on Ohio state law, this

claim is not cognizable in federal habeas corpus proceedings. (Amended Return of Writ, Doc. No.

123 at 87.)

In instances where a petitioner alleges that his or her sentence from a state court violates

federal law, the state courts should be provided a full and fair opportunity to adjudicate the federal

claim and provide relief. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  When a petitioner has

deprived the state courts of an opportunity to resolve a federal constitutional claim prior to bringing

such claim before the federal courts, and the claim cannot now be brought before the state courts, the claim is procedurally defaulted. *Id.* The petitioner is ineligible for federal habeas relief on this claim unless cause and prejudice or a miscarriage of justice can be shown. *Murray v. Carrier*, 477 U.S. 478, 485; *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) *dissent* by Justice Stevens.

Landrum failed to present this claim before the Ohio state courts, despite the opportunity to do so. As a result, the state courts were denied an opportunity to resolve any question of federal law as it pertains to this claim. It is apparent that Landrum no longer has a right to raise such claim under state law either through direct appeal or post-conviction relief proceedings. 28 U.S.C. §§ 2254 (C).

Furthermore, Landrum does not assert that he has satisfied the "cause and prejudice" or miscarriage of justice standards for not presenting this claim prior to his federal proceedings. As such, this Court finds that Landrum failed to present the sixteenth ground for relief to the state courts in a timely fashion and the claim is procedurally defaulted.


**Seventeenth Ground for Relief**

> The trial court improperly accepted the jury's recommendation of the death sentence because the recommendation was based on an improper weighing process in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In his seventeenth ground for relief, Landrum reasserts a portion of a previous claim, arguing that his sentence must be vacated because the trial court improperly accepted the jury's recommendation of the death sentence based on an improper weighing process that was tipped in favor of death. (Amended Petition, Doc. No. 122 at 50.) He argues that the improper weighing instruction given to the jury caused a recommendation of death and in turn, the trial court applied

115

the improper weighing standard failing to merge the aggravating circumstances causing a death sentence. *Id*. Respondent argues that the claim has not previously been raised and as such is procedurally defaulted. In the alternative, Respondent contends that any error resulting from the trial court's instruction and weighing is cured by the court of appeals and Ohio Supreme Court in their independent review.

Again Landrum raised the instant claim as one underlying his ineffective assistance of appellate counsel claim in his 26 (B) motion. (Amended Return of Writ, Doc. No. 123, Exhibits CCC.) Examination of the merits of the underlying claim is therefore necessary to determine whether his appellate counsel were ineffective for not having raised the claim on direct appeal.

As noted in the fifteenth ground for relief, this Court has held that the claim that the trial court improperly weighed and sentenced Petitioner to death based on the use of the word "circumstances" in the sentencing opinion is without merit. *See supra* Fifteenth Ground for Relief. Petitioner argues that the use of the word in plural form demonstrates that the court took both aggravating circumstances into account which upset the sentencing balancing process. (Amended Petition, Doc. No. 122 at 50.) Landrum further argues that the court should have merged the circumstances for mitigation. As stated above, this Court finds that the trial court, from its explicit statement in both charging the jury, and in its written sentencing opinion, did in fact merge the aggravating circumstances specifications for the sentencing phase. Furthermore, the balancing and sentence was upheld on independent review to the court of appeals and state supreme court. This claim is without merit.

**Eighteenth Ground for Relief**

The trial court erred by providing the jury with confusing and

116

misleading jury instructions during the guilt determination phase of
Mr. Landrum's case in violation of Petitioner's Fifth, Sixth, Eighth
and Fourteenth Amendments to the United States Constitution**.**

In his eighteenth ground for relief, Landrum argues that the trial court erred by providing the

jury with confusing and misleading jury instructions during the guilt determination phase. (Amended

Petition, Doc. No. 122 at 51.)  He specifically addresses concern with the use of the phrases "firmly

convinced" and "willing to act"in the definition of reasonable doubt. *Id.*

This Ground for Relief has been withdrawn. (Notice of Additional Authority, Doc. No. 203

at 10.)

### Nineteenth Ground for Relief

The presentation of non-statutory aggravating circumstances for the
jury's consideration violated Lawrence Landrum's rights to a fair
trial, due process, equal protection, freedom from cruel and unusual
punishment, and a reliable sentencing determination, as guaranteed
by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United
States Constitution.

In his nineteenth ground for relief, Landrum states that the presentation of non-statutory

aggravating circumstances for the jury's consideration violated his rights. (Amended Petition, Doc.

No. 122 at 53.)  Landrum asserts that the prosecutor argued that the offense of aggravated murder

was committed with prior calculation and design and that it was committed in an unfeeling manner.

(Amended Petition, Doc. No. 122 at 53.)  Landrum further asserts that the prosecutor introduced

victim impact statements by arguing that it was his belief, as well as that of the victim's family, that

Landrum's prior alleged admissions should be taken into account during the weighing process. *Id*.

This caused the court to issue a warning, but it failed to sustain the objection for the record or issue

a curative instruction to the jury. *Id*.

117

Respondent argues that all portions of this ground are procedurally defaulted due to Landrum's failure to object at trial. (Amended Return of Writ, Doc. No. 123 at 90.) The state supreme court reviewed for plain error and found the claim to be waived. *Id.* Additionally, the Ohio Supreme Court held that alternatively, the prosecutor did not inject improper non-statutory aggravating circumstances, but rather that the comments were properly related to the nature and circumstances of the offense. *Id.* The comments either went directly to proving an aggravating circumstance or were used as a legitimate means of refuting the defense's position of Landrum's sorrow. *Id.*

This Court agrees. Ohio's contemporaneous objection rule states that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Williams,* 51 Ohio St. 2d 112, 364 N.E. 2d 1364 (1977); *see also State v. Mason*, 82 Ohio St. 3d 144, 162, 694 N.E. 2d 932 (1998). This rule is an adequate and independent state ground, thus this claim is procedurally defaulted. *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

Alternatively, this Court has discussed all aspects of this claim in the Second Ground for Relief in determining whether or not defense counsel was ineffective in their failure to prevent or react to the alleged actions in this ground for relief. *See supra* Second Ground for Relief at 42-46. The first sub-claim agues that the prosecutor interjected non-statutory aggravating circumstances because the murder was committed with prior calculation and design and in a cruel and unfeeling manner. (Amended Petition, Doc. No. 122 at 53.) This sub-claim was held to be without merit. *Id.* Likewise, the second portion, arguing victim impact and the court's failure to sustain on record was

118

also found to be without merit. *Id.* This ground for relief is without merit.


**Twentieth Ground for Relief**

> The State's failure to provide access and failure to disclose to trial
> counsel information material to both the trial and sentencing phases
> of Mr. Landrum's capital trial deprived him of his rights under the
> Fifth, Sixth, Eighth and Fourteenth Amendments to the United States
> Constitution.


In his twentieth ground for relief Landrum argues that the State failed to disclose and provide

defense counsel access to exculpatory information material to both the guilt and sentencing phases

of trial. (Amended Petition, Doc. No. 122 at 55); (Amended Traverse, Doc. No. 124 at 88-95.)

This Ground for Relief has been withdrawn. (Notice of Additional Authority, Doc. No. 203

at 10.)


**Twenty-First Ground for Relief**

> The trial court's failure to properly sustain defense counsel's
> objection to the Prosecutor's comments and arguments regarding
> non-statutory aggravating circumstances and the views of the
> victim's family, and the trial court's failure to properly limit the
> jury's consideration of such information, deprived Lawrence
> Landrum of his rights to a fair trial, due process, equal protection and
> freedom from cruel and unusual punishment as guaranteed by the
> Fifth, Sixth, Eighth and Fourteenth Amendments to the United States
> Constitution.

Landrum argues here that the trial court failed to properly sustain defense counsels'

objections to the prosecutor's comments and arguments regarding non-statutory aggravating

circumstances and the views of the victim's family. (Amended Petition, Doc. No. 122 at 58.)

Landrum argues that the trial court's failure to properly limit the jury's consideration of this

information deprived him of his constitutional rights. *Id.*

This Ground for Relief has been withdrawn. (Notice of Additional Authority, Doc. No. 203 at 10.)

**Twenty-Second Ground for Relief**

> By requiring Lawrence Landrum to appear before the jury in shackles, Lawrence Landrum was denied his constitutional rights to the presumption of innocence, a fair trial, due process, and fair and reliable guilt/innocence and sentencing determinations, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In his twenty-second ground for relief, Landrum argues that his constitutional rights were violated when he was required to appear before the jury in shackles. (Amended Petition, Doc. No. 122 at 60.)  Respondent argues that the state court's decision was neither contrary to nor an unreasonable application of clearly established federal law, and therefore lacks merit. (Amended Return of Writ, Doc. No. 123 at 94.)

The incident in which Landrum alleges the violation arose out of was the trial court's decision to have him restrained in handcuffs during the jury view of the crime scene.  The Sixth Circuit articulated the standard in *Payne v. Smith*, in which it stated that:

> The viewing of a defendant in shackles requires a mistrial only when the jury's exposure is inherently or actually so prejudicial as to abridge the defendant's constitutional right to a fair trial.  The courts distinguish the inherent prejudice to a defendant who is shackled while in the courtroom from a defendant who has been observed in shackles for a brief period elsewhere in the courthouse.  Defendants are required to show actual prejudice where the conditions under which defendants were seen were routine security measures rather than situations of unusual restraint such as shackling of defendants during trial.

667 F.2d 541, 544-45 (6th Cir. 1981); *see also United States v. Moreno*, 933 F.2d 362, 368 (6th Cir.

1991).  Situations due to the nature of the accusation and possible danger of violence or escape may

necessitate the use of physical restraints even though the use of such security measures may infringe

on and deprive the defendant a portion of his physical indicia of innocence. *Kennedy v. Cardwell*,

487 F.2d 101, 109 (1973).  The use of and degree of security restraints exercised over the defendant,

if deemed appropriate, is within the trial judge's discretion. *Payne*, 667 F.2d at 544.

       In this current case, the trial court discussed the issue with counsel for both parties.  After

considering the nature of the crime the court deferred its judgment to the recommendation of the

custodial agency and concurred with the request for proper security precautions.  The judge further

stated on the record that the restraint was not to be excessive but as minimal as possible to still be

effective:

> Of course Mr. Landrum does have a right to–to be on the jury view.
> Matters of security are of concern and should be of concern to not
> only the State, but to defense as well as this Court and I must, in this
> case, rely upon the recommendations from the Deputies involved in
> this case and the Sheriff's Department.  So I will permit the cuffing.
> It will be as unobtrusively done as possible, not to the rear or to his
> back, no leg irons, or anything like that.  We're talking about just one
> set of handcuffs.

T.p. 2/14/86 at 29.

       Just this term, the Supreme Court discussed the shackling of a capital defendant during the

penalty phase of the trial.  It found that there is a long history of refusing to allow defendants to be

routinely shackled during trial and found no reason why this should not apply to the penalty phase

of capital trials as well. *Deck v. Missouri*, 125 S. Ct. 2007, 161 L. Ed. 2d 953 (2005).  However, the

Court did not abolish the discretion in trial judge's to require some form of restraint on a case-by-

case basis when needed for security.  The record here makes clear that the single set of handcuffs

was used only to secure the Petitioner during transport from the courthouse for a jury view of the scene of the crime. Furthermore, the trial judge, mindful of the constitutional concerns, was careful to minimize the amount of restraint. Under the circumstances, there was no abuse of discretion and thus no constitutional violation.


**Twenty-Third Ground for Relief**

> The trial court denied Mr. Landrum his rights to due process, equal protection, and effective assistance of counsel under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution by failing to provide him with an independent expert pathologist to assist Petitioner in correcting the substandard autopsy performed on the victim in the present case.

In this twenty-third ground for relief, Landrum alleges that he was denied his rights when the trial court failed to provide him with an independent expert pathologist. (Amended Petition, Doc. No. 122 at 62); (Amended Traverse, Doc. No. 124 at 106-110.) Respondent argues that this claim was not raised on direct appeal, nor was it raised in the original petition for habeas corpus relief. (Amended Return of Writ, Doc. No. 123 at 96.) It was raised during post-conviction relief proceedings and was held to be barred by the doctrine of *res judicata* and therefore, Respondent contends, it should be held to be procedurally defaulted. (Second Return of Writ, Doc. No. 84, Exhibit UU.)

Landrum raised the instant claim as one underlying his ineffective assistance of appellate counsel claim in his Application for Reopening and Application for Delayed Reconsideration. (Amended Return of Writ, Doc. No. 123, Exhibits CCC.) Based on this Court's decision on the 26 (B) motion in the fortieth ground for relief, some examination of the merits of Landrum's underlying claim is necessary to determine whether his appellate counsel were ineffective for not having raised

122

the claim on direct appeal. *See infra* Fortieth Ground for Relief.

This claim does not warrant relief.  Counsel for Petitioner did not request an independent pathology expert.  Therefore, the trial court did not error in failing to provide for such expert. *Williams v. Coyle*, 1998 U.S. Dist. Lexis 22499 (N.D. Ohio 1998).  Any appeal would have been barred by the lack of contemporaneous objection and therefore it was not ineffective assistance of appellate counsel to fail to raise this claim.  This ground for relief is without merit.


**Twenty-Fourth Ground for relief**

> Mr. Landrum's right against cruel and unusual punishment and his right to due process are violated when, the legal issue of relevance is left to the jury regarding sentencing considerations, and, the sentencing proceeding creates an unacceptable risk of arbitrary, nonstatutory aggravators in the weighing process. U.S. Const. Amend. VIII, XIV.

In the twenty-fourth ground for relief, Landrum argues that his rights were violated when the trial court instructed the jurors during the sentencing phase that they may consider any evidence which was introduced during the trial phase. (Amended Petition, Doc. No. 122 at 64.)  He argues that this instruction permitted the jurors to consider and use in the weighing process evidence not related to the statutory aggravating circumstances. *Id.*  Additionally Landrum argues that the jurors were given permission to consider evidence relevant to the nature and circumstances of the crime and that as a result jury discretion was improperly channeled.[11] *Id.*  Respondent argues that this claim was not properly raised on direct appeal, in whole or in part, but was raised during post-conviction relief proceedings. (Amended Return of Writ, Doc. No. 123 at 98.)  The trial court ruled

---

[11] The portion of this Ground for Relief arguing the constitutionality of Ohio Revised Code 2929.03(D) has been withdrawn. (Notice of Additional Authority, Doc. No. 203 at 11.)

that the claim was based solely on the record and should have been raised on direct appeal; failure to do so barred the claim under the doctrine of *res judicata*. (Second Return of Writ, Doc. No. 84, Ex. UU.)  The Ohio Court of Appeals and Ohio Supreme Court affirmed this decision.

Again Landrum raised the instant claim as one underlying his ineffective assistance of appellate counsel claim in his Application for Reopening and Application for Delayed Reconsideration. (Amended Return of Writ, Doc. No. 123, Exhibits CCC.)  Some examination of the merits of Landrum's underlying claim is therefore necessary to determine whether his appellate counsel were ineffective for not having raised the claim on direct appeal.

This Court analyzed the trial court's instruction as to what may be considered from the guilt phase for purposes of balancing against the mitigation evidence in one of the sub-claims in the twelfth ground for relief. *See supra* Twelfth Ground for Relief.  This claim is without merit.

**Twenty-Fifth Ground for Relief**

> The Ohio courts conducted their statutorily mandated proportionality review
> in capital cases and in Mr. Landrum's case in such a manner that it provided
> no meaningful review.  Mr. Landrum's sentence is disproportionate in
> violation of the Sixth, Eighth and Fourteenth Amendments.

In his twenty-fifth ground for relief, Landrum asserts that Ohio law provides inadequate appellate review of the proportionality of death sentences. (Amended Petition, Doc. No. 122 at 67); (Amended Traverse, Doc. 124 at 122-130.) Respondent argues that this claim is procedurally defaulted. (Amended Return of Writ, Doc. No. 123 at 100.)  In the alternative, Respondent makes the argument that this claim is not a cognizable habeas claim. *Id.*  This Court finds that the claim was properly preserved in direct appeal. (Return of Writ, Doc. No. 17, Exhibit O at 113.)

This contention fails as no proportionality review is constitutionally "required in every case in which the death penalty is imposed and the defendant requests it." *Pulley v. Harris*, 465 U.S. 37, 50-51 (1984); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001).  As this is not a constitutional right States are afforded great latitude in the review it does provide as it is an additional safeguard against arbitrarily imposed death sentences . . . ." *Pulley v. Harris*, 465 U.S. at 50.

**Twenty-Sixth Ground for Relief**

> The Ohio courts conducted their statutorily mandated proportionality review in capital cases and in Mr. Landrum's case in such a manner that it provided no meaningful review.  Mr. Landrum's sentence is disproportionate in violation of the Sixth, Eighth and Fourteenth Amendments.

In his twenty-sixth ground for relief Landrum contends that the death qualification process used during voir dire, in conjunction with the trial court's decision as to which jurors would be excused, deprived him of his right to a fair and impartial jury. (Amended Petition, Doc. No. 122 at 70.)  Respondent counters that the Ohio Supreme Court's decision was neither an unreasonable application of nor contrary to established federal law. (Amended Return of Writ, Doc. No. 123 at 102.)  As this claim was properly preserved on its merits, this Court may address it on the merits.

Portions of this ground for relief, those pertaining to the death qualification of jurors and prospective juror Donald Clark, have been withdrawn. (Notice of Additional Authority, Doc. No. 203 at 11.)

Landrum argues the trial court erred when it failed to excuse prospective jurors Marsha Morrison, James Bowers and Clarence Edler because they could not fairly and impartially consider Landrum's mitigating evidence. (Amended Petition, Doc. No. 122 at 71-72.)  He argues that while the court did attempt to rehabilitate these venire members, they should have been excused because

they were more partial to imposing a death sentence and all said that they could not consider at least one, if not more, mitigating factors in deciding the appropriate penalty. *Id*.  As a result, defense counsel was forced to use two peremptory challenges to remove two of these potential jurors or risk that the entire jury panel be tainted with the trial court's error. *Id*.

The constitutional guarantee to a fair trial "requires that a defendant have a panel of impartial, indifferent jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *Murphy v. Florida*, 421 U.S. 794 (1975).  The Supreme Court further said in the *Irvin* case that to be fair and impartial it is sufficient if the juror can "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723.  If the juror states that this can be done, it is not error in failing to dismiss the juror for cause. *United States v. Mitchell*, 556 F.2d 371 (6th Cir. 1977); *United States v. Giacalone*, 588 F.2d 1158,1164 (1978).

After a thorough analysis of the trial transcript of the voir dire proceedings, this Court finds that each of the jurors in question expressed to the court that he or she could, and would, decide the verdict based on the evidence presented during the trial and the instructions as given by the trial judge.  Furthermore, it should be noted that "a jury need not be unanimous with regard to a mitigating factor for jurors to consider it in mitigation." *Davie v. Mitchell*, 291 F. Supp. 2d 573 (N.D. Ohio 2003), *citing McKoy v. North Carolina*, 494 U.S. 433, 435 (1990).  This claim is without merit.

**Twenty-Seventh Ground for Relief**

> The trial court's arbitrary change of the voir dire process from individual to group voir dire denied Mr. Landrum the ability and opportunity to effectively question the prospective jurors and to make meaningful decisions regarding juror challenges.

Next Landrum asserts a constitutional violation arising out of the trial court's change of the voir dire process from individual to a group voir dire. (Amended Petition, Doc. No. 122 at 73); (Amended Traverse, Doc. No. 124 at 88-95.)  He states that this denied him the opportunity and ability to effectively question venire members in a setting in which they would be able to respond openly and honestly. *Id*.

This Ground for Relief has been withdrawn. (Notice of Additional Authority, Doc. No. 203 at 11.)

**Twenty-Eighth Ground for Relief**

> Lawrence Landrum was denied a trial by a fair and impartial jury due to the trial being held in a community that had been so saturated with media coverage that most of the potential jurors had been exposed to significant media coverage of the case, including the trial and conviction of Lawrence Landrum's co-defendant.

In his twenty-eighth ground for relief Landrum argues that he was deprived of a fair trial by an impartial jury when the trial court denied his motion for a change of venue. (Amended Petition, Doc. No. 122 at 75.)  This resulted in the case's being tried in a community which had been saturated with media coverage of the murder and the trial and conviction of Landrum's co-defendant Grant Swackhammer, thus exposing potential jurors to pre-trial publicity. *Id*.  Respondent maintains that the decision by the Ohio Supreme Court on this issue was neither an unreasonable application of nor contrary to clearly established federal law and is therefore without merit. (Amended Return of Writ, Doc. No. 123 at 106.)

Landrum argues that the trial court erred when it did not order a change of venue on the basis of extensive pre-trial publicity. (Amended Petition, Doc. No. 122 at 75.)  Defense counsel made a motion for change of venue which the trial court denied but reserved the right to reconsider

after counsel had attempted to seat a fair and impartial jury. *Id.* Once voir dire was completed

defense counsel again renewed their motion for change of venue, stating that:

> [It] does appear that there has been broad and wide media coverage
> and that nearly all the jurors questioned and selected - - or at least
> passed for cause - - had read or had been pretty well familiarized with
> the circumstances of the offense as they had been reported through
> the media.  Although they did assure us that they could put aside and
> only consider what they hear - - I would just raise the issue - - that
> due to the widespread publicity that a Change of Venue could very
> well be granted within the Court's discretion.

T.p. 2/12/86 at 272.  Counsel, however, is mistaken as to the standard imposed for change of venue

based on pre-trial publicity as articulated by the United States Supreme Court:

> It is not required . . . . that the jurors be totally ignorant of the facts
> and issues involved.  In these days of swift, widespread and diverse
> methods of communication, an important case can be expected to
> arouse the interest of the public in the vicinity, and scarcely any of
> those best qualified to serve as jurors will not have formed some
> impression or opinion as to the merits of the case.

*Irvin v. Dowd*, 366 U.S. 717, 722 (1961)(holding that potential jurors, 90% of whom admitted to

having an opinion of defendant's guilt prior to the trial, could not escape pre-trial publicity and

opinions due to numerous newspaper headlines, articles, cartoons, and pictures dating back

approximately six to seven months before trial in conjunction with extensive coverage on local

television and news radio consisting of defendant's background information, alleged prior juvenile

and adult convictions, accusations of parole violations, identification results of the police line up,

comments on defendant's failure to take a lie detector test, an alleged confession, and commentary

that defendant had offered a plea bargain to avoid the death penalty); *see also Sheppard v. Maxwell*,

384 U.S. 333 (1966)(describing a "carnival atmosphere" of pre-trial publicity including a three day

public inquest televised live from a high school gymnasium seating hundreds of people.)

In this case, court and counsel extensively discussed the past publicity and questioned the

128

jurors on prejudice arising from the previous reports. T.p. 2/10/86 at 129-131; T.p. 2/11/86 at 129-33, 144-148, 153, 169, 193, 197. The trial judge properly denied the motion on the basis that most of the potential jurors did not remember any or remembered very few details surrounding the case and the trial of co-defendant Grant Swackhammer. T.p. 2/12/86 at 273. The other venire members expressed no difficulty whatsoever with putting all prior accounts and opinions out of their minds and deliberating on the evidence as presented in the courtroom to assure a fair and impartial trial. Furthermore, the jurors were properly admonished to avoid listening to or reading any accounts of the trial until after they were done deliberating. Thus, the state courts' decisions were not contrary to nor an unreasonable application of clearly established federal law and the claim is without merit.

**Twenty-Ninth Ground for Relief**

> The trial court's failure to appoint a qualified psychologist to assist Lawrence Landrum and his counsel in jury selection, where the juror pool had been exposed to intense pre-trial publicity and where venue was not changed, denied Mr. Landrum his rights guaranteed under the Sixth, Eighteenth and Fourteenth Amendments to the United States Constitution.

In a continuation of his above claim, in his twenty-ninth ground for relief Landrum argues that his rights were violated when the trial court failed to appoint or allocate funds for a qualified psychologist to assist defense counsel in jury selection. (Amended Petition, Doc. No. 122 at 77); (Amended Traverse, Doc. No. 124 at 108-110.)

This Ground for Relief has been withdrawn. (Notice of Additional Authority, Doc. No. 203 at 11.)

**Thirtieth Ground for Relief**

The trial court's failure to provide Mr. Landrum with an independent, competennt [sic] psychologist when this service was reasonably necessary to adequately present Petitioner's mitigation evidence violated Mr. Landrum's rights as guarantted [sic] by the Fifht [sic], Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In his thirtieth ground for relief, Landrum makes the argument that his rights were violated when the trial court failed to provide him the services of an independent, competent psychologist for mitigation purposes. (Amended Petition, Doc. No. 122 at 80.)  Respondent argues that this claim is procedurally defaulted as it was not brought on direct appeal. (Amended Return of Writ, Doc. No. 123 at 110.)  Alternatively, Respondent contends that this claim is without merit as Landrum could have presented psychiatric evidence from his own forensic psychologist Dr. Schmidtgoessling. *Id*. at 111.  Furthermore, Respondent argues that Petitioner fails to show how the testimony offered during post-conviction relief proceedings, that of Dr. Smith, would have supported defense's mitigation theory. *Id*.

Landrum raised the instant claim as one underlying his ineffective assistance of appellate counsel claim in his 26(B) motion. (Amended Return of Writ, Doc. No. 123, Exhibits CCC.)  Some examination of the merits of Landrum's underlying claim is therefore necessary to determine whether his appellate counsel were ineffective for not having raised the claim on direct appeal.

On October 17, 1985, defense counsel asked the court for money to hire a psychiatrist to evaluate Landrum's mental status then and at the time of the offense. T.p. 10/17/85 at 15. Additionally, counsel provided the court with the name of two experts that might be able to assist them in the evaluation and preparation of the defense, one of which was Dr. Schmidtgoessling. *Id*. at 16-18.  The court reserved ruling at that point pending additional information, specifically, how much money should be allocated toward the expert. T.p. 10/17/85 at 15-18.  On October 23, 1985, the motion was renewed and the additional information was provided. T.p. 10/23/85 at 1-8.  The

130

court sustained the motion and ordered that sufficient funds be provided to hire Dr. Schmidtgoessling, one of the two experts recommended for appointment by defense counsel. *Id*. At no time did counsel make a motion that Dr. Schmidtgoessling be replaced because they were of the opinion that she was not adequate.

Now, however, Petitioner is arguing that he did not receive the psychological assistance as recognized by the United States Supreme Court in *Ake* as the court appointed expert, Dr. Nancy Schmidtgoessling, had neither the time nor expertise to develop a coherent and comprehensive analysis such as that developed by Dr. Smith. (Amended Petition, Doc. No. 122 at 80.) He argues specifically that Dr. Schmidtgoessling lacked expertise concerning substance abuse. He also argues that her competence was further challenged by the time limitations in which she had to work. *Id*. She did not testify during mitigation because of defense counsel's fear that the presentation of underdeveloped evidence concerning Landrum's excessive use of drugs and alcohol may produce the opposite result and jurors may consider it to be an aggravator rather than a mitigating factor. *Id*.

The Sixth Circuit has interpreted the *Ake* standard to allow for psychiatric expert assistance during the sentencing phase if 1) the defendant's sanity was a significant factor at trial, or 2) the state, during the sentencing phase, presents psychiatric evidence of future dangerousness. *Smith v. Mitchell*, 348 F.3d 177 (6th Cir. 2003); *Thompson v. Bell*, 315 F.3d 566, 588-89 (6th Cir. 2003); *Skaggs v. Parker*, 235 F.3d 261, 272 (6th Cir. 2000); *United States v. Osoba*, 213 F.3d 913, 917 (6th Cir. 2000); *Kordenbrock v. Scroggy*, 919 F.2d 1091, 1120 (6th Cir. 1990). *Ake* guarantees a competent and independent expert. *Ake v. Oklahoma*, 470 U.S. 68 (1985). It does not require that the expert testimony be the best testimony possible nor is it necessarily an expert of defendant's own choosing. *Dennis v. Mitchell*, 68 F. Supp. 2d 863 (N.D. Ohio 1999). Landrum did not present a sanity defense nor did the State argue future dangerousness. Therefore, under *Ake*, he was not

constitutionally entitled to a psychiatric expert.

Furthermore, it should be noted that at a later time Landrum requested a mental evaluation. T.p. 2/27/86 at 7. The court sustained the motion and asked that Dr. David Helms be appointed if available. *Id*. at 7, 11. Defense counsel later moved to withdraw their request. T.p. 3/6/86 at 2-4. After the trial judge consulted with Landrum and explained his right to an evaluation for mitigation purposes, the judge granted the motion to withdraw the request. *Id*. Therefore, it seems to this Court that the trial court did provide both a psychologist and an additional mental health expert to evaluate Landrum's mental condition. It was strategic decisions by counsel as to who should be used and whether or not additional mental testing should be undergone. This sub-claim is without merit.

Petitioner makes the argument that Dr. Schmidtgoessling lacked expertise in substance abuse and that the trial court erred in its failure to provide the assistance of a psychologist who specialized in substance abuse. (Amended Petition, Doc. No. 122 at 80.) Counsel did not ask the court specifically for an expert in this area. As discussed in the previous sub-claim, they did ask for a psychologist and offered the court names of two individuals that they would be interested in hiring. T.p. 10/17/85 at 15. The court allowed the hiring of one, Dr. Schmidtgoessling. Counsel did not make a motion for an expert of this more specialized area. As it was not requested, the court cannot be found to have erred in not appointing such expert.

This claim is without merit in its entirety and appellate counsel cannot be held as ineffective in their failure to properly present the claim in the state courts.

**Thirty-First Ground for Relief**

The indictment charging Lawrence Landrum was fatally defective as

132

it failed to give adequate notice to Mr. Landrum and his counsel of all elements of the underlying charge of burglary, "another offense" referenced in specification one to count one, and a "theft offense" referenced in count two, thereby denying Lawrence Landrum his rights to due process, adequate notice, and effective assistance of counsel as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

In his thirty-first ground for relief, Landrum asserts that his rights were violated due to a fatally defective indictment which failed to give him adequate notice of all elements of the charges. (Amended Petition, Doc. No. 122 at 82.)

This Ground for Relief has been withdrawn. (Notice of Additional Authority, Doc. No. 203 at 12.)

## Thirty-Second Ground for Relief

The trial court's failure to provide Mr. Landrum with a pharmacologist and/or toxicologist specialist when this service was reasonably necessary to adequate trial representation, deprived Petitioner of his statutory rights as well as his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In his thirty-second ground for relief, Landrum argues that his rights were violated when the trial court failed to provide him with a pharmacologist and/or toxicologist though the services of such specialists were necessary for an adequate trial preparation and presentation. (Amended Petition, Doc. No. 122 at 84).

This Ground for Relief has been withdrawn. (Notice of Additional Authority, Doc. No. 203 at 12.)

## Thirty-Third Ground for Relief

The trial court failed to require the state of Ohio to state its reasons for

exercising its peremptory challenges during the jury selection process of Petitioner's case in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution**.**

Landrum argues in his thirty-third ground for relief that his rights were violated when the trial court failed to require the State to state its reasons on record for exercising its peremptory challenges during voir dire. (Amended Petition, Doc. No. 122 at 85.)

This Ground for Relief has been withdrawn. (Notice of Additional Authority, Doc. No. 203 at 12.)

**Thirty-Fourth Ground for Relief**

Ohio's proportionality review process is flawed and does not serve as an effective means of insuring death sentences are not imposed arbitrarily or capriciously.

In his thirty-fourth ground for relief, Petitioner asserts that Ohio's proportionality review process is flawed. (Amended Petition, Doc. No. 122 at 87); (Amended Traverse, Doc. No. 124 at 122-130.)  Respondent counters that this claim was not raised at trial or on direct appeal and is therefore, procedurally defaulted. (Amended Return of Writ, Doc. No. 123 at 119.)  The Court finds that this claim was in fact raised on direct appeal, as it was properly preserved, the Court may address the claim on its merits. (Return of Writ, Doc. 17, Exhibit O at 113.)

In turning to the merits, Landrum's contention fails as no proportionality review is constitutionally "required in every case in which the death penalty is imposed and the defendant requests it." *Pulley v. Harris*, 465 U.S. 37, 50-51 (1984); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001).  As this is not a constitutional right, States are afforded great latitude in the review they do provide as it is an additional safeguard against arbitrarily imposed death sentences . . . ." *Pulley*, 465 U.S. at 50.  This ground for relief is denied.

**Thirty-Fifth Ground for Relief**

> Ohio's statutory provisions governing the imposition of capital punishment violate the Fifth, Sixth, Eighth and Fourteenth amendments to the United States Constitution. These provisions, constituting the capital punishment statutory scheme, are unconstitutional on their face and as applied to Lawrence Landrum.

In his thirty-fifth ground for relief, Landrum argues that Ohio's statutory provisions governing the imposition of capital punishment are unconstitutional. (Amended Petition, Doc. No. 122 at 90.)  Among the sub-claims Landrum raises are: there is no rational basis for the death penalty; the State's discretion in who to charge leads to an arbitrary and discriminatory imposition of the death penalty; there is no need to show various mental states; the proof required to obtain a sentence of death should be proof beyond all doubt; the pre-sentence investigative report; absence of mitigating factors/only appropriate penalty; vagueness; no societal interests; defendant should not have the burden of proving mitigating factors by a preponderance of the evidence; anti-mercy; proof of aggravating circumstances at guilt phase; appropriateness; felony murder; there is an impermissible risk of death imposed on defendants who exercise their right to a trial rather than opting for a plea agreement; proportionality database; there is no option to choose a like sentence when there is only aggravating circumstances; appropriateness; contemporary values; no rational basis for death penalty; facial invalidity; and finally, Ohio's death penalty provisions violate international law.

Respondent argues that some of the sub-claims were in fact raised on direct appeal and in the first habeas petition. (Amended Return of Writ, Doc. No. 123 at 120.)  The portions of this claim that were not raised though, have become procedurally defaulted.

This Court notes, that in addition to the sub-claims that were properly presented during

135

direct appeal, the sub-claim dealing with International laws and treaties was raised in Landrum's 26(B) motion. *See infra* Fortieth Ground for Relief at 145-155.

In his first sub-claim, Landrum makes the argument that the death penalty is unconstitutional because it constitutes cruel and unusual punishment when it is an excessive punishment, as it is in this case. (Amended Petition, Doc. No. 122 at 90.) He argues that a punishment is excessive if it 1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or 2) is grossly out of proportion to the gravity of the offense. *Id*. As the *Gregg* Court stated, legislative measures, such as the system for electing representatives, is a way in which to gauge contemporary standards on punishment. *Gregg v. Georgia*, 428 U.S. 153, 174 (1976). Thus, courts will presume the validity of such methods. *Id*. at 175. Furthermore, the Ohio Revised Code specifically lists which crimes are death eligible to avoid random imposition of the death penalty. O.R.C. § 2929.04. Landrum was found guilty of such eligible crime and a jury of his peers gave death as the recommended sentence. The decision was affirmed by the state courts on appeal. The punishment is not excessive in this case.

Landrum further states that the Ohio death penalty statutory scheme is unconstitutional because it affords the prosecutor unregulated discretion in determining whom to charge with a capitally-eligible offense and this results in racial disparities. (Amended Petition, Doc. No. 122 at 91.) The Supreme Court held in *McClesky v. Kemp* that statistical studies suggesting racially-motivated disparities in the selection and prosecution of death penalty cases is insufficient to support a claim that such discriminatory practices occurred in the petitioner's case. 481 U.S. 279 (1987). Landrum has produced no evidence that the decision-makers in his particular case acted in a discriminatory manner. The same claim has been rejected by this Court in *Zuern v. Tate*, 101 F.

136

Supp. 2d 948, 1002 (S.D. Ohio 2000), on the authority of *Gregg v. Georgia*, 428 U.S. 153 (1976).

In support of the sub-claim above, Landrum makes the following arguments: the State fails to require the conscious desire to kill, or premeditation and deliberation as the culpable mental states, and the Ohio death penalty statutes fails to require proof beyond all doubt before a death sentence can be imposed. (Amended Petition, Doc. No. 122 at 91.)  The mental state portion of the claim has been rejected on the authority of *Tison v. Arizona*, 481 U.S. 137, 158 (1987).  The standard for the burden of proof in a capital prosecution in Ohio is proof beyond reasonable doubt. O.R.C. § 2901.05.  Petitioner offers no evidence to support his contention that his constitutional rights were violated when the court did not apply a proof beyond all doubt standard.  This sub-claim is without merit.

Next, Petitioner challenges the contention that under the Ohio death penalty statutes, if a defendant requests a pre-sentence investigation report it is mandatory that it be submitted to the jury, judge, and prosecution as well. (Amended Petition, Doc. No. 122 at 91); *see* O.R.C. § 2929.03 (D)(1)(Anderson 2003).  This claim has been previously rejected. *Williams v. Bagley*, 380 F.3d 932, 963-964 (6th Cir. 2004); *Cooey v. Coyle*, 289 F.3d 882, 925-26 (6th Cir. 2002); *Byrd v. Collins*, 209 F.3d 486, 539 (6th Cir. 2000); *Dennis v. Mitchell*, 68 F. Supp. 2d 863, 904 (N.D. Ohio 1999).

Landrum's next argument concerns the fact that the State does not have the burden of proving an absence of mitigating factors in the sentencing phase, nor is the State required to make a showing that death is the only appropriate sentence. (Amended Petition, Doc. No. 122 at 92.)  The United States Supreme Court has never held that "the state must affirmatively structure in a particular way the manner in which juries must consider mitigating evidence." *Buchanan v. Angelone*, 522 U.S. 269, 276 (1998).  The Court notes, too, that the Ohio statutes clearly place the burden of proving the existence of any mitigating factors on the defendant in a capital case, Ohio

137

Rev. Code § 2929.03(D)(1), and a requirement that the defendant do so by a preponderance of the evidence does not offend the federal constitution. *See Walton v. Arizona*, 497 U.S. 639, 649-51 (1990) *overruled in part by Ring v. Arizona*, 536 U.S. 584 (2002).

Next Landrum argues that Ohio Revised Code § 2929.04 (A)(7) is constitutionally vague because it fails to narrow the class of individuals eligible for the death penalty and because it allows an element of aggravated murder to be considered as an aggravating circumstance in the mitigation phase of trial. (Amended Traverse, Doc. No. 124 at 202.)  To be constitutional, a capital sentencing scheme must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Lowenfield v. Phelps*, 484 U.S. 231 (1988) *quoting Zant v. Stevens*, 462 U.S. 862, 877 (1983).  Under the Ohio capital sentencing scheme, the jury is required to find at least one aggravating circumstance before imposing a death sentence, creating a narrowing of the class of persons that may be eligible for the sentence.  Furthermore, an aggravating circumstance may duplicate an element of the capital offense if the class of death-eligible defendants is sufficiently narrowed by the definition of the offense itself. *Williams v. Taylor*, 529 U.S. 362 (2000) *citing Lowenfield v. Phelps*, 484 U.S. 231 (concluding the Ohio statutory scheme is not constitutionally infirm on the ground stated here.)

Landrum challenges that mitigation has become "devalued" because there is no method to ensure a proper "weighing and consideration" of mitigating factors against aggravating circumstances. (Amended Petition, Doc. No. 122 at 92.)  The United States Supreme Court has never held that "the state must affirmatively structure in a particular way the manner in which juries must consider mitigating evidence." *Buchanan v. Angelone*, 522 U.S. 269, 276 (1998).

Landrum next argues that there is a constitutional right to life. (Amended Petition, Doc.

138

No. 122 at 92.) However, the death penalty for the crime of murder has always been accepted in this nation's history. *Gregg v. Georgia*, 428 U.S. 153, 176 (1976).  The constitutional right to life is rather a guarantee that capital punishment will not be imposed without certain limitations, such as due process of law. *Id*.; U.S. Const. Amend. V, XIV.

Next Landrum challenges that the death penalty does not serve a legitimate and compelling state interest achieved by the least restrictive means. (Amended Petition, Doc. No 122 at 93.)  The Constitution, however, does not required that the legislature use the least severe penalty possible as long as the penalty selected is not "cruelly inhumane or disproportionate to the crime involved." *Gregg*, 428 U.S. at 175.

Landrum next argues that the death penalty goes against societal interests and contemporary values. (Amended Petition, Doc. No. 122 at 93.)  As the *Gregg* court stated, legislative measures, such as the system for electing representatives, is a way in which to gauge contemporary standards on punishment. *Gregg*, 428 U.S. at 174.  Thus, courts will presume the validity of such methods. *Id*. at 175.

Next Landrum argues that the imposition of the death penalty fails to meet the least restrictive means.  This claim is without merit as the death penalty has been upheld by the Supreme Court of the United States. *Williams v. Bagley*, 380 F.3d 932 (6th Cir. 2004) *accord. Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001).

Landrum challenges the constitutionality of the Ohio death penalty statutes by asserting that the state permits the death penalty to be administered in an arbitrary, capricious, and discriminatory manner. (Amended Petition, Doc. No. 122 at 91.)  That claim has been rejected by the Sixth Circuit Court of Appeals in a previous case. *Buell v. Mitchell*, 274 F.3d 337, 367 (6th Cir. 2001).

Next Petitioner reasserts his challenge to the defendant having the burden of proof in sentencing to prove the existence of mitigating factors by a preponderance of the evidence. (Amended Petition, Doc. No. 122 at 93.) For the reasons previously stated, this sub-claim is without merit.

Landrum next argues that Ohio's death penalty is unconstitutional because it does not permit the jurors to consider sympathy or mercy for the defendant. (Amended Petition, Doc. No 122 at 94, 98-99.) The Supreme Court has held that "the sentencer must **rationally** distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not." *Spaziano v. Florida*, 468 U.S. 447, 460 (1984); *Zuern v. Tate*, 101 F. Supp. 2d 948 (2000). The jury must of course listen sympathetically to the mitigating evidence. That is, they are required to accept as mitigating those factors which the Supreme Court has held are proper to be considered in mitigation. But they may not exercise general sympathy. This is to ensure that the death penalty is not administered in an arbitrary and unpredictable manner. *Gregg v. Georgia,* 428 U.S. 153 (1976); *Furman v. Georgia*, 408 U.S. 238 (1972).

Landrum further contends that the Ohio death penalty statutes are unconstitutional because they require proof of aggravating circumstances during the guilt phase of trial. (Amended Petition, Doc. No. 122 at 94.) That argument has been rejected by this Court in *Zuern v. Tate*, 101 F. Supp. 2d 948, 1003-04 (S.D. Ohio 2000), *on the authority of Tuilaepa v. California*, 512 U.S. 967, 971-72 (1994).

Next Landrum argues that the Ohio death penalty statutes are unconstitutional because they allow an element of aggravated murder to be considered as an aggravating circumstance in the mitigation phase of trial. (Amended Petition, Doc. No. 122 at 95.) The United States Supreme Court, however, settled the same question against the Petitioner's claim in *Lowenfield v. Phelps*. 484

140

U.S. 231, 241-46 (1988); *see also Buell*, 274 F.3d at 369 (applying *Lowenfield* and concluding the Ohio statutory scheme is not constitutionally infirm on the ground stated here.)  An aggravating circumstance may duplicate an element of the capital offense if the class of death-eligible defendants is sufficiently narrowed by the definition of the offense itself. *Williams v. Taylor*, 529 U.S. 362 (2000) *citing Lowenfield v. Phelps*, 484 U.S. 231 (1988).

In his subsequent sub-claim, Landrum challenges that Ohio's death penalty statutory scheme unconstitutionally encourages capital defendants to plead guilty. (Amended Petition, Doc. No.122 at 95.)  He argues that the scheme as it exists, imposes an impermissible risk of death on capital defendants who choose to exercise their rights to a trial as opposed to those who plead. *Id*. The same claim was rejected in *Zuern*, 101 F. Supp. 2d 948, at 1004-05, *on the authority of Corbitt v. New Jersey*, 439 U.S. 212 (1978); *accord*. *Scott v. Anderson*, 58 F. Supp. 2d 767, 796 (N.D. Ohio 1998), *reversed in part on other grounds*, *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000).

Landrum challenges the Ohio law and procedures for appellate review of the proportionality of death sentences. (Amended Petition, Doc. No. 122 at 95-98.)  This claim has been properly dealt with in the thirty-fourth ground for relief.  This sub-claim is without merit for the reasons previously stated.

Next, Landrum argues that the Ohio statutory scheme is unconstitutional because it creates a mandatory sentencing scheme due to the fact it does not allow the sentencing body the option of imposing a life sentence when the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt or in the absence of any mitigating evidence. (Amended Petition, Doc. No. 122 at 98.)  Landrum's claim fails under *Blystone v. Pennsylvania*, 494 U.S. 299, 305 (1990), and *Boyde v. California*, 494 U.S. 370, 377 (1990).  Similarly, this Court has stated that "there is no constitutional impediment to a state enacting a capital punishment statute which

141

mandates the imposition of the death penalty, when the state has proved, beyond a reasonable doubt, that the aggravating circumstances outweigh the mitigating factors." *Zuern*, 101 F. Supp. 2d at 987.

Petitioner again reiterates his challenge to foreclosing the jury's ability to consider mercy in sentencing. (Amended Petition, Doc. No. 122 at 98.) For the reasons previously stated, this sub-claim is without merit.

Again, the appropriateness sub-claim is reasserted. (Amended Petition, Doc. No. 122 at 99.) For the reasons previously stated, this sub-claim is without merit.

Next, Petitioner reasserts a combination of his previous "cruel and unusual punishment" claim and "societal values" claim. (Amended Petition, Doc. No. 122 at 99.) For the reasons previously stated, this sub-claim is without merit.

Next Landrum argues that the right to life is a fundamental right and such rights cannot be taken away without a showing of a compelling governmental interest. (Amended Petition, Doc. No. 122 at 100.) Ohio's statute is unconstitutional as it fails to establish capital punishment is the least restrictive means to accomplish the State's interests. *Id.* This claim has been rejected in *Gregg v. Georgia*, 428 U.S. 153 (1976); *Williams v. Bagley*, 380 F.3d 932 (6th Cir. 2004); *Smith v. Mitchell*, 348 F.3d 177 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001).

Petitioner again reasserts his claim of arbitrary and discriminatory imposition of the death penalty. (Amended Petition, Doc. No. 122 at 100.) For reasons previously stated, this sub-claim is without merit.

Based on the above claims, Landrum argues that the Ohio death penalty statute is facially invalid. As this Court has determined the other various sub-claims of this ground for relief to be valid, this portion of the ground is without merit.

Next, Landrum argues that imposition of the death penalty violates various international

142

laws, including but not limited to; the Organization of American States Treaty and the American Declaration of the Rights and Duties of Man. (Amended Petition, Doc. No. 122 at 101-102.) Landrum advances this sub-claim by stating that pursuant to the Supremacy Clause of Article VI of the United States Constitution, the judges of every state are bound by the terms of international treaties to which the United States is a party. *Id.* This claim has been rejected by the Sixth Circuit in *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001) and *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001). The agreements entered upon by the United States do not prohibit the death penalty and furthermore, each agreement has been approved with reservations that preserve the power of the States, within Constitutional limits, on the use of the death penalty. *Buell*, 274 F.3d at 371 *citing* Charter of the Organization of American States, 1951, 2 U.S.T. 2394, 2484.

This claim is without merit in its entirety.

**Thirty-Sixth Ground for Relief**

> Lawrence Landrum was denied the effective assistance of appellate counsel by the Ohio Supreme Court's denial of an extension of time necessary and adequate for preparation of his brief on the merits.

In his thirty-sixth ground for relief, Landrum argues that he was denied the effective assistance of appellate counsel because of the Ohio Supreme Court's denial of an extension of time to allow his counsel adequate time to prepare an appellate brief. (Amended Petition, Doc. No. 122 at 103.)

This Ground for Relief has been withdrawn. (Notice of Additional Authority, Doc. No. 203 at 13.)

**Thirty-Seventh Ground for Relief**

> Petitioner Landrum was denied a fair and meaningful appeal as

143

guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments
to the United States Constitution.

In the thirty-seventh ground for relief, Landrum asserts that he was denied a fair and meaningful appeal because his right to effective assistance of counsel was violated by a conflict of interest. (Amended Petition, Doc. No. 122 at 105.)  Respondent counters that this claim was raised in post-conviction relief and was found not to be cognizable and defaulted.  Furthermore, Respondent argues that there is nothing in the record that would indicate that Mr. Allyn terminated his representation of Petitioner to pursue a job with the Ross County Prosecutor's Office. (Amended Return of Writ, Doc. No. 123 at 131.)  It is also argued that counsel alleged their own ineffectiveness on direct appeal to the Ohio Supreme Court, and should have properly raised this issue at that time as well and their failure to do so has resulted in the claim being defaulted. *Id*.  Respondent alleges that even if viewed on the merits this claim would fail as Landrum's own counsel attested to the fact that William Allyn took a position with the prosecutor's office but that he did not represent Petitioner during his direct appeals. *Id*.  Finally, Respondent contends that Landrum has failed to demonstrate that Allyn actively represented conflicting interests and that such conflict adversely effected his performance or Landrum's case. *Id*.  This Court agrees with Respondent's argument and finds this claim to be procedurally defaulted.

Alternatively, this Court will examine the claim on its merits.  Counsel owes the defendant a duty of loyalty, which includes the duty to avoid conflict of interest. *Strickland v. Washington*, 466 U.S. 688 (1984) *citing Cuyler v. Sullivan*, 446 U.S. 335 (1980).  A claim of conflict of interest alone, however, is insufficient to justify reversal of a conviction. *See United States v. Hall*, 200 F.3d 962, 966 (6th Cir. 2000) *citing Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir. 1987). Petitioner must be able to demonstrate that counsel actively represented conflicting interests and that

there was an actual conflict of interest which adversely affected the lawyer's performance. *Strickland*, 466 U.S. at 692 *citing Cuyler*, 446 U.S. at 348, 350.  Petitioner "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting evidence helpful to one client but harmful to the other." *Thomas*, 818 F.2d at 481.  If defendant can do this than prejudice is presumed.  There is no violation, however, when the conflict results in irrelevant or hypothetical prejudice. *United States v. Hopkins*, 43 F.3d 1116, 1119 (6th Cir. 1995).

In the case at bar, Petitioner alleges that his trial counsel, William Allyn and Thomas Phillips, both served as attorneys on direct appeal and that at some unknown time, Allyn terminated his representation to pursue employment with the Ross County Prosecutor's office, the agency which had successfully charged and obtained the death penalty against Landrum.  He argues that this conflict of interest should have been imputed to the entire Prosecutor's office as Mr. Allyn may have potentially divulged information pertinent to Petitioner's case.  He further argues that even the mere appearance of impropriety was enough of a detriment to require disqualification of the Prosecutor's office.  Here even assuming that there was a conflict, Petitioner fails to show actual prejudice arising from the representation.  To the contrary, Petitioner's own counsel attests to the fact that Mr. Allyn was not in fact involved in the direct appeals. (Second Return of Writ, Doc. No. 84, Exhibit NN.)  Landrum also fails to make a showing of actual prejudice arising out of Mr. Allyn's alleged employment with the Ross County Prosecutor's Office.  Absent a showing of inconsistent interests this claim is without merit.

**Thirty-Eighth Ground for Relief**

> Juror misconduct through the exposure of jurors to extra-judicial sources of information concerning prison inmates by a fellow juror violated Mr. Landrum's rights as guaranteed by the Fifth, Sixth

145

Eighth and Fourteenth Amendment to the United States Constitution.

Landrum's thirty-eighth ground for relief advances the proposition that his constitutional rights were denied by juror misconduct when one juror shared his experience and opinions on inmate behavior with the rest of the jury. (Amended Petition, Doc. No. 122 at 107.)  Respondent argues that this claim is procedurally defaulted. (Amended Return of Writ, Doc. No. 123 at 133.)  In the alternative, Respondent argues that Petitioner cannot impeach the jury's verdict because of a juror's life experiences. *Id.*  Again, this Court agrees with Respondent's argument and finds this claim to be procedurally defaulted.

Alternatively, this Court turns to the merits of the claim.  Ohio Rule of Evidence 606(b)[12] codifies the *aliunde* rule which states that "the verdict of a jury may not be impeached by the evidence of a member of the jury unless foundation for the introduction of such evidence is first laid by competent evidence . . . . from some other source." *Doan v. Brigano*, 237 F.3d 722, 730 (6th Cir. 2001) *quoting State v. Adams*, 141 Ohio St. 423, 48 N.E. 2d 861, 863 (1943).  This "rule is designed to protect the finality of verdicts and to ensure that jurors are insulated from harassment by defeated parties." *Doan*, 237 F.3d at 730 *quoting State v. Schiebel*, 55 Ohio St. 3d 71, 564 N.E. 2d 54, 61 (1990).  The corresponding Federal Rule of Evidence[13] likewise strives to preserve the finality of

---

[12] Ohio Rule of Evidence Rule 606(b) states: Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict of indictment or concerning his mental processes in connection therewith.  A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented.  However, a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court.  His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes.

[13] Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning

jury decisions and protect jurors from harassment:

> Let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding.  Jurors would be harassed * * * in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict.  If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.

*McDonald v. Pless*, 238 U.S. 264, 267-268 (1915).  This prohibition is not an absolute however.

*Mattox v. United States*, 146 U.S. 140, 149 (1892).  The federal rule has a broader scope, permitting juror testimony on matters concerning extraneous prejudicial information that was improperly brought to the juror's attention with certain exceptions. Fed. R. Evid. R. 606(b).  A foundation of competent evidence from an outside source is not necessary before the juror may testify as to prejudicial external factors. *Id.*  Internal factors, however, such as the jury's comprehension of the instructions as given by the judge, whether a juror was pressured during deliberation to arrive at a particular conclusion, and physical restraints including alcohol and drug intoxication, are matters in which juror testimony may not be used to challenge the final verdict as they go directly to matters during deliberation including thought process and emotions. *Doan*, 237 F.3d at 733; *see also Tanner v. United States*, 483 U.S. 107 (1987).  Again, the purpose of the rule is to protect the jurors and the finality of their decision:

    In this case, Landrum is contending that Juror Dane Patterson created a situation of

---

the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.  Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for there purposes.

extraneous prejudice among the jury when he told his fellow jurors about his past experiences in working with inmates at his job at Chillicothe Correctional Institution and argued for a severe sentence. (Amended Petition, Doc. No. 122 at 107); (Amended Traverse, Doc. No. 124 at 157.)  In support of this position Landrum offers an affidavit executed by Juror Kathleen Justice stating that she felt pressured by Mr. Patterson to vote for a guilty verdict. *Id.*;(Second Return of Writ, Doc. No. 84, Exhibit NN.)  While it is true that jurors must be indifferent and his or her verdict must be based upon the evidence developed at the trial, it is impossible to ensure a jury free from all preconceived notions, opinions and life experiences prior to entering a jury deliberation room.  As articulated in *United States v. McKinney*, 429 F.2d 1019, 1031-1032 (5th Cir. 1970) and followed by the Sixth Circuit in *Helm v. Bunch*, 869 F.2d 1490 (6th Cir. 1989):

> All must recognize, of course, that a complete sanitizing of the jury room is impossible.  We cannot expunge from jury deliberations the subjective opinions of jurors, their attitudinal expositions, or their philosophies.  These involve the very human elements that constitute one of the strengths of our jury system, and we cannot and should not excommunicate them from the jury deliberations.
>
> Nevertheless, while the jury may leaven its deliberations with its wisdom and experience, in doing so it must not bring extra facts into the jury room.  In every criminal case we must endeavor to see that jurors do not [consider] in the confines of the jury room * * * specific facts about the specific defendant then on trial. * * * to the greatest extent possible all factual [material] must pass through the judicial sieve, where the fundamental guarantees of procedural law protect the rights of those accused of crime.

Absent evidence to the contrary, Patterson was not interjecting additional facts about the Petitioner specifically which had not properly been admitted into evidence.  Rather he was expounding on his past experiences with prison inmates and reflecting on his own opinions and philosophies. *Compare Doan*, 237 F.3d 722 (6th Cir. 2001)(holding it was improper when a jury member conducted an experiment at her home to determine the likelihood of the defendant's testimony and sharing the

results with her fellow jury members.)  The affidavit submitted by Juror Justice only serves to explain how Juror Patterson's commentary on his life experiences and his opinion served to influence her own mental process during deliberations.  As such, this affidavit was properly held to be inadmissible under the *aliunde* rule and its exclusion did not violate any of Petitioner's constitutional rights.  This claim is without merit.

**Thirty-Ninth Ground for Relief**

> The cumulative effect of the errors in this case served to deny Lawrence Landrum his rights as guaranteed under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In his thirty-ninth ground for relief, Landrum argues that the cumulative effect of errors in this case denied him his constitutional rights. (Amended Petition, Doc. No. 122 at 108.) Respondent counters that the allegation of cumulative error is without merit, as all the claims lack merit and cannot together constitute a meritorious claim on cumulative grounds. (Amended Return of Writ, Doc. No. 123 at 135.)  Respondent also argues that based on Supreme Court precedent this claim cannot stand. *Id.*

Multiple non-meritorious claims cannot be combined into a "cumulative effect" claim.  Post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Moore v. Parker*, ___ F.3d ___, 2005 U.S. App. LEXIS 21439 (6th Cir. 10/4/2005), citing *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002).  The thirty-ninth ground for relief should be denied.

**Fortieth Ground for Relief**

149

Mr. Landrum was denied his right to the effective assistance of counsel during his direct appeals of right in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In his fortieth ground for relief, Landrum asserts that he was denied his right to effective assistance of counsel during his direct appeals. (Amended Petition, Doc. No. 122 at 109.) Respondent argues that this claim is "the culmination of years of delay and the eventual exhaustion of specific claims that direct appeal counsel either neglected to raise or failed to raise completely," and thus, the claim is procedurally defaulted. (Amended Return of Writ, Doc. No. 123 at 136.)

Landrum filed his Application for Reopening on September 22, 1998. (Amended Return of Writ, Doc. No. 123, Exhibit CCC.)  By order of the court, Landrum filed "Appellant Landrum's Memorandum Explaining Delay in Filing Application for Reopening" on December 1, 1998. (Amended Return of Writ, Doc. No. 123, Exhibit DDD.)  In his argument Landrum argued that the journalization of the court of appeal's judgment affirming his conviction and sentence became final on January 12, 1989, and that of the Ohio Supreme Court's on August 15, 1990. *Id*.  He did not raise a claim of ineffective assistance of appellate counsel because his trial and appellate counsel were the same and counsel could not be expected to raise an ineffectiveness claim against themselves. (Amended Return of Writ, Doc. No. 123, Exhibit DDD); *State v. Lenz*, 70 Ohio St. 3d 527, 529-30, 639 N.E. 2d 784, 785-86 (1994); *State v. Cole*, 2 Ohio St. 3d 112, 443 N.E. 2d 169, syl. and at 113 n. 1 (1982).

Furthermore, Petitioner argues that at the time his conviction became final, Ohio did not have an established procedure in which to raise ineffectiveness of appellate counsel claims.  It was common practice at that time to raise such claim during post-conviction relief proceedings. Landrum's attorney at that time, Ken Murray, requested and was granted the standard six-month stay to complete the post-conviction petition.  Murray, however, never filed the petition.  After the six

150

months had expired, the Ohio Supreme Court failed to set a new execution date and Petitioner's case remained untouched by both counsel and court from May 20, 1999, until April 4, 1996, when the state supreme court *sua sponte* set a new execution date. (Amended Return of Writ, Doc. No. 123, Exhibit DDD) *citing State v. Landrum*, 75 Ohio St. 3d 1439 (1996). At that time Murray filed a post-conviction relief petition, but the state courts denied any additional stay on the sentence. Counsel immediately filed a petition for writ of habeas corpus in this Court and obtained a stay. A new attorney, Gary Crim, was appointed to represent Landrum in his post-conviction appeal and another, Pam Prude-Smith, to represent him on his federal habeas action. Prude-Smith recognized that Landrum had never had the opportunity to raise his claim of ineffective assistance of appellate counsel and immediately filed an Application for Reopening. (Amended Return of Writ, Doc. No. 123, Exhibit CCC.)

Landrum also argues that it was not until three years after his final judgment that the Ohio Supreme Court set forth a procedure for raising ineffective assistance of appellate counsel in *State v. Murnahan*, 63 Ohio St. 3d 60, 584 N.E. 2d 1204 (1992). *Id*. Ohio Rule of Appellate Procedure Rule 26(B) followed in 1993, codifying the 90 day requirement. Thus, Landrum asserts that he has shown good cause for the delay in filing as the 90 day requirement did not exist at the time of his finalization. *Id*.

On April 13, 1999, the Ross County Court of Appeals held that Petitioner's motion was untimely, stating that even if "good cause once existed for the delay in filing an App. R. 26(B) application, once the reasons for the delay are gone, good cause no longer exists. Good cause is not an excuse which lingers indefinitely." The court further noted that Landrum had been "represented by several different attorneys during the seven years after representation by his trial and appellate counsel ended" but yet offered " no good reason explaining why this lengthy period elapsed before

151

he filed his App. R. 26(B) application." (Entry of April 13, 1999) *quoting State v. Fox*, 83 Ohio St. 3d 514, 700 N.E. 2d 1253 (1998).  The Supreme Court of Ohio affirmed the decision based on untimeliness. (Amended Return of Writ, Doc. No. 123, Exhibit HHH); *State v. Landrum*, 87 Ohio St. 3d 315, 720 N.E. 2d 524 (1999).

*State v. Murnahan* settled in the negative the question whether ineffective assistance of appellate counsel claims can be raised in post-conviction relief proceedings under Ohio Rev. Code § 2953.21, and established for the first time in Ohio some state-wide procedures for raising ineffective assistance of appellate counsel claims. 63 Ohio St. 3d 60, 584 N.E. 2d 1204 (1992). Paragraphs two and three of the *Murnahan* syllabus set forth that procedure as follows:

> Claims of ineffective assistance of appellate counsel may be raised in an application for reconsideration in the court of appeals or in a direct appeal to the Supreme Court [of Ohio] pursuant to Section 2(B)(2)(a)(iii), Article IV of the Ohio Constitution . . . .

> Where the time period for reconsideration in the court of appeals and direct appeal to the Supreme Court [of Ohio] have expired, a delayed claim of ineffective assistance of appellate counsel must first be brought in an application for delayed reconsideration in the court of appeals where the alleged error took place, pursuant to App. R. 26 and 14(B), and if delayed reconsideration is denied then the defendant may file for delayed appeal in the Supreme Court [of Ohio], pursuant to Section 8, Rule II of the Rules of Practice of the Supreme Court.

That said, however, the *Murnahan* court observed that:

> Since claims of ineffective assistance of appellate counsel may be left undiscovered due to the inadequacy of appellate counsel or the inability of the defendant to identify such errors within the time allotted for reconsideration in the court of appeals or appeal to this court, it may be necessary for defendants to request delayed reconsideration.  Therefore, in an individual case where a defendant has put forth a colorable claim of ineffective assistance of appellate counsel, where the circumstances render the application of *res judicata* unjust, and the time periods for reconsideration in courts of appeals and direct  appeal to this court have expired, he or she must:

152

> (1) apply for delayed reconsideration in the court of appeals where the alleged error took place pursuant to App.R. 26 and 14(B), . . . and if delayed reconsideration is denied, then (2) file for delayed appeal in this court pursuant to Section 8, Rule II of the Rules of Practice of the Supreme Court . . . Before granting reconsideration, the court of appeals should determine whether there are substantive grounds for relief . . . If the court summarily dismisses the request for reconsideration, it shall state in its entry the reasons for not further reviewing the defendant's request.

*Murnahan*, 63 Ohio St. 3d at 65-66, 584 N.E. 2d at 1209.  Thus, after *Murnahan*, there was a state-wide procedure in place in Ohio by which to raise ineffective assistance of appellate counsel claims, but there was no prescribed time within which to file an application for delayed reconsideration following the completion of a defendant's direct appeals. *See Henderson v. Collins*, 101 F. Supp. 2d 866, 887 (S.D. Ohio, 1999)(concluding that "neither the *Murnahan* decision nor Ohio App. R. 14(B) set an outer limit or absolute deadline that would have alerted Petitioner to a certain deadline for filing a *Murnahan* Application pursuant to the rule [announced therein].")(*vacated in part on other grounds*, 262 F.3d 615 (6th Cir. 2001)).  Furthermore, in a footnote, the Ohio Supreme Court recognized that adherence to the then-existing appellate rules respecting applications for reconsideration or delayed reconsideration and enlargements of time was unrealistic in the context of ineffective assistance of appellate counsel claims, and directed that the Rules Advisory Committee to consider amendment of the relevant rules.

When *Murnahan* was decided Ohio App. Rule 26 read in relevant part as follows:

> Application for reconsideration of any cause or motion submitted on appeal shall be made in writing before the judgment or order of the court had been approved by the court and filed by the court with the clerk for journalization or within ten days after the announcement of the court's decision, whichever is the later.

On recommendation of the Rules Advisory Committee Ohio App. Rule 26 was amended July 1, 1993, including, *inter alia*, the following provision:

(B)(1) Application for Reopening

> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel.  An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

That rule provides that the amendments to the appellate rules that were effective on July 1, 1993, "govern all . . . . further proceedings in actions then pending, except to the extent that their application in a particular action pending when the amendments take effect would not be feasible or would work injustice, in which event the former procedure applies."

As with all procedural default claims, a claim of ineffectiveness of appellate counsel which has been found to be untimely in state court is barred from federal habeas review unless there is a violation of federal law or the failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478 (1986); *Wainwright v. Sykes*, 433 U.S. 72 (1977).  The claim of procedural default by the respondent does not, however, support a complete renunciation of federal court review for constitutional violations.  In certain situations, the court must engage in a four-part analysis under the components of the *Maupin* test to establish if the claim has properly been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

There is a state procedural rule setting a ninety-day deadline from the court of appeal's decision to file a 26(B) motion for ineffectiveness of appellate counsel.  Landrum did not comply with that rule.  Landrum had notice of the 90 day time frame in which to file a 26(B) motion from the date the amendment became effective, July 1, 1993.  Yet, Landrum failed to make such filing until approximately five years later.

With respect to the second *Maupin* prong, the court of appeals actually held that Landrum's motion was untimely and good cause had not been shown for late filing, thereby holding failure to comply with the applicable state rule against Landrum. (Amended Return of Writ, Doc. No. 123, Exhibit EEE.)  This ruling was affirmed by the Supreme Court of Ohio. *State v. Landrum*, 87 Ohio St. 3d 315, 720 N.E. 2d 524 (1999); (Amended Return of Writ, Doc. No. 123, Exhibit HHH.)

Thirdly, the state rule must be an adequate and independent state procedural bar in which the state could rely to foreclose further review on the claim of ineffectiveness of appellate counsel. *Maupin*, 785 F.2d at 138.  Ohio state law has held *res judicata* to be an adequate and independent state ground upon which the state court can rely to bar consideration of ineffective assistance of counsel claims in federal habeas proceedings. *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir. 2001).  By the time Landrum brought his application on September 22, 1998, it had already been established that claims of ineffectiveness of appellate counsel must be raised in an application to reopen before the Ohio court of appeals. *State v. Murnahan*, 63 Ohio St. 3d 60, 584 N.E.2d 1204 (Ohio 1992).

However, this Court has previously held in this case that:

> At this point in time, it cannot be said that the Ohio App. R. 26(B) timeliness/good cause rule is firmly established and regularly followed in Ohio capital cases.  In most of the foregoing cases, the courts of appeals enforced the rule even as to persons whose convictions became final long before *Murnahan* or 26(B)'s effective date.  The Ohio Supreme Court appeared to be headed in that direction, but then shifted its course.  In every capital case raising the question in 2001, the court failed to affirm a court of appeals' ruling that a 26(B) application was untimely and instead reached the merits. In none of those cases did it overturn the court of appeals' timeliness ruling, it merely failed to discuss it.
>
> Thus this Court is faced with a state rule which may have been relatively firmly established and followed at the time it was applied to Petitioner, but is no longer firmly established and followed.  It is

> also not as if the timeliness requirement were being inconsistently
> enforced, or enforced in egregiously old cases and not in others.  The
> Ohio Supreme Court has declined to enforce the rule in **any** capital
> case in the last year.

*Landrum v. Anderson*, 185 F. Supp. 2d 868, 872-873 (S.D. Ohio, 2002), *citing State v. Hill*, 90 Ohio

St. 3d 571, 740 N.E. 2d 282 (2001); *State v. Sheppard*, 91 Ohio St. 3d 329, 744 N.E. 2d 770 (2001);

*State v. Bradley*, 91 Ohio St. 3d 570, 747 N.E. 2d 819 (2001); *State v. Hooks*, 92 Ohio St. 3d 83, 748

N.E. 2d 528 (2001); *State v. Brooks*, 92 Ohio St. 3d 537, 751 N. E. 2d 1040 (2001); *State v.

Jalowiec*, 92 Ohio St. 3d 421, 751 N.E. 2d 467 (2001); *State v. Palmer*, 92 Ohio St. 3d 241, 749 N.E.

2d 749 (2001); *State v. Jells*, 90 Ohio St. 3d 454, 739 N.E. 2d 345 (2000); *State v. Biros*, 93 Ohio

St. 3d 250, 754 N. E. 2d 805 (2001); *State v. Carter*, 93 Ohio St. 3d 581, 757 N. E. 2d 362 (2001);

*State v. Moore*, 93 Ohio St. 3d 649, 758 N.E. 2d 1130 (2001). *See also State v. Frazier*, 96 Ohio St.

3d 189, 722 N.E. 2d 1182 (2002).  Thus, because the rule was not being regularly followed, the

ineffective assistance of appellate counsel claim is not procedurally defaulted.

The assignments of error raised in the 26(B) motion are as follows:

**Assignment of Error No. I**

The trial court erred by giving prospective jurors improper and
inaccurate instructions and by failing to correct the inaccurate
instructions given by the prosecutor and defense attorney during voir
dire in violation of the Fifth, Sixth, Eighth and Fourteenth
Amendments to the United States Constitution [sic]

**Assignment of Error No. II**

The trial court erred when it failed to rule that Ohio's death penalty
violated various international laws and treaties entered into by the
United States Senate.

**Assignment of Error No. III**

The trial court committed numerous errors in instructing the jury
(both orally and through verdict forms) in the mitigation phase of

156

Appellant Landrum's capital trial in violation of the Fifth, Sixth, Eight [sic] and Fourteenth Amendments to the United States Constitution.

**Assignment of Error No. IV**

The trial court failed to provide Appellant Landrum with an independent expert pathologist to assist Appellant in correcting the substandard autopsy performed on the victim in the present case in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

**Assignment of Error No. V**

The trial court erred by providing the jury with confusing and misleading jury instructions during the guilt determination phase of Appellant Landrum's case in violation of Appellant's Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

**Assignment of Error No. VI**

The trial court's failure to provide Appellant Landrum with a pharmacologist and/or toxicologist specialist when this service was reasonably necessary to adequate trial representation, deprived Appellant of his statutory rights as well as his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

**Assignment of Error No. VII**

Mr. Landrum was deprived of his right to the effective assistance of counsel in the mitigation phase of his capital trial in violation of Appellant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution [sic]

**Assignment of Error No. VIII**
Mr. Landrum was deprived of his right to the effective assistance of counsel in the trial determination phase of his capital trial in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution

**Assignment of Error No. IX**

The death sentence imposed in Appellant Landrum's case was not

based upon evidence sufficient to establish that Petitioner was the principal offender or that Appellant Landrum had the intent to kill the victim in the present case.  Thus, Appellant's conviction and death sentence are in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## Assignment of Error No. X

In reviewing Appellant's sentence for appropriateness, the trial and appellate court did not consider all of Appellant's mitigation evidence.  Specifically, the courts did not consider evidence of Appellant's extreme intoxication in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## Assignment of Error No. XI

The trial court gave an improper definition of reasonable doubt which allowed a finding of guilt based upon a degree of proof below that required by the due process clause of the United States Constitution.

## Assignment of Error No. XII

The trial court failed to provide Appellant Landrum with the expert assistance of a psychologist to assist in the mitigation phase of Appellant's capital proceedings in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## Assignment of Error No. XIII

The trial court improperly accepted the Jury's recommendation of the death sentence because the recommendation was based on an improper weighing process in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## Assignment of Error No. XIV
The State's failure to provide access and failure to disclose to trial counsel information material to both the trial and sentencing phases of Mr. Landrum's capital trial deprived him of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## Assignment of Error No. XV

Appellant Landrum was denied a fair and meaningful appeal as guaranteed by the Fifth, Sixth, Eight [sic] and Fourteenth Amendments to the United States Constitution.

**Assignment of Error No. XVI**

The trial court failed to require the State of Ohio to state its reasons for exercising its peremptory challenges during the jury selection process of Appellant's case in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

**Assignment of Error No. XVII**

The trial court committed numerous constitutional errors in reaching a sentencing determination as evidenced by the trial court opinion. Therefore, Appellant's death sentence is in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

**Assignment of Error No. XVIII**

The cumulative effect of the numerous errors which occurred in both the guilt and sentencing phases of Mr. Fox's [sic] capital trial deprived him of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

(Amended Return of Writ, Doc. No. 123, Exhibit CCC.)

Although the Court is free to reach the merits of the Fortieth Claim for Relief because the denial of Petitioner's Ohio App. R. 26(B) was not based on an adequate and independent state ground, the Court has concluded that the underlying claims do not have merit and therefore it was not ineffective assistance of appellate counsel to raise those claims, with the exception of the ineffective assistance of trial counsel claim relating to the Coffenberger testimony.

**Conclusion**

Petitioner should be granted a conditional writ of habeas corpus commanding his release

from custody unless within 180 days from the entry of final judgment in this case on appeal, he is

again convicted and sentenced to death at a trial at which the Coffenberger testimony is admitted

in the guilt phase.  In all other respects, his Petition should be denied on the merits.

November 1, 2005.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Death Penalty\Landrum v. Mitchell\SLW Second R&R Draft.wpd